# EXHIBIT 1



COURT OF APPEAL, FIRST DISTRICT
STATE OF CALIFORNIA
DIVISION _____

PEOPLE OF THE STATE OF
CALIFORNIA,

NO.

        Plaintiff/Respondent,

vs.

JOHN STEVEN MORGAN

        Defendant/Appellant..

_____/

DOCKET
ADM-SF _____
CIV-SF
CR-SF /4480A/ 353
Entered by _____
Date 10/16/98

CLERK'S TRANSCRIPT ON APPEAL

FROM

LAKE COUNTY SUPERIOR COURT

HON. ARTHUR H. MANN

CASE NO. CR4609

APPEARANCE OF COUNSEL:

For the People, Respondent:

Attorney General
50 Fremont Street, Suite 300
San Francisco, CA 94105

For the Defendant, Appellant:

First District Appellate Project
200 Harrison Street, Suite 201
San Francisco, CA 94107

CHRONOLOGICAL INDEX

PEOPLE VS. JOHN STEVEN MORGAN

LAKE COUNTY SUPERIOR COURT NO. CR4609

| | | |
|---|---|---|
| May 21, 1998 | Preliminary Hearing Transcript | 1 |
| May 18, 1998 | Information | 54 |
| May 18, 1998 | Fingerprint Form | 57 |
| May 18, 1998 | Court Minutes – Arraignment | 58 |
| Jun. 22, 1998 | Court Minutes – Omnibus Motion Hearing | 60 |
| Jun. 29, 1998 | Court Minutes – Trial Readiness | 61 |
| | Jury Instructions | 63 |
| July 07, 1998 | Court Minutes – Jury Trial | 99 |
| July 31, 1998 | Probation Officer's Report and Recommendation | 105 |
| July 31, 1998 | Order Prohibiting Visitation Between Defendant and Child Victim | 121 |
| July 31, 1998 | Court Minutes – Sentencing | 122 |
| Aug. 04, 1998 | Abstract of Judgment | 124 |
| Aug. 05, 1998 | Sentencing Transcript | 125 |
| Aug. 24, 1998 | Notice of Appeal | 141 |

# ALPHABETICAL INDEX

## PEOPLE VS. JOHN STEVEN MORGAN

### LAKE COUNTY SUPERIOR COURT NO. CR4609

| | | |
|---|---|---|
| Aug. 04, 1998 | Abstract of Judgment | 124 |
| May 18, 1998 | Court Minutes – Arraignment | 58 |
| July 07, 1998 | Court Minutes – Jury Trial | 99 |
| Jun. 22, 1998 | Court Minutes – Omnibus Motion Hearing | 60 |
| July 31, 1998 | Court Minutes – Sentencing | 122 |
| Jun. 29, 1998 | Court Minutes – Trial Readiness | 61 |
| May 18, 1998 | Fingerprint Form | 57 |
| May 18, 1998 | Information | 54 |
| | Jury Instructions | 63 |
| Aug. 24, 1998 | Notice of Appeal | 141 |
| July 31, 1998 | Order Prohibiting Visitation Between Defendant and Child Victim | 121 |
| May 21, 1998 | Preliminary Hearing Transcript | 1 |
| July 31, 1998 | Probation Officer's Report and Recommendation | 105 |
| Aug. 05, 1998 | Sentencing Transcript | 125 |

CR4609

```
 1        MUNICIPAL COURT OF THE STATE OF CALIFORNIA

 2     SOUTHLAKE DIVISION, IN AND FOR THE COUNTY OF LAKE

 3                      --ooOoo--

 4   PEOPLE OF THE STATE OF      )
     CALIFORNIA,                 )        ORIGINAL
 5                               )
                 Plaintiffs,     )
 6                               )
     vs.                         )     No.  CF-22751.01
 7                               )
     JOHN STEVEN MORGAN,         )        FILED
 8                               )      COUNTY OF LAKE
                 Defendant.      )
 9                               )        MAY 2 1 1998
10   _____    )
                                       Adam Ayala, Court Clerk
11                    --ooOoo--       By_____
                                          Deputy Clerk
12        REPORTER'S TRANSCRIPT OF PRELIMINARY HEARING
                      --ooOoo--
13
          THURSDAY, APRIL 30, 1998, 1:30 O'CLOCK P.M.
14
     BEFORE THE HON. RICHARD L. FREEBORN, JUDGE PRESIDING
15

16

17   APPEARANCES:

18

19   For the People:      STEPHEN O. HEDSTROM
                          District Attorney
20                        ANGELA BERNHARD
                          Deputy District Attorney
21                        255 North Forbes Street
                          Lakeport, CA
22

23   For the Defendant:   STEPHEN CARTER
                          Attorney at Law
24                        255 North Forbes Street
                          Lakeport, CA 95453
25
     The Defendant was personally present.
26

27   Reported by:
     Kathy Wehinger, CSR
28   State License No. 1674
```

2

1                        I N D E X

2

3    WITNESS:            Direct  Cross  Redirect  Recross

4

5      WALLER, Keith

6      By Ms. Bernhard      8              39

7      By Mr. Carter                17

8

9      PIERSON, Sonny

10     By Ms. Bernhard     41

11     By Mr. Carter

12

13     GROSS, Donald       46

14     By Ms. Bernhard            49

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

THURSDAY, APRIL 30, 1998                          9:00 A.M.

THE COURT:  Matter of Morgan.  It is my understanding that Defense will be making a motion under Penal Code 868.  The people will not be opposing that. We have a juvenile witness and for the reasons represented, the Court will find that excluding the public is necessary to protect the Defendant's right to a fair and impartial trial, but also with due consideration for the witness in the matter.

And I shall hereupon exclude from this examination every person except the following:  Court clerk, court reporter, the bailiff, Prosecutor Miss Bernhard, the Defendant and his counsel, Mr. Carter, and any designated investigating officers.

If there are any support persons that are going to be present for the juvenile witness, they may remain as well.  If there is anyone else that, in the nature and order of things should be here, I'd ask Miss Bernhard or Mr. Carter to alert me to that.

Everyone other than those folks enumerated is to leave the courtroom.

4

1    The bailiff is ordered to seal the door and

2    block the windows.

3    Mr. Morgan, Mr. Carter, you can stay right

4    there.  I see the Attorney General is here.

5

6    (The People v. Craft matter was addressed)

7

8    MR. CARTER:  Oh, your Honor, and just for

9    the record, I formally make a motion pursuant to 868 of

10    the Penal Code.

11    THE COURT:  On the record.  And hearing no

12    opposition --

13    MR. CARTER:  The Court has already

14    preliminarily made that order.

15    THE COURT:  All right.  I would like to

16    address the matter of Mr. Hilliard Egger.

17

18    (The matter of People v. Egger was

19    addressed)

20

21    THE COURT:  Let's get the courtroom closed

22    here.  All right.  Only the indicated persons now remain

23    before the Court and I'll hear you at this time, Mr.

24    Carter.

25    MR. CARTER:  Yes, your Honor.  To the

26    extent that it is not covered by the order already made

27    by the Court pursuant to 868 of the Penal Code, the

28    Defense hereby makes a motion to exclude witnesses

5

1    throughout the preliminary hearing except for the one

2    who is testifying at the time.

3              MS. BERNHARD:  And, your Honor, I would ask

4    the Court to designate Officer Grossi as my

5    investigating officer in this case.

6              THE COURT:  Okay.  He is present and may

7    remain.  Any other preliminary matters we should

8    address?

9              MS. BERNHARD:  Actually, one.  There needs

10   to be an amendment on the Complaint.  I just noticed

11   this today.  All 3 Counts listed the date of the

12   incident in 1996.  That should be 1997 for all 3 counts.

13             Count I is on line 16, Count II is between

14   lines --

15             THE COURT:  Wait a minute.  You are jumping

16   ahead of me, counsel.  We are talking about the

17   complaint that is filed on January 9th?

18             MS. BERNHARD:  That's correct.

19             THE COURT:  Let's start with Count I.  Any

20   changes there?

21             MS. BERNHARD:  Yes.  I would change where

22   it says lines -- between line 15 to line 16, the month

23   of June, 1996 -- I would ask to change that to 1997.

24             THE COURT:  Okay.  Is there any objection

25   to that?

26             MR. CARTER:  No, your Honor.  And the

27   reason I don't object is because I anticipate that the

28   Prosecution will be showing that these alleged events

6

1    allegedly occurred in 1997; they would be conforming to

2    proof, so I don't think there is any valid basis for an

3    objection.

4              THE COURT:   That amendment is now endorsed

5    on the face of Complaint.   As to Count II?

6              MS. BERNHARD:   Line 24 to the line

7    24-and-a-half where it says "February 1996," I would be

8    asking to amend that to 1997.   And then it also says

9    line 24-and-a-half "month of March, 1996."   I would be

10   asking to amend that to 1997.

11             MR. CARTER:   No objection; same reason.

12             THE COURT:   Without objection, that is

13   executed on the face of the complaint.   Count III?

14             MS. BERNHARD:   And Count III would be lines

15   3-and-a-half where it says "February 1996," I would be

16   asking to amend that to 1997 and where it says March

17   1996, I would be asking to amend that to 1997.

18             THE COURT:   Without objection, so noted.

19   Does that conclude the 3 technical amendments?

20             MS. BERNHARD:   That is correct, yes.

21             THE COURT:   May we now proceed with the

22   testimony?

23

24             (People's Exhibit No. 1 was marked for

25   Identification)

26

27             MS. BERNHARD:   Yes.   And the People would

28   also submit People's Exhibit 1 into Evidence at this

1    time.

2              MR. CARTER:  I agree with that.  No

3    objection as far as the preliminary hearing goes.

4              THE COURT:  Limited to the preliminary

5    hearing, pursuant to stipulation, that item will come

6    in.  Let me examine it one more time before I finalize

7    that.

8              Is it stipulated for purposes of the

9    preliminary only that the person named herein as John

10   Steven Morgan is one and the same with the gentleman

11   here before the Court for the preliminary only?

12             MR. CARTER:  Yes, your Honor.

13             THE COURT:  Pursuant to that stipulation,

14   the document is now in evidence.  I also note a facial

15   likeness, despite a few years' difference, of the

16   Defendant in the photograph here shown.

17             Please, proceed.

18

19             (People's Exhibit No. 1 was admitted into

20   Evidence)

21

22             MS. BERNHARD:  The People call Keith

23   Waller.  Come on up.  Come up to where those microphones

24   are and stand by that seat.  She is going to administer

25   the oath.

26             THE COURT:  Please face the Clerk, raise

27   your right hand and she will swear you in.

28

8

```
1
2
3
4     //
5                    KEITH GARRETT WALLER,
6
7          having been duly sworn by the Clerk of the
8          Court was examined and testified as
9          follows:
10
11         THE WITNESS:  I do.
12         THE COURT:  Thank you.  You may be seated.
13
14                   DIRECT EXAMINATION
15
16    BY MS. BERNHARD:
17         Q    Can you please tell me your name and spell
18    your last name for the record?
19         A    Keith Garrett Waller, W-a-l-l-e-r.
20         Q    Thank you.  Keith, how old are you?
21         A    15.
22         Q    And when is your birthday?
23         A    9-4-82.
24         THE COURT:  That is 9-4 of '82?
25         THE WITNESS:  Yes.
26         THE COURT:  Okay.  Thanks.
27    BY MS. BERNHARD:
28         Q    How old were you in June of 1997?
```

```
1       A       14.

2       Q       Okay.  Do you know John Morgan?

3       A       Uh-huh.

4       Q       Do you see him sitting here today?

5       A       Uh-huh.

6               THE COURT:  Could you answer "yes" or "no",

7  please?

8               THE WITNESS:  Yes.

9               THE COURT:  It is a little hard for the

10 reporter sometimes to get down "uh-huh" and "huh-uh."

11              THE WITNESS:  Yes.

12         BY MS. BERNHARD:

13      Q       Could you please point to him and describe

14 what he is wearing?

15      A       He's in yellow right there.

16              THE COURT:  That is the Defendant for the

17 record.  Go ahead, please

18         BY MS. BERNHARD:

19      Q       Actually, I would like to ask you a few

20 questions before we get started.  Do you know what the

21 difference is between telling the truth and telling a

22 lie?

23      A       Yes.

24      Q       And can you tell me what it means to tell

25 the truth?

26      A       Well, to tell the truth, I guess.  I don't

27 know how to put it in any other words.

28      Q       Okay.  What does it mean to tell a lie?
```

```
                                                              10
 1        A      To tell -- to be dishonest, not tell the
 2   truth.
 3        Q      Okay.  If I were to -- as an example, if I
 4   were to say that the jacket I'm wearing today is white,
 5   would that be the truth or a lie?
 6        A      It would be a lie.
 7             MS. BERNHARD:  And for the record the
 8   jacket is blue.
 9                 THE COURT:  Okay.
10               MS. BERNHARD:  It may look black but it is
11   blue.
12             MR. CARTER:  We'll call it midnight blue.
13        BY MS. BERNHARD:
14        Q      Do you promise to tell the truth here
15   today?
16        A      Yes.
17        Q      Do you remember an incident that happened
18   with the Defendant back in June of 1997?
19        A      Yes.
20        Q      Can you tell me what happened that day?
21        A      From the beginning?
22        Q      Did you see the Defendant sometime in June
23   of 1997?
24        A      Yes.
25        Q      Okay.  Was there a particular incident that
26   stands out in your mind?
27        A      Uh-huh.
28        Q      Is that "yes"?
```

11

1     A     Yes.

2     Q     Okay.  If you could just remember --

3     A     Yeah.

4     Q     -- to say "yes" or "no"?

5     A     Yeah.

6     Q     Okay.  When did you see the Defendant on

7 that day?

8     A     During the day, just -- he came over to my

9 house and went -- and we were driving his truck on the

10 back roads and I was driving.

11          MR. CARTER:  Objection.  This is obviously

12 going to turn into a narrative.  It is nonresponsive.

13          THE COURT:  Seems preliminary up to this

14 point, but maybe you can get more specific from this

15 point on.

16          MS. BERNHARD:  I'll ask more questions.

17     BY MS. BERNHARD:

18     Q     So when the Defendant came over to your

19 house, do you remember what time of day it was?

20     A     Not the exact time, but sometime during the

21 mid-day.

22     Q     Okay.  How long had you known the Defendant

23 prior to that day?

24     A     A long time.  Like I'd say over a year, I

25 think.

26     Q     Okay.  Did you often hang out with the

27 Defendant?

28          MR. CARTER:  Objection.  Leading.

12

1    THE COURT:  Oh, I don't know.  The nature
2    and the extent of the relationship seems somewhat
3    preliminary.  Objection is overruled.
4    THE WITNESS:  Yes.
5    BY MS. BERNHARD:
6    Q    Okay.  And on this particular day you said
7    you went driving with him.  Who was driving?
8    A    I was.
9    Q    And whose car were you driving?
10    A    His truck.
11    Q    Okay.  Did the Defendant let you drive his
12    truck often?
13    A    Quite a bit.
14    MR. CARTER:  Objection.  Relevance.
15    Objection.  Leading.
16    MS. BERNHARD:  It is not leading.
17    THE COURT:  We are getting to a point here
18    where we may be past preliminary.
19    MS. BERNHARD:  I can move on.
20    THE COURT:  Move.
21    BY MS. BERNHARD:
22    Q    You said that you went driving.  Where did
23    you go driving?
24    A    We drove -- we were across -- well, I don't
25    know what part of town that is, but I call it across the
26    highway.
27    Q    Okay.  What city?
28    A    Clearlake.

13

1    Q     And that is here in Lake County?

2    A     Yes, in the Highlands.

3    Q     Okay.  Where did you drive to?

4    A     9th Street.

5    Q     And what did you do when you got to 9th

6  Street?

7    A     I parked the truck and then I was -- just

8  got out and I was sitting in the back.

9    Q     Where was the Defendant at this point?

10    A     Standing next to the truck on the other

11  side.

12    Q     How far away from you was he?

13    A     About as far as I am from her.

14    Q     Okay.  So for the record, that looks to me

15  to be about 3 to 4 feet.

16         THE COURT:  A little more than that.

17  Probably more five or six.

18         MS. BERNHARD:  That must be my angle.  All

19  right.  That is fine.

20    BY MS. BERNHARD:

21    Q     And where were you, again?

22    A     I was sitting on the edge of the truck, on

23  the edge of the bed.

24    Q     Okay.  Were there a lot of people around?

25    A     No one.  Just me and him.

26    Q     Okay.  This area where you stopped, are

27  there houses or businesses?

28    A     There were 2 double-wide trailers that are

LASER BOND FORM A  ®  PENGAD · 1-800-631-6989

14

1    all thrashed but now they are gone.

2          Q         Okay.  Do you know whether anybody was

3    living in those trailers at that time?

4          A         No one lived there.

5          Q         Did something unusual happen while you were

6    sitting on the bed of the truck?

7          A         Quite unusual.

8          Q         Can you tell me what happened?

9          A         He said he wanted to go down on me.

10         Q         Who said that?

11         A         He did, John Morgan.

12         Q         Okay.  What did you take him to mean?

13         A         I took it as he wanted to suck my penis.

14         Q         Okay.  What did you do when he said this?

15         A         Well, at first I didn't believe him but

16   kind of -- was very shocked and told him just "let's go

17   home."  I wanted him to take me to a friend's house and

18   he wouldn't.

19         Q         Okay.  When he said this to you, was he

20   still about six feet from you?

21         A         He was still -- yeah, he didn't get any

22   closer to me.

23         Q         Okay.  Did he touch you at all when he said

24   this?

25         A         No.  I don't think he'd be that stupid.

26         Q         All right.  What happened after that?

27         A         I went to get back in the truck because I

28   figured he was just joking or I didn't really take it

15

1    very seriously.  I went to get the keys.

2                He said, "No.  I'm driving."

3                I went and got in the passenger seat and we

4    drove towards Yuba college and --

5        Q     While he was driving, did he say anything

6    else to you?

7        A     Yes.

8        Q     What did he say?

9        A     He said, "How does it feel to be come on to

10   by a man?"

11       Q     When he said this, how far away from him

12   were you?

13       A     I was in the passenger seat.

14       Q     Okay.  So very close?

15       A     Yes.

16       Q     Okay.  Did he touch you at any time inside

17   the truck?

18       A     No.

19       Q     And then after that, what happened?

20       A     We were at the stoplights of where Wal-Mart

21   are, Wal-Mart is over here, and I was all "Take -- I

22   said, "Take me to R.J.s," which is a friend of mine that

23   lives in Lower Lake.

24                He said, "No.  I'll take you home first and

25   then your mom can decide whatever you want to do."

26       Q     Did he take you home?

27       A     Uh-huh.

28       Q     Is that "yes"?

16

1    A    Yes.

2    Q    Thank you.  Do you remember -- did you ever

3    spend time with the Defendant prior to this?

4    A    Uh-huh.

5    Q    Is that "yes"?

6    A    Yes.

7    Q    Would you ever stay over at his house?

8         MR. CARTER:  Objection; leading.

9    Relevance.

10        THE WITNESS:  Me?

11        THE COURT:  Just a moment.  Just a moment,

12   please.

13        Response?

14        MS. BERNHARD:  Your Honor, it is relevant

15   to Count II which is another charge in this case and

16   it's not leading.  Just because a question asks for a

17   "yes" or "no" answer does not make it a leading

18   question.  I'm not suggesting the answer to the witness.

19        THE COURT:  Well, it can depending on the

20   circumstances but I'm not sure that it does here.

21   Objection is overruled and I think he has already

22   answered the question, so --

23        BY MS. BERNHARD:

24   Q    Can I have -- what was the answer?

25   A    Yes.  One time me and 2 friends stayed the

26   night at his house.

27   Q    When was that, do you remember?

28   A    A few months before the other incident.

17

1     Q      Still in 1997?

2     A      Yes.

3     Q      Could it have been February or March of

4   that year?

5     A      Yeah.

6     Q      Okay.  Did anything unusual happen that

7   time when you spent the night at his house?

8     A      We got drunk.

9     Q      Who got drunk?

10     A      Me, Julius, and Sonny and him.

11     Q      And where did you get the alcohol that you

12   got drunk on?

13     A      He bought it.

14     Q      By "he," do you mean the Defendant?

15     A      John.

16            MS. BERNHARD:  Okay.  I have no further

17   questions.

18            THE COURT:  Cross.

19            MR. CARTER:  One moment, please, your

20   Honor.

21

22                    CROSS-EXAMINATION

23

24     BY MR. CARTER:

25     Q      So when you went for a drive in the truck,

26   this was just a chance to let you learn to drive his

27   truck around?

28     A      It was just a normal thing that we did

18

1    quite often.

2         Q    I'm sorry.  I couldn't hear you.

3         A    It was a normal thing we did quite often; I

4    drove the truck a lot.

5         Q    So he let you drive his truck frequently?

6         A    Uh-huh.

7         Q    Is that "yes"?

8         A    Yes.

9         Q    In order that I don't have to keep nagging

10   you about that, please just remember you have to say

11   "yes" or "no" in words.  The court reporter can't write

12   "uh-huh," but I don't want to badger you about that.

13        A    Okay.

14        Q    So when you pulled off -- let's see.  You

15   drove to 9th Street and then you parked the truck?

16        A    Uh-huh.  Yes.

17             THE COURT:  I'm going to interrupt a

18   moment, too.  Reading case law on 868, the Court would

19   have to conclude from your showing that there was a

20   substantial probability that the Defendant's right to a

21   fair trial would be prejudiced by publicity that might

22   come about this hearing being open.

23             Can you make any representations on the

24   record that would warrant that conclusion by the Court?

25             MR. CARTER:  Certainly, your Honor.  Due to

26   the highly inflammatory nature of these charges -- also,

27   I think given what testimony the Court has already

28   heard -- due to the public mores regarding this

19

1  particular type of crime, I believe that there is a

2  likelihood of substantial prejudice to the Defendant due

3  to pretrial publicity and I believe there is good cause

4  to close this hearing pursuant to 868.

5          THE COURT:  As discussed informally, too,

6  and reflected on by the Court, the Court will take.

7  judicial notice:  This is still a small rural community,

8  and what might take place in the larger urban setting

9  may have a different impact, but given the rural fact of

10  this area, I will make a finding that there may be

11  substantial prejudice if the hearing was open.  I may

12  have got the cart before the horse a little bit but I

13  got to reflecting and I thought it would be best if we

14  clear it up.

15          Go ahead, please.  Sorry for the

16  interruption.

17          MR. CARTER:  That is perfectly all right,

18  your Honor.

19      BY MR. CARTER:

20      Q      Okay.  Did you and Mr. Morgan have any

21  conversations on your way to the place where you parked

22  the truck?

23      A      Just normal every day talking.

24      Q      What type of subjects that you recall?

25      A      Nothing that I remember, nothing out of the

26  ordinary.

27      Q      In general, what is the type of every day

28  conversation you had with Mr. Morgan before this

20

```
 1   happened?

 2        A      About motorcycles, cars, just whatever.

 3        Q      General interest?

 4        A      Yeah.

 5        Q      And to the best of your recollection, that

 6   is the sort of thing that you were talking about that

 7   day before you parked the truck?

 8        A      I guess, yeah.  Yes.

 9        Q      To the best of your recollection?

10        A      (Witness gestures with head).

11        Q      Is that "yes"?

12        A      Yes.

13        Q      And then you parked the truck and went

14   around back and sat on the edge of the bed?

15        A      Uh-huh.  Yes.

16        Q      Was that on the tailgate or the side of the

17   truck?

18        A      The side where the wheel well is.

19        Q      Were your feet in or outside the bed?

20        A      Inside the bed.

21        Q      Inside the bed?

22        A      Uh-huh, yes.

23        Q      Which side of the truck were you seated on?

24   The driver's side or the passenger's?

25        A      I was in the driver's.

26               THE COURT:  Hold on a minute.  I appreciate

27   this is kind of a nervous situation for you, but Mr.

28   Waller, I'm going to ask that you let him get the
```

21

1   question out before you answer.  Otherwise the court

2   reporter is trying to take you both down at the same

3   time and it is impossible.

4               THE WITNESS:  Sorry.

5               THE COURT:  A little slower, Mr. Carter, if

6   you would kindly.

7               MR. CARTER:  Certainly.

8       BY MR. CARTER:

9       Q       And then as soon as I finish my question

10  you just go ahead and answer it, okay?

11      A       Yes.

12      Q       Which side of the truck were you seated on,

13  the driver's side or the passenger's side?

14      A       The driver's side.

15      Q       And you were right by the wheel well where

16  it kind of humps up?

17      A       Sitting directly over the wheel.

18      Q       Were you seated on the wheel well or on the

19  side of the truck, the wall, the top?

20      A       I don't remember.

21      Q       And where was Mr. Morgan standing?

22      A       On the passenger side of the truck,

23  standing up on the opposite side from me.

24      Q       Was he leaning up against the bed or was he

25  a ways away from the bed?

26      A       He was leaning up against the bed.

27      Q       So he was leaning against the side of the

28  truck?

22

```
1        A      Yeah.  Yes.

2        Q      And there was no one else around?

3        A      No one.

4        Q      And the only thing you saw in the area that

5    you remember is 2 double-wide trailers which were

6    abandoned?

7        A      Two double-wide trailers.  There is a pool,

8    there was a truck and there was a car that is burnt and

9    half-way upside down.

10       Q      And you said the two double-wides aren't

11   there anymore?

12       A      No.

13       Q      How do you know that?

14       A      Because I been back to the place.

15       Q      Who did you go back with?

16              MS. BERNHARD:  Objection.  Relevance.

17              THE COURT:  It would seem to be beyond the

18   scope of the direct and in the area of fishing.

19              MR. CARTER:  Is not fishing, your Honor.

20   It goes to a witness' credibility, whether or or not

21   there have been any attempts to fabricate evidence by

22   returning to the scene.

23              MS. BERNHARD:  Your Honor, I don't think

24   that that is --

25              THE WITNESS:  What?

26              THE COURT:  Fabricate what evidence?

27              MR. CARTER:  That's what I'm trying to find

28   out.
```

23

1          THE COURT:  There is no evidence before the

2    Court here that it had been fabricated that I'm aware.

3          THE COURT:  The objection is sustained.

4    For your information, Mr. Waller, when an objection is

5    stated by either party, you get to sit there quietly and

6    I get to wrestle with it, so don't try to answer while

7    we are going through that.

8          THE WITNESS:  I'm sorry.

9          THE COURT:  This is all strange stuff, I'm

10   sure.  Go ahead.

11         MR. CARTER:  Thank you.

12     BY MR. CARTER:

13     Q      So when you say Mr. Morgan said he wanted

14   to go down on you, what were the exact words he said?

15   And when I ask you to answer this, what I'm looking for

16   is a quotation -- in fact, the exact words he said to

17   you.

18     A      He said, "I want to go down" -- and he

19   paused for a moment and he said, "I want to go down on

20   you."

21     Q      Where was he looking when he said this?

22     A      I don't know.

23     Q      Were you looking at him?

24     A      Sort of, not really.

25     Q      Where --

26     A      I was looking at the other side of the bed

27   of the truck, just staring over.

28     Q      How loudly did he say this?

24

1      A      Loud enough I could clearly hear it.   He

2   was talking to me.

3      Q      How do you know he was talking to you?

4      A      Because there was no one else around and he

5   was -- just because there was no one else around, he was

6   -- what's the word I'm looking for?

7              MS. BERNHARD:   Your Honor, I think the

8   question has been answered.

9              THE COURT:   Sustained.

10     BY MR. CARTER:

11     Q      Were there any other reasons why you felt

12  he was talking to you?

13     A      Because he was talking to me previously and

14  there was no one else around.   It was extremely obvious

15  that he was talking to me.

16     Q      But you weren't looking at him, is that

17  correct?

18     A      I was looking at -- I could see him but I

19  was looking at something else.

20     Q      So you saw him in your peripheral vision?

21     A      Yes.

22     Q      And could you see whether he was looking at

23  you, or not?

24     A      I don't -- I wasn't looking at his eyes,

25  but he was facing me.

26     Q      What kind of tone did he use?   Do you

27  understand that question?   I see you hesitate.

28     A      I don't understand how to answer it.

25

1     Q      Okay.  Let me ask some preliminary

2     questions to make sure that you understand what I mean

3     by tone.

4          A      Uh-huh.

5          Q      Okay.  If I were to raise my voice --

6          A      Oh.  He was just --

7          Q      Wait.  Let me get my question out.  If I

8     was to raise my voice and shout at you --

9          A      Yeah.

10         Q      -- I might be using an angry tone?

11         A      Uh-huh.

12         Q      -- or I might be using an excited tone.  Do

13    you understand what I mean by tone then?

14         A      What kind of tone did he use?

15         Q      Yes.

16         A      It was in the form of a question, a

17    question tone, I think.

18         Q      Besides the form that the --

19         A      But that's --

20              THE COURT:  Just a second.  He started to

21    say "but."  Let him finish your answer.  Go ahead, son.

22              THE WITNESS:  He was just like normal talk,

23    just like asking a question.

24         BY MR. CARTER:

25         Q      Now, you testified earlier that you didn't

26    take what he said seriously, was that correct?

27         A      At first.  At first, I was shocked.  I was

28    like -- he was -- he was -- because before he said that,

26

1    he was saying, "I feel bad" and "I am about to do

2    something I know I shouldn't do."

3              I thought he was talking about my mom.

4              MR. CARTER:  Move to strike, non

5    responsive.

6              THE WITNESS:  Okay.

7              THE COURT:  I think it is reasonably

8    responsive.  The answer will stand.  Go ahead.

9        BY MR. CARTER:

10       Q       So when you said you didn't take it

11   seriously, you meant that you didn't think that he

12   really wanted to do that; correct?

13             MS. BERNHARD:  Objection.  I think counsel

14   is misstating the testimony.

15             MR. CARTER:  It is a leading question.  I'm

16   allowed to ask leading questions.

17             THE COURT:  That he is --

18             MR. CARTER:  I am paraphrasing his

19   testimony and if there is a problem with that I'm sure

20   the witness --

21             THE COURT:  Seems reasonably articulate.

22   Objection is overruled.  Go ahead, please.  Restate it.

23             MR. CARTER:  Could I have that question

24   read back, please.

25                  (Question read)

26             THE COURT:  You can go ahead and answer it.

27             THE WITNESS:  Well, correct, and -- I

28   didn't --I was shocked to the point I didn't believe it

27

1   because he was a friend at that time.  Previous to that

2   moment he was a friend of mine.  I didn't believe that

3   he was doing that.

4   //

5         BY MR. CARTER:

6         Q       You didn't think he was going to crawl into

7   the truck and start to go down on you; did you?

8         A       No, I didn't think he actually was -- no.

9         Q       And you didn't actually take it seriously

10  and thought he was joking, correct?

11        A       Once I moved and like when he told me I

12  wasn't driving, that's when I knew that he was serious

13  serious.

14        Q       That's when you knew what?

15        A       That's when I known he was -- that's why I

16  knew he wasn't joking.

17        Q       Because he wanted to drive?

18        A       No.  Because -- just because.

19        Q       Okay.  Can you explain why?  You can take

20  as much time as you like.

21        A       Okay.  Can you rephrase?  Say it again,

22  please.

23              MR. CARTER:  May I have that last question

24  read back, please?

25              (Record read)

26              THE COURT:  I would ask that you have a

27  seat, Mr. Carter.

28              MR. CARTER:  Your Honor, my back hurts when

28

1  I sit for a long period in this type of chair so I would

2  ask leave from the Court to stand.

3            THE COURT:  The Court has authority over

4  the mode, scope of the examination.  It is my

5  impression, while he is not a child, for a young witness

6  under the age, this process has an inherently

7  intimidating aspect.  I understand you are not a

8  ferocious -- but if you could bear with us and stay

9  seated for am little bit.

10           MR. CARTER:  Would it be acceptable to move

11 my client into the jury box and sit there because those

12 chairs --

13           THE COURT:  If that would be more

14 comfortable for you.  I think he can stay right there,

15 you can just take the one on the end.

16           MR. CARTER:  If you need to confer with me,

17 I want you to raise your right hand.  Okay?  Don't

18 hesitate to do that if you need to tell me something.

19      BY MR. CARTER:

20      Q       Why I don't ask another question because

21 that kind of petered out there.  What was it about Mr.

22 Morgan wanting to drive that made you think that he was

23 serious?

24      A       Well, because he never did that before.

25 Well, I knew he was serious.  Besides that, he called me

26 a few days later and told me he was a faggot.

27      Q       But that was something that happened a few

28 days later and not at the time; correct?

29

```
 1        A      Yes.
 2        Q      Okay.  So at the time this happened, you
 3   had no idea he was, using your terms, a faggot or a
 4   homosexual, using my words?
 5        A      Yes.
 6        Q      Is that correct?
 7        A      Correct.
 8        Q      So the sum total of it is that at the time
 9   you didn't think he really wanted to do it and you
10   didn't think he was serious?
11             MS. BERNHARD:  Objection; argumentative.
12             MR. CARTER:  It is not argumentative.
13             THE COURT:  It is a question -- but it is
14   compound.
15        BY MR. CARTER:
16        Q      Well, we'll take it one step at a time if
17   it is compound, which means 2 questions in one.
18        A      Okay.
19        Q      So it is true that you didn't think that he
20   really wanted to do that at the time he said it?
21        A      I didn't think so, but I didn't believe --
22   how do I put this?
23             MS. BERNHARD:  Your Honor, I'm going to
24   object at this point.  I don't see the relevance of this
25   line of question.
26             MR. CARTER:  Then the Prosecutor doesn't --
27   clearly does not understand the standard for 647.6 and I
28   would object that the constant attempt to simply disrupt
```

LASER BOND FORM A  ®  PENGAD • 1-800-631-6989

30

1    my cross-examination.

2                    MS. BERNHARD:  Your Honor, there is no

3    element of 647.6 that requires that a minor even be

4    bothered by what happened.  It is not an element of the

5    crime so it doesn't matter whether he thought the

6    Defendant was serious or not.  It doesn't really matter

7    what he thought about it.

8                    THE COURT:  Well, it doesn't matter to this

9    extent if what was said was as a joke only and not with

10   serious intention.  How it is received by the minor in

11   question might have some bearing on how it was uttered

12   or intended to be received.  So there is a difference

13   between something said in jest and something said in a

14   way that has some serious meaning behind it, so I think

15   it relevant and the objection is overruled.

16                   MR. CARTER:  Your Honor, could -- did we

17   have an answer to my last question?

18                   THE COURT:  If any of us can remember what

19   the heck it was -- why don't you restate, please.

20                   MR. CARTER:  All right.

21       BY MR. CARTER:

22       Q       So you didn't think at the time -- at the

23   time, though, that he really wanted to do that?

24       A       At the time I did know he was not joking

25   but I -- I didn't really want to believe it to myself

26   sort of.  I don't know.

27       Q       Okay.  Earlier you testified that you

28   didn't take it seriously --

31

```
 1        A       I didn't take --
 2        Q       --- and now you are telling me --
 3                Let me finish my question, please.
 4                -- and now you are telling me that you knew
 5   he was serious but you didn't want to admit it to
 6   yourself.   Which is the truth?
 7                THE COURT:   Your best recollection is fine.
 8                THE WITNESS:   I knew he was serious and --
 9                THE COURT:   He's answered the question.
10   Your next question.
11        BY MR. CARTER:
12        Q       When did you determine he was serious?
13   When --
14        A       I knew he was serious --
15                MS. BERNHARD:   Objection.   Asked and
16   answered.
17                MR. CARTER:   Well, excuse me.   There is an
18   objection.   The objection is asked and answered;
19   however, I don't think that objection should be
20   sustained since I'm getting different answers to these
21   questions and I think I should be allowed a certain
22   amount of latitude in order to get to the truth of the
23   matter, your Honor.
24                MS. BERNHARD:   He is not getting different
25   answers.   The minor's testimony has been that the
26   instant the words were uttered, in that instant he
27   thought it couldn't -- that the defendant wasn't serious
28   but by the time he had gotten off of the back of the
```

LASER BOND FORM A  ®  PENGAD • 1-800-631-6989

32

1    truck, at that point he thought he was serious.

2         THE COURT:   I'm going to make a ruling on

3    this.  First of all, we have a situation where defense

4    counsel is entitled to ask leading questions, entitled

5    to go into inconsistencies or apparent uncertainties and

6    the witness is testifying in a troubling area; this is

7    an unusual sort of thing.

8         But the Defendant's rights have to be

9    considered, too, and the fact that something may have

10   been asked and answered is normally an objection that

11   has reference to the proponent of the particular line of

12   questioning that is wanting to hammer something home by

13   asking it repeatedly in the presence of the tryer of

14   fact.

15        Now, I'm not a juror and I would like to

16   think that I will not be swayed by such theatrics, if

17   that indeed were a ploy -- it is probably stuffy of me

18   to think that, but I don't see that that attack it being

19   employed by Mr. Carter.  I think he is directed more to

20   the uncertainty aspect of this.  The objection is

21   overruled and maybe if you could restrain yourself on

22   that line of objection, Miss Bernhard, it would be

23   appreciated.

24        Let's move this matter along smoothly and

25   efficiently.

26        MR. CARTER:   I'll try my best, your Honor.

27   BY MR. CARTER:

28   Q    Earlier you said it was around the time

33

1    when John decided to drive the truck, that was when you

2    knew he was serious, is that true or not?

3        A      I knew he was serious when I -- I knew he

4    was serious right when I got out of the bed of the

5    truck, which isn't far from the door to the back of the

6    bed.

7        Q      Had he already told you he was going to

8    drive?

9        A      No.

10       Q      So why did you earlier say that it was when

11   he said he wanted to drive that you knew he was serious?

12       A      Because I didn't know what the answer was.

13   I knew he was serious.  I didn't believe -- I did

14   believe --

15       Q      Who have you discussed your testimony with

16   prior to today?

17       A      Sonny, Julius, and that -- my mom, but not

18   really.

19       Q      And did you talk to the Prosecutor, Miss

20   Bernhard, and the police officer, Mr. Grossi?

21       A      Yes.

22       Q      And then your mother?

23       A      Not really my mother, as much.

24       Q      Are those the only people you have

25   discussed this case with?

26       A      No.

27       Q      Who else have you discussed it with?

28              THE COURT:  Objection.  Relevance.

34

1          THE COURT:  Sounds to be.  I smell fish at

2     this point and the objection is sustained.

3          MR. CARTER:  May I put something on the

4     record in that regard?

5          THE COURT:  Go ahead.

6          MR. CARTER:  Thank you.  What my question

7     is directed at is not a fishing expedition as to

8     witnesses, but as to what preparation by outside people

9     this witness has received for his testimony here, which

10    goes to directly to his credibility at this hearing.

11         THE COURT:  Let me put the question this

12    way:  Apart from those three people, did you talk about

13    this with anyone else, Mr. Waller?

14         THE WITNESS:  Everybody knows about it.

15         THE COURT:  How many other folk did you

16    talk to about it?

17         THE WITNESS:  Did I talk to directly?

18         THE COURT:  Yeah, uh-huh.  Ball park.

19         THE WITNESS:  Would you like me to count?

20         THE COURT:  10, 20, a hundred?  What are we

21    looking at, just approximately?

22         THE WITNESS:  A lot.  Like 20, at least.

23         THE COURT:  Okay.  Now, apart from friends,

24    buddies, such as that, did you talk to anyone else in a

25    position of authority, an investigator, a D.A., an

26    attorney --

27         THE WITNESS:  Only them.

28         THE COURT:  -- a cop, somebody like that,

35

1    other than the people who have been mentioned so far

2    today about your testimony here today?

3              THE WITNESS:  No.

4              THE COURT:  So your other contacts were

5    pretty much like school chums, and things like that?

6              THE WITNESS:  Yes, just friends.

7              THE COURT:  What about family members?

8    Your mother, stepmother, or who are we talking about?

9              THE WITNESS:  My mother.

10              THE COURT:  Any other family members you

11    talked with about this?

12              THE WITNESS:  My dad knows about it.

13              THE COURT:  How much did you talk to him

14    about it?

15              THE WITNESS:  Not much.  He knows.

16              THE COURT:  Any other adults?

17              THE WITNESS:  Sonny's mom.  She knows about

18    it.

19              THE COURT:  Go ahead, Mr. Carter.

20              MR. CARTER:  Thank you.

21        BY MR. CARTER:

22        Q    Did anyone advise you on how to testify

23    today?  That is, besides telling you to tell the truth?

24        A    No.

25        Q    No one at all?

26        A    No one told me what to say.

27        Q    And Mr. Morgan never touched you, nor did

28    he try to touch you, correct?

36

1     A     Huh—uh, no.

2     Q     That's correct?  That he never touched you?

3     A     Correct.

4     Q     Did it make you angry that he wouldn't let

5 you drive back?

6     A     Not really.

7     Q     Are you angry with Mr. Morgan in general?

8     A     Uh—huh, yes.  Very.

9     Q     When he said, as you testified, "How does

10 it feel to be come on to by a man," what kind of tone

11 did he use then?

12     A     Same one he used when he asked the first

13 question.

14     Q     Just kind of normal, casual?

15     A     Yeah.  Yeah.

16     Q     Did you answer him?

17     A     No, I don't think so, but I might have

18 mumbled something to myself but I don't remember.

19     Q     You don't remember at all?

20     A     I remember, but I mean —— I didn't give him

21 a straight answer, no.

22     Q     Did you give him any answer?

23     A     No.

24     Q     You only mumbled to yourself?

25     A     Yes.

26     Q     What did you mumble to yourself?

27     A     I don't know.  It was just ——

28             MS. BERNHARD:  Objection.  Relevance.

37

1          THE COURT:  Well, in any event he has

2    answered in the negative that he doesn't recall.  Let's

3    move on.

4          BY MR. CARTER:

5          Q      And then the Defendant said he'd take you

6    home as opposed to taking you to a friend's; is that

7    correct?

8          A      Correct.

9          Q      And he did take you home?

10         A      Correct.

11         Q      And there was nothing else bad that

12   happened the rest of that time, correct?

13         A      Correct.

14         Q      Did he tell you not to tell anyone about

15   it?

16         A      He said, "Are you going to tell your mom?"

17   And I said, "No."

18         Q      But he never told you not to tell anyone;

19   correct?  He only asked you if you were going to tell

20   your mom?

21         A      He said -- yeah.  Yeah, correct.

22         Q      Now, on previous occasions you had gotten

23   drunk at Mr. Morgan's house; is that correct?

24         A      Correct.  At his father's house and his

25   house.

26         Q      Did you ever get stoned with Mr. Morgan on

27   marijuana or any other drug?

28         A      I took one hit of marijuana from him at his

38

```
 1   brother's house.
 2        Q    Did he give you any drugs or alcohol the
 3   day that you say he asked to go down on you?
 4        A    Yes.  That was the day.
 5        Q    It was the same day?
 6        A    Same day.
 7        Q    This was the marijuana or the alcohol?
 8        A    The marijuana.
 9        Q    And you took one hit, you said?
10        A    (Witness gestures with head).
11        Q    Was this a joint or a bong?
12        A    Bong.
13        Q    Or a pipe?
14        A    Bong.
15        Q    It was a bong?
16        A    Uh-huh, small one.
17        Q    I'm sorry?
18        A    Small one.
19        Q    Small one.  You have indicated about 4 or
20   5 inches high?
21        A    Yes.
22        Q    Did you get stoned off that?  Did you feel
23   the effects?
24        A    I don't know.  I felt weird.  I felt a
25   little fuzzy.
26        Q    Did you feel fuzzy when the car was parked
27   and you say Mr. Morgan said these things to you?
28        A    The whole time.
```

39

```
1        Q      When you say fuzzy, what do you mean by
2   that?
3        A      Like all -- I don't know, just weird.
4        Q      How many times had you used marijuana
5   before?
6               MS. BERNHARD:  Objection; relevance.
7               MR. CARTER:  It goes to --
8               THE COURT:  Objection is overruled.
9               MR. CARTER:  Thank you.
10              THE WITNESS:  A few, a couple.  I mean, I
11  just -- I felt stoned.
12          BY MR. CARTER:
13       Q      Well, the question was how many times you
14  have done marijuana before that day?
15              THE COURT:  Just about?
16              THE WITNESS:  Just a few.  I mean, a few, a
17  couple of times with my friends.
18          BY MR. CARTER:
19       Q      So 3 times, or more than that?
20       A      4 or 5 times, a few times.
21       Q      With these same friends that you have
22  talked to?
23       A      No.
24              MR. CARTER:  No further questions, your
25  Honor.  Thank you very much.
26              THE COURT:  Any redirect?
27              MS. BERNHARD:  Yes.  Two questions.
28
```

40

1                        REDIRECT EXAMINATION

2

3      BY MS. BERNHARD:

4          Q       The Defendant gave you alcohol when you

5      spent the night at his house?

6          A       Yes.

7          Q       Where was that house located?

8          A       Hidden Valley.

9          Q       That is here in Lake County?

10         A       Yes.

11                 MS. BERNHARD: I have no further questions.

12                 THE COURT:  Mr. Carter?

13                 MS. BERNHARD:  Nothing further, your Honor.

14     Thank you.  Mr. WalLer will be excused from further

15     attendance here?

16                 MS. BERNHARD:  Yes.

17                 THE COURT:  Okay.

18                 THE COURT:  Further witnesses or evidence,

19     or is the matter submitted?

20                 MS. BERNHARD:  I just have 2 quick

21     witnesses.  The People call Sonny Pierson.

22                 THE COURT:  Officer Grossi, why don't you

23     show him out.  Thanks.  While that is going on, I have a

24     question for you, folks.

25                 What I'm seeing her so far unless you can

26     articulate some other construction of the evidence as

27     what I have seen is a 664 relative to this, more like an

28     attempt than a completed act.

41

1          MS. BERNHARD:  Your Honor, 647.6 does not

2    require a touching.  I think the -- the statements --

3          THE COURT:  I don't know.  I'll have to

4    ponder that.  Thank you. Officer Gross.  All right.  Why

5    don't you come on up here, please.

6          Face the clerk raise your right hand and

7    she will swear you in at this time.

8

9                    SONNY PIERSON,

10

11               having been duly sworn by the Clerk of the

12               Court, was examined and testified as

13               follows:

14          THE COURT:  Thank you, sir.  Please be

15    seated over here.

16

17                DIRECT EXAMINATION

18

19      BY MS. BERNHARD:

20      Q     Would you please state your name and spell

21    your last name for the record.

22      A     Sonny Pierson, P-i-e-r-s-o-n.

23      Q     Do you know John Morgan?

24      A     Yes.

25      Q     Do you see him in the courtroom today?

26      A     Yes.

27      Q     Could you please point him out and describe

28    what he is wearing for the record?

42

1      A      Uh-huh.  Yellow jumpsuit of some sort.

2             THE COURT:  Indicating Mr. Morgan, the

3   Defendant, for the record.  By the way I'm going to ask

4   that you answer other than "yep" or "nope."  "Yes" or

5   "no" is a lot better and, also, when a question is asked

6   of you, wait for a few moments until the question is

7   complete before you start to answer; otherwise it is

8   really rough on the reporter.  Okay?

9             THE WITNESS:  All right.

10            THE COURT:  Go ahead, please.

11     BY MS. BERNHARD:

12     Q      Have you ever -- are you friends with the

13   Defendant or were you friends with the Defendant?

14     A      Was, yeah.

15     Q      Okay.  Did you ever spend the night at the

16   Defendant's home?

17     A      Yeah.

18     Q      Is that "yes"?

19     A      Yes.

20     Q      Do you remember when that was?

21     A      Sometime last year.  I don't remember

22   exactly.

23     Q      Okay.  Do you remember speaking with

24   Officer Grossi regarding this case?

25     A      Yeah.  Yes.

26     Q      And do you remember telling him that it was

27   sometime in February?

28            MR. CARTER:  Objection; leading.  Improper

43

1   effort to refresh recollection.

2           THE COURT:  Sustained.

3       BY MS. BERNHARD:

4       Q       Did you tell him that it was sometime in

5   February or March of 1997?

6           MR. CARTER:  Objection.

7           THE COURT:  Counsel, I'm going to sustain

8   the objection and I'm going to have to sanction you if

9   you keep repeating the question after an objection has

10  been sustained in that manner.  This is clearly leading.

11  Another way to get at it is with a Prop 115 with the

12  officer or something, but let's not --

13          MS. BERNHARD:  I'm trying to refresh --

14          THE COURT:  There is no indication that

15  this is a witness of such tender age that --

16          What is your date of birth?

17          THEE WITNESS:  7-22-81

18          THE COURT:  Thank you.  Let's go ahead.  In

19  that light, don't be leading.

20          MS. BERNHARD:  I'm attempting to refresh

21  his recollection.

22          THE COURT:  I know that it; is also

23  leading.

24          MR. CARTER:  It is also an improper form of

25  refreshing recollection.

26          THE COURT:  That is probably true.  There

27  we go.

28          BY MS. BERNHARD:

1    Q    Would you read the paragraph that is

2    highlighted just to yourself?

3    A    Yeah.

4    Q    Does that refresh your recollection as to

5    when that happened?

6    A    Yes.

7    Q    When was it?

8    A    It was in like February -- it was February

9    of like 1997.

10    Q    Okay.  And did anything unusual happen when

11    you spent the night at his house?

12    A    Not really.

13    Q    What happened when you spent the night

14    there?  What did you do?

15    A    We sat there and got drunk.

16    Q    And when you say "we," who else was there?

17    A    It was me, Keith, John, and a friend of

18    mine, Julius.

19    Q    And where was this house that you were

20    staying at?

21    A    It was his father's house, I think, in

22    Hidden Valley.

23    Q    And that is here in Lake County?

24    A    Yeah.

25         THE COURT:   When you refer to Keith, do you

26    know Keith's last name?

27         THE WITNESS:   Waller.

28         THE COURT:   Did you see him leaving the

45

1    courtroom here just a little bit ago?

2        A       Yeah, yes.

3                THE COURT:  Go ahead, please.

4    BY MS. BERNHARD:

5        Q       Where did you get the alcohol that you

6    drank there that night?

7        A       It was already there by the time we showed

8    up that night.

9        Q       Okay.  Did you have any idea where it had

10   come from?

11       A       I think -- I think it was Ray's, because

12   that is where he used to always go

13               MR. CARTER:  Objection.  Speculation.  Move

14   to strike.

15               MS. BERNHARD:  That's fine.

16               THE COURT:  Sustained.

17   BY MS. BERNHARD:

18       Q       Who gave you the alcohol?

19       A       John.

20               MS. BERNHARD:  I have no further questions.

21               THE COURT:  Cross.

22               MR. CARTER:  Nothing for this witness.

23               THE COURT:  Okay, sir, you may step down

24   and be excused at this time.  Further witnesses or

25   evidence?

26               MS. BERNHARD:  Yes.  The People call

27   Officer Grossi.

28               THE COURT:  Fair enough.

46

1                      DONALD GROSSI,

2

3          having been duly sworn by the Clerk of the

4          Court, was examined and testified as

5          follows:

6

7          THE COURT:   Thank you.  You maybe seated.

8

9                      DIRECT EXAMINATION

10

11     BY MS. BERNHARD:

12     Q     Could you please state your name and spell

13 your last name for the record?

14     A     Donald Gross, G-r-o-s-s-i.

15     Q     Where do you work?

16     A     In Clearlake Police Department.

17     Q     How long have you been be working there?

18     A     Approximately two-and-a-half years.

19     Q     Were you working there December 18th of

20 1997?

21     A     Yes.

22     Q     And did you have occasion that day to speak

23 with John Morgan?

24     A     Yes.

25     Q     Do you know John Morgan?

26     A     Yes.

27     Q     Did you know him prior to that day?

28     A     Yes.

1    Q    Do you see him in the courtroom today?

2    A    Yes, I do.

3    Q    Could you please point him out and describe

4  what he is wearing for the record?

5    A    The gentleman sitting next to Mr. Carter

6  with the yellow jail suit.

7        MR. CARTER:  Defendant Morgan for the

8  record.  Go ahead, please.

9    BY MS. BERNHARD:

10   A    How did you speak to Mr. Morgan that day?

11   A    By telephone.

12   Q    How did you know it was Mr. Morgan that you

13  were speaking to?

14   A    He identified -- I asked the person who

15  answered the phone, asked if it was John and he said,

16  yes, it was John.

17   Q    Okay.  Did you talk to Mr. Morgan about

18  this incident?

19   A    Yes.

20   Q    And what was the nature of that

21  conversation?

22   A    I asked -- told John that I had gotten some

23  information from a report and also from his brother that

24  he had been soliciting underage -- underage kids for

25  sex.

26   Q    At that time had you spoken to any -- any

27  potential victims in this case?

28   A    No.

1       Q       So was your -- were you just in the

2   beginnings of your investigation?

3       A       Yes.

4       Q       Okay.  Did the Defendant tell you anything

5   about any such incidents?

6       A       He told me -- well, I had asked him who the

7   boy -- who the boy named Sonny was that his brother

8   Robert was talking about that was mentioned in the

9   report, and he told me that he had lied when he told his

10  brother that it was Sonny, and that it was actually a

11  boy named Keith.

12      Q       Okay.  What did he tell you happened with

13  Keith?

14      A       He told me that he told Keith that he was

15  sick for asking this and then he asked him.

16      Q       What did he ask Keith.

17      Q       And he told me that he had asked Keith for

18  a blow job.

19      Q       Okay.  Did he tell you how old Keith was?

20      A       I believe he told me Keith was, he thought,

21  14 or 15.

22      Q       Okay.  And did he tell you Keith's last

23  name?

24      A       No, he didn't tell me -- he didn't know

25  Keith's last name.  He just told me that the boy's name

26  was actually Keith and that the police had taken a

27  report from him during that weekend.

28      Q       Okay.  Taken a report from whom?

49

1          A      From Keith.

2          Q      And what weekend was he referring to?

3          A      I believe the 18th was a Monday or -- I

4    believe it was a Monday, and it was that weekend prior

5    to that, so the 16th or 17th.

6          Q      So the weekend in December prior to the

7    18th?

8          A      Yeah.

9                 THE COURT:  "Yes"?

10                THE WITNESS:  Yes.

11                THE COURT:  Go ahead.

12         BY MS. BERNHARD:

13         Q      Did he say anything to you about his belief

14   regarding what he had done?

15         A      He told me he believed that he definitely

16   went too far.

17                MS. BERNHARD:  I have no further questions.

18                THE COURT:  Cross.

19                MR. CARTER:  Thank you.

20

21                        CROSS-EXAMINATION

22

23         BY MR. CARTER:

24         Q      So this statement you took was over the

25   telephone?

26         A      Yes.

27         Q      Did you ever meet with the person seated

28   next to me in person?

50

```
 1        A      No.

 2        Q      So you have no way of confirming that the

 3   person who spoke to you on the telephone was in fact the

 4   person seated to my right?

 5        A      By visual, no.  By the person who

 6   identified himself on the phone, yes.

 7        Q      Okay.  But it is conceivable, is it not,

 8   Officer, that it was someone besides John Morgan seated

 9   next to me who was speaking to you on the phone?

10        A      I guess it would be conceivable.

11        Q      What did you do besides asking the name to

12   confirm that this was in fact the John Morgan seated

13   next to me?

14        A      I talked to him probably about a couple of

15   personal things that I would maybe assume that he would

16   know.

17               MR. CARTER:  Nothing further.

18               THE COURT:  Redirect?

19               MS. BERNHARD:  No further questions.

20               THE COURT:  Thanks, officer.

21               Further witnesses or evidence for the

22   People?

23               MS. BERNHARD:  No further witnesses or

24   evidence.

25               THE COURT:  Will there be affirmative

26   evidence for the Defense at this stage of the

27   proceedings?

28               MR. CARTER:  No, your Honor.
```

1              THE COURT:   I'll see counsel for few

2    minutes and then we'll come back and address the matter

3    on the record.

4

5              (Recess)

6

7              MR. CARTER:   Your Honor, pursuant to what

8    we discussed in chambers about a possible resolution of

9    this matter by disposition -- negotiated disposition,

10   that is -- my client is willing to waive the single

11   session rule and have the preliminary hearing continued

12   to -- what would that be? -- May 7 at 8:15 for

13   conclusion, your Honor, and either disposition between

14   the Prosecution and the Defense or a decision on whether

15   or not there should be a holding order issued.

16             THE COURT:   Is that correct?  You are

17   prepared to waive the single session rule, Mr. Morgan?

18             THE DEFENDANT:  Yes, sir, it is.

19             THE COURT:   I want to put a few thoughts on

20   the record just so you have the Court's impression of

21   the matter up to this point -- I've only heard such

22   evidence as has been adduced here today and obviously

23   the Defendant had a prior conviction of this 13 years

24   ago, similar sort of act, apparently -- there may have

25   been other acts, of course, that we don't know about

26   that are unreported here that have not come to the

27   Court's attention -- but it seems to me the exposure of

28   six years for this act inasmuch as the act is not

52

1    coupled by force, threat, duress, menace, or anything of

2    the sort and the testimony of Investigator Grossi was

3    that the Defendant was really forthcoming with him

4    admitting his complicity and showing some remorse and

5    contrition in the matter and not trying to waffle or run

6    on the thing, all those factors considered lead me to

7    the thought that possibly some resolution short of the

8    logical consequence of this at a full 12 year

9    commitment, if you will, would be appropriate, and I

10   would encourage counsel to consider it if that is any

11   benefit to anyone here.

12              I'm not going to engage in sentencing

13   bargaining or anything of the sort.  I'm simply giving

14   you the impression of the Court at this juncture.  There

15   is enough for a holding order and that is where we are,

16   folks, so take that where you will and I'll see you back

17   here May the 7th at 8:15, and my thanks to one and all.

18              MR. CARTER:   Thank you, your Honor.

19              THE COURT:   I wouldn't be handing a good

20   conduct ribbon to the Defendant for whatever went on but

21   I'm not sure 12 years is proportionate, however.  Thank

22   you.

23

24

25

26

27

28

53

```
 1   STATE OF CALIFORNIA        )

 2                              )  ss

 3   COUNTY OF LAKE             )

 4

 5

 6              I, KATHERYN WEHINGER, Certified Shorthand

 7   Reporter in and for the County of Lake, State of

 8   California, do hereby certify:

 9              That the transcript herein consisting of 52

10   pages, was by me taken down in shorthand form at the

11   time and date first mentioned, that it was thereafter

12   reduced to typewriting under my direction and control,

13   that it is an accurate, and true, and correct

14   transcription of the proceedings.

15              I further certify that I am not of counsel

16   nor related to any of the parties involved herein, nor

17   am I interested in the outcome of the cause.

18

19

20   Dated:  May 11, 1998

21

22

23                           K. Wehinger

24                           KATHERYN WEHINGER

25                           License No. 1674

26

27

28
```

54

1  STEPHEN O. HEDSTROM (State Bar No. 64194)
   District Attorney
2  Angela L. Bernhard (State Bar No. 178888)
   Deputy District Attorney
3  County of Lake
   255 North Forbes Street
4  Lakeport, CA  95453

F I L E D
COUNTY OF LAKE

MAY 1 9 1998

Adam Ayala, Court Clerk

By _____
              Deputy Clerk

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF LAKE

10  THE PEOPLE OF THE STATE OF
    CALIFORNIA,

11              Plaintiff,              NO. CR 4609

12  vs.

13                                      INFORMATION

    JOHN STEVEN MORGAN,
14
                Defendant.
15  _____/

16                      COUNT I

17          The District Attorney of the County of Lake, State of California,

18  hereby accuses JOHN STEVEN MORGAN of a felony, to wit: a violation of

19  Section 647.6, subdivision (a) of the California Penal Code, in that said

20  defendant on or about the month of June, 1997, in the County of Lake, State

21  of California, did willfully and unlawfully annoy and molest a child under

22  the age of eighteen years, to wit, Keith W., of the age of 15 years, said

23  defendant having been previously convicted of the crime of Lewd or

24  Lascivious Acts W/Child Under 14 in violation of section 288, subdivision

25  (a) of the Penal Code on or about 29th day of June, 1984 in the Superior

26  Court of the Sacramento Judicial District of the State of California.

27          NOTICE:  Conviction of this offense will require you to register

28                              -1-

55

1  pursuant to Penal Code Section 290.  Willful failure to register is a

2  crime.

3                            COUNT II

4        The District Attorney of the County of Lake, State of California,

5  hereby accuses JOHN STEVEN MORGAN of a misdemeanor, to wit: a violation of

6  Section 272 of the California Penal Code, in that said defendant on or

7  between the month of February, 1997, through the month of March, 1997, in

8  the County of Lake, State of California, did willfully and unlawfully commit

9  an act and omit a performance of a duty causing and tending to cause and

10 encourage, and by threats, commands, and persuasion, inducing and

11 endeavoring to induce, a person under the age of eighteen years, to wit, 15

12 years, to come within the provisions of Welfare and Institutions Code

13 Sections 300, 601 and 602, to wit, to provide alcohol to Keith W., victim.

14                            COUNT III

15       The District Attorney of the County of Lake, State of California,

16 hereby accuses JOHN STEVEN MORGAN of a misdemeanor, to wit: a violation of

17 Section 272 of the California Penal Code, in that said defendant on or

18 between the month of February, 1997, through the month of March, 1997, in

19 the County of Lake, State of California, did willfully and unlawfully commit

20 an act and omit a performance of a duty causing and tending to cause and

21 encourage, and by threats, commands, and persuasion, inducing and

22 endeavoring to induce, a person under the age of eighteen years, to wit, 16

23 years, to come within the provisions of Welfare and Institutions Code

24 Sections 300, 601 and 602, to wit, to provide alcohol to Sonny P., victim.

25              PRIOR SERIOUS OR VIOLENT FELONY CONVICTIONS

26       It is further alleged pursuant to Penal Code sections 1170.12,

27 subdivisions (a) through (d) and 667, subdivisions (b) through (i) that the

28                              -2-

56

1    defendant, has suffered the following prior conviction(s) of a serious or

2    violent felony or juvenile adjudication:

3    <u>Court Case</u>    <u>Code/Statute</u>    <u>Conviction Date</u>    <u>County</u>    <u>State</u>    <u>Court Type</u>

4    67646        288(a) PC        06/29/84        Sacramento    CA    Superior

5            Dated:  May 14, 1998

6                                Respectfully submitted,

7                                STEPHEN O. HEDSTROM
8                                District Attorney

9

10                        By _____
                                ANGELA L. BERNHARD
11                            Deputy District Attorney

12    _____

                                DISCOVERY REQUEST

13        Pursuant to Penal Code Section 1054.5, subdivision (b), the

14    People are hereby informally requesting that the defense provide materials

15    and information to the People, whenever known to or coming into the

16    possession of the defense, as required by Penal Code Sections 1054.3 and

17    1054.7.

18

19

20

21

22

23

24

25

26

27

28                                -3-

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LAKE | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 255 N. Forbes St. <br> MAILING ADDRESS: <br> CITY AND ZIP CODE: Lakeport, CA 95453 <br> BRANCH NAME: | **FILED** <br> **COUNTY OF LAKE** <br> MAY 1 8 1998 <br> Adam Ayala, Court Clerk <br> By _____ 9e~ _____ <br> Deputy Clerk |

PEOPLE OF THE STATE OF CALIFORNIA

vs.

DEFENDANT:   JOHN STEVEN MORGAN

| FINGERPRINT FORM | CASE NUMBER: <br> CR4609 |
|---|---|

## INSTRUCTIONS

Immediately following arraignment in superior court of a defendant charged with a felony or arraignment of a defendant by a municipal court judge sitting as a superior court judge, the court shall require the defendant to provide a right thumbprint on this form. In the event the defendant is convicted, this form shall be attached to the minute order reflecting the defendant's sentence and shall be permanently maintained in the court file. Please see Penal Code section 992 for further information, including when the defendant is physically unable to give a right thumbprint.

For a proper imprint and durable record, this form should be printed on paper that meets California Department of Justice specifications: a 99 pound white tab card or 100 pound white tab stock 0.0070 inch thick (0.0066 through 0.0074 inch is acceptable). Paper smoothness should be 100–140 sheffield units. The form should be printed with the grain left to right.

1. The box to the right contains the defendant's

   [XX] right thumbprint

   [ ] other print *(specify)*:



2. The print was taken on *(date)*:   5-18-98

3. The print was taken by   Richard Harr

   a. Name:

   b. Position:  Bailiff

   c. Badge or serial No.:   456

58

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LAKE
CRIMINAL MINUTES - ARRAIGNMENT
HON. DAVID W. HERRICK                    PAGE:  1

Reporter: *J. Colford*        Clerk: G. EGLI        Bailiff: D. HARR

For:  5/18/98  Monday      Dept: 1

3.  8:15 AM Case: CR4609      PEOPLE v. MORGAN, JOHN S.

   Case: CHILD MOLEST                                    Degree: F

   Event: ARRAIGNMENT                                    P= 3

 DEFNDT: JOHN STEVEN MORGAN *cust.*        P.D.: CARTER, STEPHEN C
        DOB: 11/16/60
        Custody: Y(JAIL ) Bail:$  30000

        *Charges*------------------------------    Dgr Plea & Date
        Ct  1: 647.6(a) PC                          F
               ANNOY/MOLEST CHILD UNDER 18 YRS.
        Ct  2: 272 PC                               M
               PROVIDING ALCOHOL TO MINOR
        Ct  3: 272 PC                               M
               FURNISH ALCOHOL TO MINOR

   *  IN CUSTODY - BAIL SET $30,000.

=========================================================CR02
PRESENT IN COURT:
  People by Deputy D.A.:            *K. Cope*
  Defendant  [✓] with Counsel [✓] in custody [] is not present
[] The Court finds defendant's non-appearance without justification.
  [] Bench Warrant ordered with: [] Bail set @ $           [] No Bail.
     Orders: [] O/R revoked  [] Bail revoked & forfeited.
[] Defendant waives time for [] trial [] sentencing thru _____
COURT ORDERS MATTER: [] Dropped
                [] Continued to _____ @ ____ am/pm []_____
WITNESSES:
EXHIBITS:
THE COURT:
  [✓] Informs defendant of Information filed against him/her; copy given
     to defendant.
  [✓] Advises Deft of constitutional rights; right to counsel; if counsel
     appointed, order for reimbursement of costs could be made.
  [✓] Appoints  *S. Carter*                    PD to represent defendant
  [] Defendant has retained private counsel:  _____
PLEA. Defendant enters personal plea(s) of:
  [] Guilty to counts:
  [✓] Not Guilty to all counts  _____
  [] Nolo Contendre to counts:
  [✓] and denies special allegations.
  [] No Information filed; defendant released from custody.

SET FOR: Motion Hrg *6-22-98* 8:15 am; TRC *6-29-98* 8:15 am; _____
         Jury Trial *7-7-98* 8:15 am; Bail Hrg _____ 8:15 am.
  [✓] Deft ordered to appear. [] Bail remains set at $_____
  [] Deft released on O/R upon new Agreement to Appear.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LAKE
CRIMINAL MINUTES - ARRAIGNMENT
HON. DAVID W. HERRICK                              PAGE:    2

For:  5/18/98  Monday        Dept: 1

  3.  8:15 AM Case: CR4609      PEOPLE v. MORGAN, JOHN S.
--------------------------------------------------------------------------

                      [✓] Defendant fingerprinted per Form CR-100
[] P.O. present oral recommendation for bail hearing.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LAKE
CRIMINAL MINUTES - LAW & MOTION
HON. DAVID W. HERRICK                    PAGE:   1

Reporter: C. Knudsen     Clerk: JOANN GALL     Bailiff:_____

For:  6/22/98 Monday      Dept: 1

9.  8:15 AM Case: CR4609     PEOPLE v. MORGAN, JOHN S.

Case: CHILD MOLEST                                      Degree: F

Event: OMNIBUS MOTION HEARING                           P= 4

DEFNDT: MORGAN, JOHN STEVEN          P.D.: CARTER, STEPHEN C.
        DOB: 11/16/60
        Custody: Y(JAIL ) Bail:$  30000

        *Charges*--------------------------------    Dgr Plea & Date
        Ct  1: 647.6(a) PC                            F NG 05/18/98
               ANNOY/MOLEST CHILD UNDER 18 YRS.
        Ct  2: 272 PC                                 M NG 05/18/98
               PROVIDING ALCOHOL TO MINOR
        Ct  3: 272 PC                                 M NG 05/18/98
               FURNISH ALCOHOL TO MINOR

        *  IN CUSTODY - BAIL SET $30,000.
           TIME EXPIRES 7-17-98

=================================================================CR15
PRESENT IN COURT:
    People by Deputy D.A.:  Fred Roper
    Defendant  ■ with Counsel ■ in custody  [] is not present
[] The Court finds defendant's non-appearance is without justification.
    [] Bench Warrant ordered with [] Bail set at $_____    [] No Bail.
    [] Orders [] O/R revoked  [] bail revoked & forfeited.
COURT ORDERS MATTER:  [] Dropped
                [] Continued to _____ @ _____ am/pm _____
[] Exhibits:
[] Witnesses sworn:_____
ENTRY/CHANGE OF PLEA:
    Prelim Hrg transcript [] judicially noticed [] received into evidence
[] Defendant withdraws plea and enters new plea of:
    [] Guilty to counts _____[] Admits special allegations(s)
    [] Nolo Contendre to counts _____
    [] Admits violation of conditions(s) _____
    [] Count(s) _____dismissed [] w/Harvey Waiver [] per 1385

[]  The Court adopts findings: Deft understands & freely waives consti-
    tutional rights against self-incrimination, of confrontation, of jury
    trial; understands nature of crime charged, consequences of plea/ad-
    mission; plea is freely/voluntarily given; factual basis exists for
    the plea/admission.

THE COURT ORDERS:
    ■ No motions filed; hearing dropped.
    [] MOTION _____ [] Granted [] Denied [] Submitted
    [] MOTION _____ [] Granted [] Denied [] Submitted

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LAKE
CRIMINAL MINUTES - TRIAL READINESS CONFERENCE
HON. DAVID W. HERRICK                                    PAGE:   1

Reporter: _Ray Cox_        Clerk:A. MULKA        Bailiff: _D. Haw_

For:  6/29/98  Monday        Dept: 1

   3.  8:15 AM Case: CR4609      PEOPLE v. MORGAN, JOHN S.

   Case: CHILD MOLEST                                         Degree: F

   Event: TRIAL READINESS CONFERENCE                          P= 2

DEFNDT: MORGAN, JOHN STEVEN ✓IC·         P.D.: CARTER, STEPHEN C. ✓
        DOB: 11/16/60
        Custody: Y(JAIL ) Bail:$  30000

      *Charges*------------------------------    Dgr Plea & Date
      Ct  1: 647.6(a) PC                          F NG 05/18/98
             ANNOY/MOLEST CHILD UNDER 18 YRS.
      Ct  2: 272 PC                               M NG 05/18/98
             PROVIDING ALCOHOL TO MINOR
      Ct  3: 272 PC                               M NG 05/18/98
             FURNISH ALCOHOL TO MINOR

   *   IN CUSTODY - BAIL SET $30,000.
       TIME EXPIRES 7-17-98

========================================================================CR03
PRESENT IN COURT:
  People by Deputy D.A.: _Angela Beinhard_
  Defendant [✓] with Counsel [✓] in custody  [] is not present

[] The Court finds defendant's non-appearance is without justification.
   [] Bench Warrant ordered with [] Bail set at $_____  [] No Bail.
      Orders [] O/R revoked  [] Bail revoked &  forfeited.
[] Defendant waives time for [] trial [] sentencing thru _____
COURT ORDERS MATTER: [] Dropped
            [] Continued to        @   am/pm []_____
   Trial date [✓] Confirmed  [] Vacated  [] Continued to _ext time - 5 days_
WITNESSES SWORN:
EXHIBITS:
ENTRY/CHANGE OF PLEA:
   Prelim Hrg transcript [] judicially noticed [] received into evidence
[] Defendant withdraws plea and enters new plea of: [] Guilty
   [] Nolo Contendre to counts _____  [] Admits priors
[] Count(s) _____     dismissed [] w/Harvey Waiver [] per 1385
[] The Court adopts findings: Deft understands & freely waives consti-
   tutional rights against self-incrimination, of confrontation, of jury
   trial; understands nature of crime charged, consequences of plea/ad-
   mission; plea is freely/voluntarily given; that factual basis exists
   for the plea/admission.
[] No motions filed; hearing dropped.
[] Motion _____
   [] Granted [] Denied [] Submitted [] No motions filed
[] Matter is referred to Probation Dept. for report/recommendation.
COURT ORDERS MATTER: [] SET for sentencing         @ 8:15 am
[✓] _Priors ordered bifurcated - to be heard by the jury following the trial._
CC: _DA, JAIL_ ✓

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LAKE
CRIMINAL MINUTES - TRIAL READINESS CONFERENCE
HON. DAVID W. HERRICK                              PAGE:   2

For:  6/29/98  Monday      Dept: 1

  3.  8:15 AM Case: CR4609      PEOPLE v. MORGAN, JOHN S.
------------------------------------------------------------------------


Defendant ordered to appear.  [] Witnesses ordered to appear.

[X] Court orders that the sheriff provide defendant with a haircut
    or street clothing prior to trial.

CALJIC 1.00

Members of the Jury:

You have heard all the evidence and the arguments of the attorneys, and now it is my duty to instruct you on the law that applies to this case. The law requires that I read the instructions to you. You will have these instructions in written form in the jury room to refer to during your deliberations.

You must base your decision on the facts and the law.

You have two duties to perform. First, you must determine what facts have been proved from the evidence received in the trial and not from any other source. A "fact" is something proved by the evidence, or by a stipulation. A stippulation is an agrement between the attorneys regarding the facts. Second, you must apply the law that I state to you, to the facts, as you determine them, and in this way arrive at your verdict.

You must accept and follow the law as I state it to you, regardless of whether you agree with the law. If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions.

You must not be influenced by pity for or prejudice against a defendant. You must not be biased against a defendant because he has been arrested for this offense, charged with a crime, or brought to trial. None of these circumstances is evidence of guilt and you must not infer or assume from any or all of them that a defendant is more likely to be guilty than not guilty. You must not be influenced by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling. Both the People and a defendant have a right to expect that you will conscientiously consider and weigh the evidence, apply the law, and reach a just verdict regardless of the consequences.

CALJIC 1.01

If any rule, direction or idea is repeated or stated in different ways in these instructions, no emphasis is intended and you must not draw any inference because of its repetition. Do not single out any particular sentence or any individual point or instruction and ignore the others. Consider the instructions as a whole and each in light of all the others.

The order in which the instructions are given has no significance as to their relative importance.

v5

CALJIC 1.02


Statements made by the attorneys during the trial are not evidence.

If an objection was sustained to a question, do not guess what the answer might have been. Do not speculate as to the reason for the objection.

Do not assume to be true any insinuation suggested by a question asked a witness. A question is not evidence and may be considered only as it helps you to understand the answer.

Do not consider for any purpose any offer of evidence that was rejected, or any evidence that was stricken by the court; treat it as though you had never heard of it.

However, if the attorneys have stipulated or agreed to a fact, you must regard that fact as proven.

CALJIC 1.03 (1998 Revision)

You must decide all questions of fact in this case from the evidence received in this trial and not from any other source.

You must not independently investigate the facts or the law or consider or discuss facts as to which there is no evidence. This means, for example, that you must not on your own visit the scene, conduct experiments, or consult reference works or persons for additional information.

You must not discuss this case with any other person except a fellow juror, and then only after the case is submitted to you for your decision and only when all twelve jurors are present in the jury room.

CALJIC 1.05

You have been given notebooks and pencils.

Notes are only an aid to memory and should not take precedence over recollection. A juror who does not take notes should rely on his or her recollection of the evidence and not be influenced by the fact that other jurors do take notes. Notes are for the note-taker's own personal use in refreshing his or her recollection of the evidence.

Finally, should any discrepancy exist between a juror's recollection of the evidence and a juror's notes, or between one juror's recollection and that of another, you may request that the reporter read back the relevant testimony which must prevail.

68

CALJIC 1.25

A minor is a person under 18 years of age.

69

CALJIC 2.00

Evidence consists of testimony of witnesses, writings, material objects, or anything presented to the senses and offered to prove the existence or non-existence of a fact.

Evidence is either direct or circumstantial.

Direct evidence is evidence that directly proves a fact.  It is evidence which by itself, if found to be true, establishes that fact.

Circumstantial evidence is evidence that, if found to be true, proves a fact from which an inference of the existence of another fact may be drawn.

An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence.

It is not necessary that facts be proved by direct evidence. They may be proved also by circumstantial evidence or by a combination of direct and circumstantial evidence.  Both direct and circumstantial evidence are acceptable as a means of proof.  Neither is entitled to any greater weight than the other.

CALJIC 2.01

However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.

Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt.

Also, if the circumstantial evidence as to any particular count permits two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, you must adopt that interpretation that points to the defendant's innocence, and reject that interpretation that points to his guilt.

If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable.

CALJIC 2.11

Neither side is required to call as witnesses all persons who may have been present at any of the events disclosed by the evidence or who may appear to have some knowledge of these events. Neither side is required to produce all objects or documents mentioned or suggested by the evidence.

CALJIC 2.13

Evidence that at some other time a witness made a statement or statements that are inconsistent or consistent with his testimony in this trial, may be considered by you not only for the purpose of testing the credibility of the witness, but also as evidence of the truth of the facts as stated by the witness on that former occasion.

CALJIC 2.20

Every person who testifies under oath is a witness. You are the sole judges of the believability of a witness and the weight to be given the testimony of each witness.

In determining the believability of a witness you may consider anything that has a tendency to prove or disprove the truthfulness of the testimony of the witness, including but not limited to any of the following:

The extent of the opportunity or ability of the witness to see or hear or otherwise become aware of any matter about which the witness testified;

The ability of the witness to remember or to communicate any matter about which the witness testified;

The character and quality of that testimony;

The demeanor and manner of the witness while testifying;

The existence or nonexistence of a bias, interest, or other motive;

The existence or nonexistence of any fact testified to by the witness;

The attitude of the witness toward this action or toward the giving of testimony;

A statement previously made by the witness that is consistent or inconsistent with his testimony.

CALJIC 2.21.1

Discrepancies in a witness's testimony or between a witness's testimony and that of other witnesses, if there were any, do not necessarily mean that a witness should be discredited. Failure of recollection is common. Innocent misrecollection is not uncommon. Two persons witnessing an incident or a transaction often will see or hear it differently. Whether a discrepancy pertains to an important matter or only to something trivial should be considered by you.

CALJIC 2.21.2

A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars.

CALJIC 2.22

You are not bound to decide an issue of fact in accordance with the testimony of a number of witnesses, which does not convince you, as against the testimony of a lesser number or other evidence, which appeals to your mind with more convincing force. You may not disregard the testimony of the greater number of witnesses merely from caprice, whim or prejudice, or from a desire to favor one side against the other. You must not decide an issue by the simple process of counting the number of witnesses. The final test is not in the number of witnesses, but in the convincing force of the evidence.

CALJIC 2.27
SUFFICIENCY OF TESTIMONY
OF ONE WITNESS


2.27


You should give the uncorroborated testimony of a single witness whatever weight you think it deserves.  Testimony by one witness which you believe concerning any fact [whose testimony about that fact does not require corroboration] is sufficient for the proof of that fact.  You should carefully review all the evidence upon which the proof of that fact depends.

78

CALJIC 2.60
DEFENDANT NOT TESTIFYING—NO
INFERENCE OF GUILT MAY BE DRAWN

2.60

A defendant in a criminal trial has a constitutional right
not to be compelled to testify.  You must not draw any inference
from the fact that a defendant does not testify.  Further, you
must neither discuss this matter nor permit it to enter into your
deliberations in any way.

79

CALJIC 2.61
DEFENDANT MAY RELY ON
STATE OF EVIDENCE


2.61


    In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the charge against him.  No lack of testimony on defendant's part will make up for a failure of proof by the People so as to support a finding against him on any such essential element.

90

CALJIC 2.71
ADMISSION——DEFINED

2.71

    An admission is a statement made by the defendant which does
not by itself acknowledge his guilt of the crime for which the
defendant is on trial, but which statement tends to prove his
guilt when considered with the rest of the evidence.

    You are the exclusive judges as to whether the defendant
made an admission, and if so, whether that statement is true in
whole or in part.

    Evidence of an oral admission of the defendant not made in
court should be viewed with caution.

8\

CALJIC 2.72
CORPUS DELICTI MUST BE PROVED
INDEPENDENT OF ADMISSION OR
CONFESSION

2.72

No person may be convicted of a criminal offense unless
there is some proof of each element of the crime independent of
any admission made by him outside of this trial.

The identity of the person who is alleged to have committed
a crime is not an element of the crime.  The identity may be
established by an admission.

82

CALJIC 4.20
VOLUNTARY INTOXICATION—NOT A
DEFENSE TO GENERAL INTENT CRIMES

4.20

No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition.

In the crimes charged in Counts One, Two and Three, the fact the defendant was voluntarily intoxicated is not a defense and does not relieve him of responsibility for the crime.

93

CALJIC 4.22
VOLUNTARY INTOXICATION---DEFINED

4.22

Intoxication of a person is voluntary if it results from the
willing use of any intoxicating liquor, drug or other substance,
knowing that it is capable of an intoxicating effect or when he
willingly assumes the risk of that effect.

Voluntary intoxication includes the voluntary ingestion,
injecting or taking by any other means of any intoxicating
liquor, drug or other substance.

84

CALJIC 2.90
PRESUMPTION OF INNOCENCE—REASONABLE
DOUBT—BURDEN OF PROOF

2.90

A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty.  This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt.

Reasonable doubt is defined as follows:  It is not a mere possible doubt;  because everything relating to human affairs is open to some possible or imaginary doubt.  It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.

CalJIC 16.440

95

Defendant is accused in Count I of having violated section 647.6 of the Penal Code.

Every person who annoys or molests any child under the age of 18 years is guilty of a violation of Penal Code section 647.6.

In order to prove this crime, each of the following elements must be proved:

1. A person engaged in acts or conduct directed at a child under the age of 18 years which would unhesitatingly disturb or irritate a normal person if directed at that person; and

2. The acts or conduct were motivated by an unnatural or abnormal sexual interest in Keith Waller.

It is not necessary that the acts or conduct actually disturb or irritate the child or that the body of the child be actually touched.

CALJIC 3.31.5
MENTAL STATE

3.31.5

　　In the crime charged in Count One there must exist a union or joint operation of act or conduct and a certain mental state in the mind of the perpetrator.  Unless this mental state exists the crime to which it relates is not committed.

　　The mental state required is included in the definition of the crime set forth elsewhere in these instructions.

(People v. Maurer 32 Cal. App. 4th 1121)

91

CALJIC 2.02
SUFFICIENCY OF CIRCUMSTANTIAL
EVIDENCE TO PROVE SPECIFIC INTENT
OR MENTAL STATE

2.02

The mental state with which an act is done may be shown by
the circumstances surrounding the commission of the act.
However, you may not find the defendant guilty of the crime
charged in Count one, unless the proved circumstances are not
only (1) consistent with the theory that the defendant had the
required mental stat] but (2) cannot be reconciled with any other
rational conclusion.

Also, if the evidence as to mental state permits two
reasonable interpretations, one of which points to the existence
of the mental state and the other its absence, you must adopt
that interpretation which points its absence.  If, on the other
hand, one interpretation of the evidence as to the mental state
appears to you to be reasonable and the other interpretation to
be unreasonable, you must accept the reasonable interpretation
and reject the unreasonable.



CALJIC 16.160 (1997 Revision)

Defendant is accused in Counts II and III of having committed the crime of contributing to the delinquency of a minor, a violation of section 272 of the Penal Code.

Any person who commits an act or omits the performance of a duty, which act or omission causes or tends to cause or encourage any person under the age of 18 years to become or continue to be a child who violates laws; to wit, a minor in possession of alcohol, or which act or omission contributes thereto, is guilty of contributing to the delinquency of a minor in violation of Penal Code section 272.

In order to prove this crime, each of the following elements must be proved:

1. A person committed an act or omitted to perform a duty; and

2. The act or omission caused or encouraged or contributed to causing or encouraging a person under the age of eighteen years to become or continue to be a child whp violates the law, to wit, a minor in possession of alcohol.

99

CALJIC 3.30
CONCURRENCE OF ACT AND GENERAL
CRIMINAL INTENT

3.30

        In the crimes Annoying or Molesting a Child and Contributing
to the Delinquency of a Minor charged in Counts One, Two and
Three there must exist a union or joint operation of act or
conduct and general criminal intent.  General intent does not
require an intent to violate the law.  When a person
intentionally does that which the law declares to be a crime, he
is acting with general criminal intent, even though he may not
know that his act or conduct is unlawful.

CALJIC 17.30
JURY NOT TO TAKE CUE FROM THE JUDGE


17.30


    I have not intended by anything I have said or done, or by
any questions that I may have asked, or by any ruling I may have
made, to intimate or suggest what you should find to be the
facts, or that I believe or disbelieve any witness.

    If anything I have done or said has seemed to so indicate,
you will disregard it and form your own conclusion.

CALJIC 17.31
ALL INSTRUCTIONS NOT
NECESSARILY APPLICABLE

17.31

The purpose of the court's instructions is to provide you
with the applicable law so that you may arrive at a just and
lawful verdict.  Whether some instructions apply will depend upon
what you find to be the facts.  Disregard any instruction which
applies to facts determined by you not to exist.  Do not conclude
that because an instruction has been given I am expressing an
opinion as to the facts.

CALJIC 17.40
INDIVIDUAL OPINION REQUIRED—
DUTY TO DELIBERATE

17.40

The People and the defendant are entitled to the individual opinion of each juror.

Each of you must consider the evidence for the purpose of reaching a verdict if you can do so.  Each of you must decide the case for yourself, but should do so only after discussing the evidence and instructions with the other jurors.

Do not hesitate to change an opinion if you are convinced it is wrong.  However, do not decide any question in a particular way because a majority of the jurors, or any of them, favor that decision.

Do not decide any issue in this case by the flip of a coin, or by any other chance determination.

03

CALJIC 17.41.1 (1998 New)
JUROR MISCONDUCT


17.41.1 (1998 New)


The integrity of a trial requires that jurors, at all times
during their deliberations, conduct themselves as required by
these instructions.  Accordingly, should it occur that any juror
refuses to deliberate or expresses an intention to disregard the
law or to decide the case based on penalty or punishment, or any
other improper basis, it is the obligation of the other jurors to
immediately advise the Court of the situation.

CALJIC 17.42
JURY MUST NOT CONSIDER PENALTY—
NON-CAPITAL CASE

17.42

In your deliberations do not discuss or consider the subject of penalty or punishment.  That subject must not in any way affect your verdict.

*06*

CALJIC 17.
JURY DELIBERA⁻⁻ ⁻NS

17.43

During deliberations, any question or r⁻ ⁻uest the jury may
have should be addressed to the Court.  Plea⁻⁻ understand that
counsel must first be contacted before a res⁻ ⁻nse can be
formulated.  If a readback of testimony is r⁻ ⁻uested, the
reporter will delete objections, rulings, an⁻ sidebar conferences
so that you will hear only the evidence that ⁻as actually
presented.  Please understand that it may ta⁻ ⁻ time to provide a
response.  Continue deliberating until you a⁻ ⁻ called back into
the courtroom.

CALJIC 17.47
ADMONITION AGAINST DISCLOSURE
OF JURY BALLOTING


17.47


    Do not disclose to anyone outside the jury, not even to me
or any member of my staff, either orally or in writing, how you
may be divided numerically in your balloting as to any issue,
unless I specifically direct otherwise.

CALJIC 17.49
USE OF MULTIPLE VERDICT
FORMS——IMPLIED ACQUITTAL–FIRST


17.49


    In this case there are two possible verdicts as to each
count.  These various possible verdicts are set forth in the
forms of verdict which you will receive.  Only one of the
possible verdicts may be returned by you as to any particular
count.  If you all have agreed upon one verdict as to a
particular count, the corresponding form is the only verdict form
to be signed as to that count.  The other forms are to be left
unsigned.

98

CALJIC 17.50 (1997 Revision)

You shall now retire and select one of your number to act as
foreperson. He or she will preside over your deliberations. In order
to reach verdicts, all twelve jurors must agree to the decision.  As
soon as you have agreed upon a verdict, so that when polled each may
state truthfully that the verdicts express his or her vote, have  them
dated and signed by your foreperson. Return any unsigned verdict
forms.

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LAKE
HON. ARTHUR H. MANN, JUDGE
JURY TRIAL MINUTES

DATE : JULY 7, 1998                           BAILIFF: D. HOOPER
COURT REPORTER: N. CHINEVERE                  CLERK: E. KEISER

PEOPLE OF THE STATE OF CALIFORNIA             DDA: A. BERNHARD

VS

JOHN S. MORGAN                                ATTY: S. CARTER

CASE NUMBER: CR 4609
EVENT: JURY TRIAL

TUESDAY, JULY 07, 1998

N. CHINEVERE IS REPORTING THIS DATE. A. BERNHARD IS PRESENT FOR THE
PEOPLE. THE DEFT IS PRESENT WITH COUNSEL S. CARTER.

BOTH COUNSEL, CLERK, COURT REPORTER MEET IN CHAMBERS WITH COURT
FOR BIFURCATION OF PRIORS: 1984-288(A)PC; 1993-368(A)PC; 1997-484(A)PC. COURT
RULES THAT ALL ARE ADMISSIBLE, BUT THE 1984-288(A)PC IS BIFURCATED FROM
THE READING OF INFORMATION TO JURY.

AT 10:10A.M. QUALIFICATION OATH IS GIVEN TO PROSPECTIVE JURORS AND JURY
SELECTION COMMENCES.
AT 10:57A.M. DEFENSE COUNSEL S CARTER QUESTIONS FOR CAUSE.
AT 11:24A.M. DDA A BERNHARD FOR THE PEOPLE QUESTIONS FOR CAUSE.

AT 11:34A.M. COURT IN RECESS. ALL PROSPECTIVE JURORS ARE ADMONISHED.

AT 11:47A.M. COURT RECONVENES. CONTINUED JURY SELECTION PROCEEDS.
AT 11:53A.M. DEFENSE COUNSEL S CARTER QUESTIONS FOR CAUSE.

AT 12:00P.M. COURT IN RECESS FOR LUNCH. ALL PROSPECTIVE JURORS ARE
ADMONISHED. COURT TO RECONVENE AT 1:30P.M.

AT 1:30P.M. COURT RECONVENES. CONTINUED JURY SELECTION PROCEEDS. DDA
A. BERNHARD QUESTIONS FOR CAUSE. AT 1:40P.M. JURY SELECTED BUT NOT
SWORN.

PEOPLE 'S EXHIBITS #1-TAPE RECORDING, #2-TRANSCRIPTION OF TAPE ARE MARKED
FOR PURPOSES OF 402 HEARING.

AT REQUEST OF DEFENSE, OUT OF PRESENCE OF JURY, MOVE TO DISMISS THIS JURY



PANEL, ALLEGING INFORMATION WAS INCORRECTLY READ TO JURY. COURT
DENIES DEFENSE MOTION. CLERK WILL READ INFORMATION TO JURY AS DIRECTED
BY COURT. A PORTION OF PROCEEDINGS UNDER 402 PROCEED OUT OF PRESENCE OF
JURY AS TO ADMISSIBILITY OF TAPED PHONE CONVERSATION. OFFICER DON GROSSI
IS SWORNED AND EXAMINED. BOTH COUNSEL ARGUE ADMISSIBILITY OF PHONE
CONVERSATION (TRANSCRIBED). COURT RULES THAT LINES 7 THRU 13 ON PAGE
ONE ARE NOT ADMISSIBLE; THAT PAGE TWO LINE 12, 3RD SENTENCE ARE NOT
ADMISSIBLE. COURT FINDS THAT ON PAGE TWO LINE 18, 23, & 24 ARE ADMISSIBLE.
COURT FINDS THAT PAGE FIVE, LINES 91/2 THRU 111/2 TO END OF FIRST SENTENCE IS
NOT ADMISSIBLE; AND PAGE FIVE FROM LINE 151/2 AND ON IS NOT ADMISSIBLE.


ALL JURORS PRESENT. JURORS ARE SWORN AND ACCEPTED.
1.  A109  2. A090  3. A059  4. A010  5. A020  6. A117
7.  A097  8. A034  9. A028  10. A057  11. A108  12. A107  ALT. A021

CLERK READS INFORMATION  TO JURY PANEL.
AT 2:27P.M. PEOPLE GIVE OPENING STATEMENT.
AT 2:30P.M. DEFENSE GIVE OPENING STATEMENT.
AT 2:40P.M. COURT GIVES PRETRIAL ADMONISHMENTS.

PEOPLE'S WITNESSES
AT 2:43P.M. KEITH G. WALLER-SWORN & EXAMINED.
AT 3:22P.M. JULIUS CHIONI-SWORN & EXAMINED.
AT 3:30P.M. CHARLES PIERSON-SWORN & EXAMINED.
AT 3:39P.M. ROBERT MORGAN-SWORN & EXAMINED.

COURT RECESSES UNTIL TOMORROW, JULY 08, 1998, AT 9 A.M.  JURORS ADMONISHED.

WEDNESDAY, JULY 8, 1998, CONT'D JURY TRIAL

N. CHINEVERE IS REPORTING THIS DATE.  DDA A. BERNHARD IS PRESENT FOR THE
THE PEOPLE. DEFT IS PRESENT IN CUSTODY WITH COUNSEL S. CARTER.  COURT
CONVENES OUT OF PRESENCE OF JURY FOR 402 HEARING.

402 HEARING PROCEEDS.  DDA REQUEST THAT INFORMATION ON LINE 20 BE
AMENDED TO READ JUNE 1997 IN STEAD OF JUNE 1996.  DEFENSE OBJECTS THAT
INFORMATION HAS ALREADY BEEN READ TO JURY. COURT GRANTS DDA REQUEST.
LINE 20 OF COMPLAINT IS AMENDED TO READ JUNE 1997.
AT 9:09A.M. RODNEY F DEWEY IS SWORN & EXAMINED FOR PURPOSES OF 402 HRG,
RELATING TO THE ADMISSIBILITY OF DEFT'S STATEMENTS.  COURT FINDS DEFT'S
STATEMENT TO BE ADMISSIBILE.

AT 9:26A.M. COURT RECONVENES IN PRESENCE OF JURY.

PEOPLE'S WITNESSES                                    PEOPLE EXHIBIT
                                                      #3-COPY OF TAPE
AT 9:27A.M. RODNEY F DEWEY-RESUMES STAND-ALREADY SWORN.  MARKED & REC'
AT 9:29A.M. DON GROSSI-SWORN & EXAMINED.
EXHIBIT #3-COPY OF TAPE IS PLAYED FOR JURY

AT 09:43 A.M. PEOPLE REST.
AT 09:43 A.M. DEFENSE REST.
AT 09:44 A.M. COURT IS NOW IN RECESS. BOTH COUNSEL MEET IN CHAMBERS
REGARDING JURY INSTRUCTIONS, JURORS ARE ADMONISHED.

101

AT 10:20A.M.  COURT RECONVENES.  ALL PARTIES PRESENT.  ALL JURORS PRESENT.

AT 10:23A.M. PEOPLE GIVE CLOSING ARGUMENT.
AT 10:35A.M. DEFENSE GIVE CLOSING ARGUMENT.
AT 10:52A.M. PEOPLE GIVE REBUTTAL ARGUMENT.
AT 11:01A.M. COURT GIVES JURY INSTRUCTIONS.
AT 11:22A.M. CLERK GIVES OATH TO BAILIFF.
AT 11:23A.M. JURY RETIRES TO DELIBERATE.
AT 11:40A.M. VERDICT.

ALL JURORS PRESENT.  DDA, DEFENSE COUNSEL, AND DEFT ARE NOT PRESENT.
COURT RECESSES UNTIL 1:30PM FOR PRESENCE OF ALL PARTIES AND READING
OF VERDICT.

AT 1:37P.M.  COURT RECONVENES.  ALL PARTIES PRESENT.  COURT ANNOUNCES
TO COUNSEL THAT JURY REACHED VERDICT PRIOR TO NOON RECESS.
AT 1:40P.M.  ALL JURORS PRESENT
AT 1:40P.M.  VERDICT IS READ.  DEFENDANT IS FOUND GUILTY ON COUNT I AS
CHARGED IN INFORMATION, COUNT II AS CHARGED IN INFORMATION, AND
COUNT III AS CHARGED IN INFORMATION.
AT 1:43P.M. COURT CONVENES OUT OF PRESENCE OF JURY FOR HEARING ON
PRIOR.  DEFT ADMITS PRIOR  288(A)PC SUFFERED ON JUNE 29, 1984.
AT 1:45P.M. COURT CONVENES IN PRESENCE OF JURY.  PRIOR HAVING BEEN
ADMITTED, COURT DISMISSES JURY.  CASE IS REFERRED TO PROBATION FOR A
REPORT AND RECOMMENDATION.  DEFT WAIVES TIME FOR SENTENCING AND CASE
IS CONTINUED TO JULY 31, 1998 AT 9AM FOR FELONY SENTENCING.  DEFT IS
REMANDED ON BAIL OF $30,000.00.

102

1

FILED IN OPEN COURT

JUL 0 8 1998

2

BY: _____

3

4

5

6

7                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                            FOR THE COUNTY OF LAKE

9      THE PEOPLE OF THE STATE OF
       CALIFORNIA,
10
               Plaintiff,                    No.  CR-4609
11
       vs.
12                                           VERDICT
       JOHN STEVEN MORGAN,                   COUNT I
13
               Defendant.
14      _____/

15          We, the jury, in the case of the People of the State of

16     California, Plaintiff, against JOHN STEVEN MORGAN, Defendant, find the

17     Defendant GUILTY of violating Section 647.6 of the Penal Code, Annoy or

18     Molest a Child, as charged in Count I of the Information.

19          Dated:  7 / 8 / 98

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

FILED IN OPEN COURT

JUL 0 8 1998

BY: _____

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LAKE

THE PEOPLE OF THE STATE OF
CALIFORNIA,

        Plaintiff,             No.  CR-4609

vs.

                                  VERDICT
JOHN STEVEN MORGAN,           COUNT II

        Defendant.
_____/

       We, the jury, in the case of the People of the State of

California, Plaintiff, against JOHN STEVEN MORGAN, Defendant, find the

Defendant GUILTY of violating Section 272 of the Penal Code, Contribute to

the Deliquency of a Child, as charged in Count II of the Information.

       Dated: 7/8/98

104

1

2

3

4

5

6

FILED IN OPEN COURT

JUL 0 8 1998

BY: [signature]

7                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                            FOR THE COUNTY OF LAKE

9    THE PEOPLE OF THE STATE OF
     CALIFORNIA,
10
             Plaintiff,                    No.   CR-4609
11
     vs.
12                                         VERDICT
     JOHN STEVEN MORGAN,                   COUNT III
13
             Defendant.
14   _____/

15         We, the jury, in the case of the People of the State of

16   California, Plaintiff, against JOHN STEVEN MORGAN, Defendant, find the

17   Defendant GUILTY of violating Section 272 of the Penal Code, Contributte to

18   the Deliquency of a Child, as charged in Count III of the Information.

19         Dated: 7/8/98

FILED
Lake County Superior / Municipal Court
NORTHLAKE DIVISION

JUL 3 1 1998

ADAM SWAEA, CLERK
By:_____
Deputy Clerk

105

JUL 21 1998

```
 1

 2

 3

 4

 5

 6

 7            SUPERIOR COURT, STATE OF CALIFORNIA, COUNTY OF LAKE

 8   THE PEOPLE OF THE STATE OF      )
     CALIFORNIA,                     )
 9                    Plaintiff,     )    CR-4609
     VS.                             )
10        JOHN S. MORGAN,            )
                                     )
11   _____Defendant__)

12              PROBATION OFFICER'S REPORT AND RECOMMENDATION

13                 TO THE ABOVE ENTITLED HONORABLE COURT

14   TRUE NAME:                  John Steven Morgan (37)

15
     ADDRESS:                    16292 19th Avenue
16                               Clearlake, California

17   CHARGED WITH:               Information

18                  COUNT I:     A felony violation of Section
                                 647.6(a) of the California
19                               Penal Code (annoy child under
                                 eighteen)
20

21                  COUNT II:    A misdemeanor violation of
                                 Section 272 of the California
22                               Penal Code (contributing to
                                 the delinquency of a minor)
23
                    COUNT III:   A misdemeanor violation of
24                               Section 272 of the California
                                 Penal Code (contributing to
25                               the delinquency of a minor)

26
```

106

|  |  |  |
|---|---|---|
| 1 |  | It was further alleged that |
| 2 |  | the defendant has a prior serious felony conviction |
| 3 |  | within the meaning of Penal Code Section 1170.12. |
| 4 | GUILTY OF: |  |
| 5 | COUNT I: | A felony violation of Section |
| 6 |  | 647.16(a) of the California Penal Code (annoy child under |
| 7 |  | eighteen) |
| 8 | COUNT II: | A misdemeanor violation of |
| 9 |  | Section 272 of the California Penal Code (contributing to |
| 10 |  | the delinquency of a minor) |
| 11 | COUNT III: | A misdemeanor violation of |
| 12 |  | Section 272 of the California Penal Code (contributing to |
| 13 |  | the delinquency of a minor) |
| 14 |  | The defendant admitted that he had a prior serious felony |
| 15 |  | conviction within the meaning of Penal Code Section 1170.12. |
| 16 | GUILTY BY: | Jury Verdict. |
| 17 | DATE OF OFFENSE: | Between June 1, and June 30, 1997 |
| 18 |  |  |
| 19 | DATE OF ARREST: | January 12, 1998 |
| 20 | ARRESTING AGENCY: | Clearlake Police Department |
| 21 | CUSTODIAL STATUS: | January 12, 1998, through July 31, 1998 (201 days) |
| 22 |  |  |
| 23 | REFERRAL DATE: | July 8, 1998 |
| 24 | PROBATION REPORT DUE: | July 24, 1998 |
| 25 | SENTENCING DATE: | July 31, 1998 |
| 26 | ATTORNEY FOR DEFENDANT: | Steve Carter (appointed) |

-2-

107

1  CODEFENDANT:                    None

2  PRIOR RECORD:  FBI: 541218V7  CII: A06619027  LCSO: 46144

3      Record checks with the FBI, CII, and DMV reveal the following:

4  DATE       PLACE          OFFENSE              DISPOSITION

5  10-12-79  Sacramento     459 PC               02-25-90,
                            (Burglary)           dismissed
6

7      The female victim in this case observed the defendant in her

8  residence when she returned home from shopping.    The defendant

9  attempted to flee but was apprehended.   The keys to his vehicle were

10  found inside the victim's residence.

11  06-02-83  Sacramento    1) 148 PC            06-10-83, 20 days
                            (Resisting          jail
12                          arrest)
                            2) 23103 VC
13                          (Reckless
                            driving)
14

15     When officers attempted to stop the defendant for a traffic

16  violation, he sped off at a high rate of speed.   A chase ensued.

17  Once his vehicle was stopped, he attempted to flee on foot and fought

18  with officers.

19  05-25-83  Sacramento    288(a) PC            06-25-84, 3 years
                            (Lewd and           CDC
20                          lascivious acts
                            with children
21                          under fourteen)

22

23     The victim, age five, the defendant's nephew, told officers that

24  the defendant had squeezed his penis "a lot of times."   When

25  interviewed, the defendant admitted fondling and orally copulating

26

his nephew.  He also admitted to fondling another twelve-year-old boy when interviewed in this case.

| | | | |
|---|---|---|---|
| 10-22-92 | Sacramento | 368 PC (Cruelty to elderly adult with likely great bodily injury) | 02-25-93, 5 years probation, 210 days jail |

   During an argument with a neighbor, the defendant grabbed and choked the seventy-year-old male victim.  The victim fell to the ground whereupon the defendant continued to strike and kick the victim.

| | | | |
|---|---|---|---|
| 10-20-95 | Clearlake | 647.6a PC (Annoy/child under eighteen) | Case no filed |

   The following was taken from Clearlake Police Department Report No. 95-8370.  The report indicated that on or around October 20, 1995, the defendant enticed two ten-year-old boys into his home with computer games.  Once the boys were in his home, John Morgan placed his penis by the mouth of one of the boys and grabbed the upper leg portion of the other boy and made verbal sexual advances.

   This case was not filed because both victims moved out of the area and were unable to be located.  The defendant admitted in this report he "may have gone over the edge" with these boys.  He also admitted this incident to me on December 20, 1998, during his interview.

/////

-4-

109

| 11-10-97 Clearlake | 484(a) PC<br>(Petty theft) | 12-26-97, 3 years<br>summary probation,<br>180 days jail |
|---|---|---|

The defendant admitted to shoplifting a bottle of vodka from Ray's Food Place in Clearlake.

INVESTIGATION:

The following information was obtained from Clearlake Police Department Report No. 97-3726.

On December 18, 1997, the Clearlake Police Department was made aware of the possibility of illegal behavior on the part of John Morgan involving several minors. The report indicated that some time around June 1, 1997, the defendant was with a fifteen-year-old victim (K.W.) driving around the area of Clearlake in the defendant's pickup truck. The defendant was allowing K.W. to drive his truck. The driver, K.W., brought the truck to a stop in an area where there were abandoned trailers; and both parties got out and were sitting in the bed of the truck talking. At this point, the defendant made the following statement to the victim, "I want to go down on you." The victim related he was shocked at what he heard and could not believe what he heard. The investigator asked the victim if he knew what the defendant had meant by the statement. The victim told the investigator that he thought John Morgan wanted to "suck his dick." The victim, K.W., related John Morgan then asked him, "How does it feel that you have been come on to by another guy?" The victim then

/////

\10

1  asked the defendant to take him home.    The defendant drove the victim

2  home at that time and left.

3      The victim related he told his mother about the incident with

4  John Morgan over that weekend.    The victim discussed with his mother

5  that he was embarrassed and did not want to report the incident to

6  the police because of becoming embarrassed further.    The victim and

7  his mother, Norma Waller, agreed to not call the police.

8

9      The victim, K.W., also related to the investigators that around

10  February or March of 1997, John Morgan provided the victim, K.W., and

11  another minor victim (S.P.) with alcohol which they did drink.    John

12  Morgan also offered marijuana to the minors which the victim, K.W.,

13  stated he refused.

14      The investigators also interviewed the victim, S.P., who

15  verified the alcohol incident in February or March of 1997.

16      On December 22, 1997, Detective Dewey of the Clearlake Police

17  Department reported a conversation from a chance meeting with John

18  Morgan who he met on the street.    He related John Morgan told him

19  that he "has urges but does not act on them."    John Morgan also made

20  the statement to Detective Dewey that he knows that he "is a male

21  pedophile."

22      On December 29, 1997, Detective Dewey obtained a written

23  statement from Robert Morgan, who is the brother of the defendant.

24  In this written statement, Robert Morgan related that his brother,

25

26  /////

-6-

1  John, admitted to him he had asked a fourteen-year-old boy by the

2  name of K.W. for sex.

3      On December 23, 1997, Detective Grossi of the Clearlake Police

4  Department had a taped phone conversation with John Morgan.  During

5  the course of this conversation, John Morgan admitted to saying to

6  the victim, K.W., "I told him that I was sick and I wanted to do

7  something I knew was wrong and I wasn't going to do it and he said

8  what, and I said I want to give you a blow job."  John Morgan also

9  admitted to knowing the victim, K.W., was fifteen years old.

10 DEFENDANT'S STATEMENT:

11

12     The defendant submitted the following written statement to the

13 probation officer:

14     "I verbally aproached a minor about sex."

15     On February 20, 1998, during my interview with the defendant, he

16 related the following information in regards to this incident.  He

17 stated he made no physical contact with the victim.  However, even

18 though he did not want to act, he had to make his wishes known to the

19 boy.  The defendant stated he had no desire for S.P. because he could

20 tell he was physically developed and had gone through puberty.

21 However, he was very curious about K.W. and wanted to see how

22 developed he was.  He had to let his desires be known to K.W.  He

23 stated that when K.W. appeared to be confused as to what he meant, he

24 pointed at K.W.'s crotch and said, "I want that."

25 /////

26

-7-

1   Mr. Morgan told me he is an admitted pedophile.  I asked him if

2   there were other occasions in which he has had to act on his desire

3   recently in the Clearlake area.  He stated that in 1995, he had a

4   couple of young boys in his house playing computer games.  He stated

5   he made suggestive sexual remarks towards both boys.  He also

6   remembered taking a shower and walking out to where the boys were at

7   and dropping the towel to allow them to see his penis.  (This

8   incident was described in the "Prior Record" under entry dated

9   October 20, 1995.)

10

11  The defendant stated that as soon as he is around young boys, he

12  gets a desire that he needs to act out sexually.

13  On July 16, 1998, during my interview with the defendant, he

14  stated he had nothing to add to his report.

15  SOCIAL HISTORY:

16  The information contained in this section and the following five

17  sections was obtained from the defendant.

18  John Steven Morgan was born on November 16, 1960, to Wilford and

19  Barbara Morgan and was the fifth of six children born to this union.

20  He has three older brothers and one older sister and one younger

21  sister.  All of his siblings still reside in California, and they

22  enjoy an ongoing relationship.  His parents were married until his

23  mother's death in April, 1994.  His seventy-four-year-old father

24  currently resides in the Middletown area.

25  /////

26

-8-

The defendant was born in Eureka, California. The defendant was raised in the Ukiah and Sacramento areas by both parents. He described his childhood years as satisfactory, stating he did not experience any major problems in his home. Most of his adult life, the defendant has lived in the Sacramento area and moved to Lake County in 1994.

The defendant is in good health but stated he is overweight; however, he is able to perform physical labor. The defendant claims to be a paranoid schizophrenic. In referring to his 1992 Sacramento County Superior Court case, it indicates he was being seen at Psych West in Sacramento. He was diagnosed as being paranoid and was prescribed Haldol. However, in November of 1992, his case was closed due to the defendant's nonattendance. The defendant claims he was being seen locally by Dr. David Nelson of Lake County Mental Health and was on a prescription for 24 mg. of Haldol daily.

The defendant denies using drugs or alcohol as a teenager. He stated that as an adult, he does drink occasionally but never to excess. He claims no other drug use.

EDUCATION:

The defendant graduated from Foothills High School in Sacramento in 1978. From 1994 through 1997, he has been enrolled in classes at Yuba College working towards an associates degree in accounting.

/////

MARITAL STATUS:

The defendant stated that he has never been married nor has he fathered any children.

MILITARY HISTORY:

In 1980, the defendant enlisted in the United States Navy; and in 1982, he received a general discharge under honorable conditions.

EMPLOYMENT HISTORY:        Social Security No ████████

The defendant has a poor work history and has been on work disability since March, 1994.    He stated that his last job was delivering newspapers in 1994.

FINANCIAL STATUS:

The defendant receives an SSI payment of $660.00 per month.    He claims no other income or government assistance.    The only property the defendant owns is a 1986 Toyota pickup.

The defendant lists his monthly expenses as follows:

| | |
|---|---|
| Food | $125.00 |
| Phone | 75.00 |
| Utilities | 10.00 |

RESTITUTION:

Not an issue.

LEGAL/PROBATION FEES:

During the interview, I spoke with the defendant about the possibility of him paying monthly probation supervision fees, reimbursing the County for the cost of the presentence investigation

-10-



and report, and the use of a public defender. The defendant agreed to pay these fees. Should the Court choose to impose these fees, it appears that $200.00 is an appropriate amount for the use of the public defender.

During the interview, the defendant was advised of his right to a hearing on the above-mentioned fees pursuant to Penal Code Section 1203.1b. Additionally, the defendant was advised of his right to a review of the fees based on a change of circumstance pursuant to Penal Code Section 1203.1b(f).

CLINICAL REPORTS:

None.

AGENCY CONTACTS:

None.

VICTIM'S STATEMENT:

On February 26, 1998, I spoke with Gary Waller, the father of the victim, K.W., and gave him the date of the sentencing in this case. He stated his wife would more than likely attend the sentencing. He also stated K.W. has not suffered any long-term affects from this incident.

On February 26, 1998, I spoke with Kimberly Pierson, the mother of the victim, S.P., and gave her the date of the sentencing in this case.

The victim was notified in writing of his rights and responsibilities pursuant to Penal Code Sections 1191.1, 1191.2, and 1191.3.

-11-

116

REFERENCES AND INTERESTED PARTIES:

    None.

PROBATION ELIGIBILITY:                    (Rule 413)

    (a)        The defendant is statutorily ineligible for probation

pursuant to Penal Code Section 1170.12.

CRITERIA AFFECTING PROBATION:             (Rule 414)

    Not applicable.

CIRCUMSTANCES IN AGGRAVATION:             (Rule 421)

    (a)(1)    The continued actions by the defendant to make sexual

advances on minors demonstrates a certain level of callousness. *No*

    (a)(8)    The defendant's own actions of allowing a minor to

drive his truck in order to entice or gain his confidence

demonstrates planning and sophistication. *No*

    (b)(2)    The defendant's prior convictions are significant and

continue in their seriousness.

    (b)(3)    The defendant has served a prior prison term for a

1984 conviction of a crime of a similar nature with a conviction for

a violation of Section 288 of the California Penal Code (lewd and

lascivious act with a child under fourteen).

    (b)(4)    The defendant was on a five-year felony probation

grant for a conviction on February 25, 1993, at the time of this

offense.

    (b)(5)    The defendant's prior performance on probation or

parole was unsatisfactory.

CIRCUMSTANCES IN MITIGATION:                    (Rule 423)

None.

CONCURRENT OR CONSECUTIVE SENTENCING:           (Rule 425)

The defendant has been found guilty of a felony and two misdemeanors. Because he will serve a mandatory prison term on the felony, it seems only appropriate for him to serve the misdemeanor sentencing concurrent to the felony term.

ENHANCEMENTS:

None.

EVALUATION AND RECOMMENDATION:

Appearing before the Court for consideration is John Morgan, age thirty-seven, who was found guilty to a felony violation of annoying a child under eighteen. On December 18, 1997, the Clearlake Police Department was made aware of possible illegal behavior on the part of John Morgan involving minors. The report indicated that some time around June 1, 1997, the defendant, while in the company of a fifteen-year-old male victim, made sexual advances and told the victim that he wanted to "suck his dick."

The defendant is statutorily ineligible for probation, therefore, a term in the State Prison is being recommended. In that respect, the many circumstances in aggravation easily support a recommendation of the upper term. Therefore, the upper term of six (6) years is being recommended.

/////

-13-

1    THEREFORE, YOUR HONOR, it is respectfully recommended that

2  probation be denied and for the felony violation of Section 647.6(a)

3  of the California Penal Code, as found in Count I of the Information,

4  the defendant be imprisoned in the State Prison for the upper term of

5  six (6) years.

6    Pursuant to Penal Code Section 1170.12(c)(1), it is further

7  recommended the term imposed in Count I be doubled.  This represents

8  a total of twelve (12) years.

9    It is further recommended for the misdemeanor violation of

10  Section 272 of the California Penal Code, as found in Count II of the

11  Information, the defendant be sentenced to one hundred fifteen (115)

12  days.

13

14    It is further recommended for the misdemeanor violation of

15  Section 272 of the California Penal Code, as found in Count III of

16  the Information, the defendant be sentenced to one hundred fifteen

17  (115) days.

18    It is further recommended that the terms in Count II and Count

19  III run concurrent to Count I.

20    It is further recommended that the defendant pay a restitution

21  fine in the amount of $2,400.00.

22    It is further recommended that the defendant pay an additional

23  restitution fine in the sum of $2,400.00 to be stayed unless the

24  defendant's parole is revoked.

25  /////

26

-14-

1    It is further recommended that the defendant pay a fine in the

2  sum of the $300.00 pursuant to the provision of Penal Code Section

3  290.3.

4    It is further recommended that the defendant receive credit

5  pursuant to Penal Code Section 2900.5 for two hundred one (201) days.

6    Pursuant to Penal Code Section 2933.1, the defendant is only

7  eligible for fifteen percent (15%) conduct credits or thirty (30)

8  days.  The aggregate credit is two hundred thirty-one (231) days.

9

10    In addition to the above presentence credits, the defendant may

11  be entitled to a reduction of fifteen percent of the remaining

12  sentence for work time pursuant to Penal Code Section 2933.1.

13    Addressed envelopes and orders, pursuant to Penal Code Section

14  1202.05, have been lodged in the Court's file.

15    Respectfully submitted this 16th day of July, 1998.

16                        STEVEN. R. BUCHHOLZ
                         Probation Officer
17

18                      By

19                        PAUL A. HOCRATH
                         Deputy Probation Officer I
20

Read and considered:

21

22

JUDGE OF THE SUPERIOR COURT

23

A copy of this report was made available to the Lake County District
24  Attorney on July 21, 1998.

25

26                        By_____

-15-

120

1    A copy of this report was made available to Steven Carter on July 21,
2    1998.

3                                    By _Robert Buben_

-16-

121

1

2

3

4

5

6

7

8

            FILED
Lake County Superior / Municipal Court
NORTHLAKE DIVISION

JUL 3 1 1998

ADAM AYALA, CLERK

By:_____
            Deputy Clerk

SUPERIOR COURT, STATE OF CALIFORNIA, COUNTY OF LAKE

9  THE PEOPLE OF THE STATE OF   )   CR-4609
   CALIFORNIA,               )

10            Plaintiff,   )

11 VS.                  )   ORDER PROHIBITING VISITATION
     JOHN S. MORGAN,      )   BETWEEN DEFENDANT AND CHILD
                     )   VICTIM (1202.05 PC)

12          Defendant     )

13

14     Pursuant to the provisions of Penal Code Section 1202.05, there

15 is prohibited all visitation between the above-named defendant and

16 Keith G. Waller.

17 DATED: *July 31, 1998*

18

19

20                       JUDGE OF THE SUPERIOR COURT

21

22

23

24

25

26

27

28

-1-

132

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LAKE
CRIMINAL MINUTES - SENTENCING
HON. ARTHUR H. MANN                                    PAGE: 1

Reporter: _J. COLFORD_        Clerk: _E. KEISER_       Bailiff: _J. CAUDILLO_

For:  7/31/98  Friday      Dept: 3

  2.  9:00 AM Case: CR4609      PEOPLE v. MORGAN, JOHN S.

   Case: CHILD MOLEST                                        Degree: F

   Event: SENTENCING

  DEFNDT: MORGAN, JOHN STEVEN✓              P.D.: CARTER, STEPHEN C.✓
         DOB: 11/16/60
         Custody: Y(JAIL  ) Bail:$  30000

       *Charges*--------------------------------    Dgr Plea & Date
       Ct 1: 647.6(a) PC                             F NG 05/18/98
             ANNOY/MOLEST CHILD UNDER 18 YRS.
                DISP: 07/08/98 CONVICTED
         Ct 2: 272 PC                                M NG 05/18/98
             PROVIDING ALCOHOL TO MINOR
                DISP: 07/08/98 CONVICTED
         Ct 3: 272 PC                                M NG 05/18/98
             FURNISH ALCOHOL TO MINOR
                DISP: 07/08/98 CONVICTED

     *  IN CUSTODY - BAIL SET $30,000.
        TIME EXPIRES 08-05-98

=================================================================CR10
PRESENT IN COURT:
  People by Deputy D.A.: _F. RAPER_          P.O.:_____
  Defendant  ■ with Counsel ■ in custody  [] is not present
[] The Court finds defendant's non-appearance is without justification.
   [] Bench Warrant ordered with [] Bail set at $_____   [] No Bail.
   [] Orders [] O/R revoked  []·Bail revoked and forfeited.
■ THE COURT ANNOUNCES TENTATIVE DECISION.
[] Deft waives time for sentencing thru _____ [] Matter continued to
   _____ at_____ [] for _____ [] Deft ordered to appear.
■ Report/Recommendation of P.O. (incl supplements) read and considered.
  Witnesses sworn:_____
  Exhibits:_____
■ PROBATION  [] Granted ■ Denied; imposition of sentence suspended for
  _____years; defendant ordered to comply with attached terms/conditions
  [] as modified:_____
                 _____

■ Defendant ■ does [] does not appear to pose a danger if not in prison.

  IT IS THE JUDGMENT OF THE COURT that defendant is guilty of the follow-
  ing charges for which the ■ Upper [] Middle [] Lower term is selected;
  the following terms in [] State Prison [] Lake Co. Jail are imposed:
  _647.6 (a) PC_ Ct_1_: _6_years _0_ mos. _____  Ct__: _years__mos.
  _272 PC_    Ct_2_: _years _6_ mos. _____  Ct__: _years__mos.
  for enhancement per_1170.12(c)(1)_Deft. to serve consecutive _6_yrs. on Ct _1_
   _272 PC_    CT 3       _6_ mos.
                                    conc

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LAKE
CRIMINAL MINUTES - SENTENCING
HON. ARTHUR H. MANN                         PAGE:    2

For:  7/31/98  Friday      Dept: 3

  2.  9:00 AM Case: CR4609     PEOPLE v. MORGAN, JOHN S.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____
_____
_____

[] Deft advised of obligation to reimburse costs incurred by Probation Dep
   [] Deft waives right to hearing and Court enters order.
   [] Reimbursement hearing set for _____ @ 8:15 a.m.
[] Court finds Deft potential narcotic addict; suspends these proceedings;
   directs DA file 3051 WI petition; set _____8:15 a.m. for furth proc.
■ Court orders *Count 2 + 3* terms served ■ concurrent [] consecutive
   & designates term imposed on Ct. *1* _____ as principal term.
[] Pursuant 1170.1(a) PC, all of term imposed on Cts _____
   except _____on each term is stayed temporarily; stay to become
   permanent on service of unstayed term.
■ Total term imposed is *12* years *0* months.
■ Credits: *201* days served plus *40* good/work time = total *241* days.
■ Deft ordered to pay: Restitution Fine $*2,400*; Fine $_____; Penalty
   Assessment $____; [] Criminal Lab Analysis Fee of $50 plus Penalty
   Assessment of $85 per 11372.5 H&S; [] Drug Program Fine of $150 plus
   Penalty Assessment of $255 per 11372.7 H&S; [] Fine of $70 per 11377(c)
   H&S; [] Crim Justice Admin Fee of $70.09 per 29550 GC.
■ Court Orders the deft pay an additional Restitution Fine in the sum
   of $*2,400* to be stayed unless the deft's parole is revoked.
[] Court directs deft participate in a counseling or education program
   having a substance abuse component while imprisoned per 1203.096 PC.
■ Pursuant to 1202.05 PC, the Court directs entry of an Order prohibiting
   visitation between the deft and the victim.
■ Deft advised of ■ parole; ■ appeal; ■ cust/credit calculations.
■ Deft is remanded to custody of sheriff to: [] serve time imposed;
   ■ be delivered to CDC ■ San Quentin [] to be held until accepted by
   CYA; [] Deft Ordered housed at CYA pursuant to 1731.5(c) WIC;
   [] the Court having found a just disposition of case requires
   diagnostic & treatment services described in 1203.03 PC.
[] Deft's bail Ordered exonerated.

■ Deft Ordered to register pursuant to 290 PC.

[] Deft Ordered to register pursuant to 11590 H&S.

[] Reimbursement Order made in form signed this date.
[] _____
   _____
   _____

## ABSTRACT OF JUDGMENT – PRISON COMMITMENT

FORM DSL 290

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LAKE** | **FILED**<br>Lake County Superior / Municipal Court<br>NORTHLAKE DIVISION |
| BRANCH **SUPERIOR – NORTHLAKE #3** | |

COURT I.D. `S 1 1 7 1 0 1 1 0 0`

CASE NUMBER (S)

PEOPLE OF THE STATE OF CALIFORNIA versus
DEFENDANT:  JOHN S. MORGAN
AKA:

☒ PRESENT  ☐ NOT PRESENT

| CR 4609 | -A |
| | -B |
| | -C |
| | -D |
| | -E |

AUG 0 4 1998

ADAM AYALA, CLERK
By: _____ Deputy Clerk

COMMITMENT TO STATE PRISON
ABSTRACT OF JUDGMENT
AMENDED ABSTRACT ☐

| DATE OF HEARING (MO) (DAY) (YR) | DEPT. NO | JUDGE | CLERK |
|---|---|---|---|
| 07-31-98 | NORTHLAKE #3 | ARTHUR H. MANN | E. KEISER |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| J. COLFORD | F. RAPER | S. CARTER | P. HOCRATH |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES (OR ALTERNATE FELONY/MISDEMEANORS):

☐ ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT _____ (NUMBER OF PAGES) _____

SENTENCE RELATION

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO | DAY | YEAR | CONVICTED BY JURY TRIAL | COURT TRIAL | PLEA | TERM (3,4,5) | CONCURRENT | CONSECUTIVE 1/3 VIOLENT | CONSECUTIVE FULL TERM | MIDDLE LIFE SENTENCED 3 OR PER A | B/4 STAY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YEARS | MONTHS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PC | 647.6(a) | ANNOY/MOLEST CHILD UNDER 18 YEARS | 97 | 07 | 08 | 98 | X | | | U | (PRINCIPAL) | | | | | 6 | 0 |
| 2 | PC | 272 | PROVIDE ALCOHOL TO MINOR | 97 | 07 | 08 | 98 | X | | | U | X | | | | | (0 | 6) |
| 3 | PC | 272 | PROVIDE ALCOHOL TO MINOR | 97 | 07 | 08 | 98 | X | | | U | X | | | | | (0 | 6) |

2. ENHANCEMENTS charged and found true TIED TO SPECIFIC COUNTS (mainly in the § 12022-series) including WEAPONS, INJURY, LARGE AMOUNTS OF CONTROLLED SUBSTANCES, BAIL STATUS, ETC.:
For each count list enhancements horizontally. Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385.
Add up time for enhancements on each line and enter line total in right-hand column.

| Count | Enhancement | Yrs or 'S' | Enhancement | Yrs or 'S' | Enhancement | Yrs or 'S' | Enhancement | Yrs or 'S' | Enhancement | Yrs or 'S' | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

3. ENHANCEMENTS charged and found true FOR PRIOR CONVICTIONS OR PRIOR PRISON TERMS (mainly § 667-series) AND OTHER.
List all enhancements based on prior convictions or prior prison terms charged and found true, If 2 or more under the same section, repeat it for each enhancement (e.g., if 2 non-violent prior prison terms under § 667.5(b) list § 667.5(b) 2
times). Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add time for these enhancements and enter total in right-hand column. Also enter here any
other enhancement not provided for in space 2.

| Enhancement | Yrs or 'S' | Enhancement | Yrs or 'S' | Enhancement | Yrs or 'S' | Enhancement | Yrs or 'S' | Enhancement | Yrs or 'S' | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1170.12(c)(1) | 6 | | | | | | | | | 6 | 0 |
| Enhancement | Yrs or 'S' | Enhancement | Yrs or 'S' | Enhancement | Yrs or 'S' | Enhancement | Yrs or 'S' | | | |

4. INCOMPLETED SENTENCE(S) CONSECUTIVE:

| COUNTY | CASE NUMBER | CREDIT FOR TIME SERVED |
|---|---|---|
| | | |

5. OTHER ORDERS:
DEFT SHALL PAY R/F OF $2,400.00. DEFT SHALL PAY AN ADDITIONAL R/F OF $2,400.00 TO BE STAYED UNLESS PAROLE IS REVOKED. DEFT SHALL REGISTER PURSUANT TO 290PC. PURSUANT TO 1202.05 ORDER PROHIBITING VISITATION BETWEEN DEFT & VICTIM IS MADE.

Use additional sheets of plain paper if necessary.

6. TOTAL TIME IMPOSED ON ALL ATTACHMENT PAGES (FORM DSL 290-A):

7. TIME STAYED TO COMPLY WITH 5-YEAR OR 10-YEAR LIMIT ON SUBORDINATE TERMS, DOUBLE-BASED-TERM LIMIT, ETC. (Do not include § 654 stays or discretionary stays of term for enhancements.)

8. TOTAL TIME IMPOSED: 12 0

9. EXECUTION OF SENTENCE IMPOSED:
A. ☒ AT INITIAL SENTENCING HEARING  B. ☐ AT RESENTENCING PURSUANT TO DECISION ON APPEAL  C. ☐ AFTER REVOCATION OF PROBATION  D. ☐ AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT (PC § 1170(d))  E. ☐ OTHER _____

| 10. DATE OF SENTENCE PRONOUNCED (MO) (DAY) (YR) | CREDIT FOR TIME SPENT IN CUSTODY | TOTAL DAYS | ACTUAL LOCAL TIME | LOCAL CONDUCT CREDITS | STATE INSTITUTIONS |
|---|---|---|---|---|---|
| 07-31-98 | 241 | INCLUDING: | 201 | 40 | ☐ DMH   ☐ CDC |

11. DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:

☒ INTO THE CUSTODY OF [COUNTY MUNICIPAL COURT] 48 HOURS, INCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS

☐ INTO THE CUSTODY OF THE DIRECTOR OF CORRECTIONS AT THE RECEPTION-GUIDANCE CENTER LOCATED AT:

☐ CALIF. INSTITUTION FOR WOMEN – FRONTERA
☐ CALIF. MEDICAL FACILITY – VACAVILLE
☐ CALIF. INSTITUTION FOR MEN – CHINO
☐ DEUEL VOC. INST.
☒ SAN QUENTIN
☐ OTHER (SPECIFY):

## CLERK OF THE COURT

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE 8-4-98 |
|---|---|

This form is prescribed under Penal Code § 1213.5 to satisfy the requirements of § 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

Form Adopted by the
Judicial Council of California
Effective April 1, 1990

### ABSTRACT OF JUDGMENT – PRISON COMMITMENT
FORM DSL 290

Pen.C. 1213.5

DISTRIBUTION:   PINK COPY – COURT FILE    YELLOW COPY – DEPARTMENT OF CORRECTIONS    WHITE COPY – ADMINISTRATIVE OFFICE OF THE COURTS

1    SUPERIOR COURT OF THE STATE OF CALIFORNIA

2     IN AND FOR THE COUNTY OF LAKE

3       ---oOo---

**FILED**

**COUNTY OF LAKE**

**AUG 0 5 1998**

Adam Ayala, Court Clerk

By _____

Deputy Clerk

```
 4   PEOPLE OF THE STATE OF      )
     CALIFORNIA,                 )
 5                               )
                Plaintiff,       )
 6                               )
            vs.                  )
 7                               )
     JOHN S. MORGAN,             )
 8                               )
                Defendant.       )      NO. CR 4609
 9   _____)
```

10       ---oOo---

11    REPORTER'S TRANSCRIPT OF

12  PRONOUNCEMENT OF JUDGMENT AND SENTENCE

13       ---oOo---

14      JULY 31, 1998

15       ---oOo---

16   BEFORE THE HONORABLE ARTHUR H. MANN

17       ---oOo---

18

19 APPEARANCES OF COUNSEL:

20 FOR THE PLAINTIFF:  FREDERICK S. RAPER
          DEPUTY DISTRICT ATTORNEY
21          255 NORTH FORBES STREET
          LAKEPORT, CA 95453
22

23 FOR THE DEFENDANT:  STEPHEN CARTER
          PUBLIC DEFENDER
24          255 NORTH FORBES STREET
          LAKEPORT, CA 95453

25

26

27 REPORTED BY:
  JAMES J. COLFORD, CSR
28 CALIFORNIA CSR NO. 1757

2

120

```
 1              JULY 31, 1998, LAKEPORT, CALIFORNIA
 2                          ---oOo---
 3              THE COURT:  Return to the matter of John
 4    Morgan.
 5              This matter's on calendar for sentencing;
 6    is it ready to proceed?
 7              MR. RAPER:  The People are ready, your
 8    Honor.
 9              MR. CARTER:  Yes, your Honor.
10              THE COURT:  Mr. Morgan, you can have a seat
11    at counsel table if you like.
12              The record will reflect the defendant is
13    present, represented by counsel Steve Carter; the People
14    are represented by Fred Raper.
15              Is formal arraignment for sentencing
16    waived?
17              MR. CARTER:  Yes, your Honor.
18              THE COURT:  For the record, I have read and
19    considered the probation officer's report and
20    recommendation, consisting of 16 pages.
21              That report is received into evidence for
22    the purposes of the sentencing hearing.
23              Any evidence for the People?
24              MR. RAPER:  No further evidence, your
25    Honor.
26              THE COURT:  Any evidence for the defendant?
27              MR. CARTER:  No evidence, your Honor, no.
28              THE COURT:  The evidence consisting only of
```

1    the probation officer's report, I would state by way of

2    a tentative decision that I'm inclined to follow the

3    recommendation.

4              Proceed to hearing any argument on the

5    issue of probation:

6              Mr. Carter, any argument on the probation

7    aspects of the report?

8              MR. CARTER:  Yes, your Honor.

9              Actually, your Honor, at this time -- and I

10   think this ties in with the probation issue -- at this

11   time we'd move the court to dismiss the prior serious

12   felony conviction, pursuant to Penal Code section

13   1170.12, under the law of People v. Romero and its

14   progeny;

15             And I'd like to include in my argument in

16   favor of probation my argument for the dismissal under

17   Romero, because if that were in fact dismissed then

18   probation would become an option.

19             At this point, because the strike was

20   admitted at trial, of course, it's not an option.  So I

21   think it would be most appropriate to make that argument

22   at this time.

23             Mr. Morgan has a fairly lengthy criminal

24   record.

25             His first contact with law enforcement was

26   in 1979.  That was a burglary offense; however that was

27   dismissed.

28             Next was June 1983, with a resisting arrest

1   and a reckless driving, and that was resolved with 20

2   days in county jail.

3              Next, in -- also in '83 was the actual

4   prior conviction that is the subject of this motion, the

5   288 A; and he received three years in prison for that.

6              After 1983, after that conviction, he went

7   over nine years before having another conviction.

8              And I think that is of note to the court,

9   because that shows that while the report makes clear,

10  the probation report makes clear, that Mr. Morgan admits

11  to being a pedophile, admits to having these continuing

12  feelings, from the time between 1983 and the current

13  charge he didn't act on it.

14             And I think that is significant when

15  considering whether or not the penalty for the prior

16  serious felony should be imposed.

17             He did have another conviction, in 1992.

18  That did not involve children or sexual conduct in any

19  way; that was a fight with an older gentleman.

20             And he was given probation on that, 210

21  days of jail.

22             He also had a petty theft, in 1997.

23             Clearly his record is not clean since the

24  time of the strike that is the subject of this motion,

25  however he's had no convictions of any kind for any

26  similar conduct in the intervening time.

27             The only things have been a fight with an

28  elderly person and then a petty theft.

5

1          Also in support of this motion I would ask

2    the court to ponder the actual evidence at this trial.

3          Mr. Morgan did not in any way, shape or

4    form attempt to actually touch the victim.  He didn't

5    even make a move toward doing it.  There was no attempt,

6    no nothing.

7          All he did was say something to the boy.

8          And while that is serious conduct, there

9    are certain things to note that come from the probation

10   report as well, and also at trial.

11         The victim testified at trial that this has

12   had no lasting impact upon him.  In fact when he first

13   heard it he didn't even think it was serious.

14         And also I'd note that the probation

15   officer has spoken to the boy's parents, and they

16   confirmed that, that it had no lasting impact on him.

17         In light of those facts, in light of the

18   fact that John Morgan is in apparently good health, he

19   has an honorable discharge from the United States Navy,

20   and the fact he's currently on disability and has not

21   suffered any conviction since 1983 for any behavior

22   similar to this, I would ask the court to not impose the

23   strike allegation, pursuant to 1170.12.

24         And also I'd ask the court to consider

25   granting Mr. Morgan probation, because it is more likely

26   that on probation, with mandatory in-residence

27   treatment, that Mr. Morgan's problem can be much better

28   addressed than it can be in prison where he's just

basically locked up.

I think it's fairly accepted in both the legal and medical communities that people with Mr. Morgan's problem respond best to formal programs which actually address his problem.

And we ask the court to consider these motions and grant them.

THE COURT: Thank you.

Mr. Raper, any argument on the request to strike the prior allegation, 288 A?

MR. RAPER: Yes, your Honor.

We'd urges the court to deny that request.

Mr. Morgan is the type of person that that residivist law was aimed at.

The prior conviction was for a sexual offense. In the meantime he's committed this sexual offense, for which he's been convicted.

There was the uncharged conduct in 1995. There's his admission in his background that says that he is a danger to children and a sexual predator, and by his own admission he says he's a pedophile.

And even with those convictions he didn't stay clean of crime, in that he committed a felony elder abuse also during that time period.

So all those factors, his continued criminal conduct, his continued preying on young boys, are all reasons why this court shouldn't strike the strike.

7

1      With regard to probation, he would be
2  ineligible, obviously, if the court doesn't strike the
3  strike, and in these circumstances I don't see how the
4  court can exercise that discretion.
5      He is a danger; he's a danger to the
6  public; he's especially a danger to young boys; and
7  because of that danger there's only one place for him,
8  and that is state prison.
9      THE COURT:  Thank you.
10      Mr. Carter, any rebuttal?
11      MR. CARTER:  Not on the issue of probation;
12      I only have further comment if probation is
13  denied.
14      THE COURT:  The motion to strike the prior
15  conviction of 288 A is denied.
16      The reason that the court denies that is
17  that:
18      The defendant has an extensive prior
19  record; he appears to be a danger to the public, and the
20  recidivism law, as the district attorney has pointed
21  out, seems to be adopted for just this type of case.
22      That being the case, the court would find
23  that the defendant is statutorily ineligible for
24  probation under Penal Code section 1170.12, and
25  probation is therefore denied.
26      Proceed to hearing any argument on the
27  appropriate base term.
28      Mr. Raper, any argument on the base term?

8

```
1                  MR. RAPER:  Well certainly circumstances in
2    aggravation exceed those by weight and number of those
3    in mitigation, and the upper term is the proper term,
4    and doubled for the strike.
5                  And we ask the court to follow the
6    recommendation of the probation department.
7                  THE COURT:  Thank you.
8                  Mr. Carter?
9                  MR. CARTER:  As the court knows, the court
10   need not make a finding regarding the mitigating and
11   aggravating circumstances if the court elects to impose
12   the mid term, and that is what we urge the court to do
13   here.
14                 I won't reiterate fully everything I've
15   already said regarding the Romero motion, however all of
16   those things that I mentioned then and will briefly
17   mention now I think apply.
18                 The conduct here is extremely less serious
19   than his prior conviction was for.
20                 This was only verbal conduct, and it was
21   not even an attempt to act on it.
22                 Mr. Morgan has been extremely forthright
23   with the probation officer.  He's hidden nothing about
24   his problems.
25                 He's admitted all along that he's had this
26   problem; he told the officers this previously.
27                 He's admitted all along this verbal
28   conduct, and while he does have a prior conviction for
```

1   288 A, I don't think that alone should elevate verbal

2   conduct to something where a man goes to prison for 12

3   years.

4           The fact of the matter is that this conduct

5   without the prior, the legislature has said, is

6   misdemeanor conduct.  It's only by the fact that he has

7   a prior that this is a felony to begin with;

8           And we ask the court to only impose the mid

9   term.

10          THE COURT:  Mr. Raper, any rebuttal?

11          MR. RAPER:  No; submitted, your Honor.

12          THE COURT:  The court would find the

13  following to be circumstances in aggravation in the

14  case:

15          First of all, the defendant has a prior --

16  a significant prior record with crimes that continue in

17  their seriousness.

18          He has served a prior prison term for a

19  1984 conviction of a crime of a similar nature.  With a

20  conviction for 288 A.

21          The defendant was on a five-year felony

22  probation grant at the time this offense was committed,

23  and his prior performance on probation has been

24  unsatisfy.

25          The probation officer has recommended

26  circumstances in aggravation numbers A 1 and A 8 from

27  rule 421, but I don't find those to be circumstances in

28  aggravation in this case.

```
 1          I find that there are no circumstances in
 2  mitigation.
 3          The court finds that the circumstances in
 4  aggravation outweigh the circumstances in mitigation
 5  both in number and in weight;
 6          I therefore elect to impose the upper term
 7  of six years.
 8          Is there any legal cause to show why
 9  judgment should not now be pronounced?
10          MR. CARTER:  No, your Honor.
11          THE COURT:  Mr. Morgan, you want to stand
12  for the imposition of sentence please?
13          It is the judgment of the court that the
14  defendant is guilty of a felony violation of Penal Code
15  section 647.6 subdivision A and that as punishment
16  therefor he be imprisoned in the state prison for the
17  upper term of six years.
18          It is further the judgment of the court
19  that pursuant to Penal Code section 1170.12 C 1 the term
20  is doubled, for an aggregate total term of 12 years.
21          It's further the judgment court that the
22  defendant is guilty of misdemeanor violations of Penal
23  Code section 272, as alleged in counts 2 and 3 of the
24  complaint, and that for each of those counts the
25  defendant serve 180 days concurrent with the 12 year
26  sentencing.
27          It is further the judgment of the court
28  that the defendant pay a restitution fine of 24 hundred
```

11

1   dollars, and that he pay an additional restitution fine

2   of 24 hundred dollars, which is stayed unless the

3   defendant's parole is revoked.

4           It is further the judgment court that the

5   defendant receive credit for time served, under 2900.5,

6   of 201 days, and that he receive behavioral credits of

7   30 days under Penal Code section 2933.1, for an

8   aggregate total credit of 231 days.

9           Mr. Morgan, statutory law provide for the

10  award of conduct- or work-time credits, and purusant to

11  Penal Code section 2933.1 your credits are limited to 15

12  percent of the sentence that has just been imposed by

13  the court.

14          It is also my duty to inform you that as a

15  part of this judgment and sentence you may be released

16  on parole after the expiration of the term of

17  imprisonment just imposed unless the Board of Prison

18  Terms waives parole for good cause.

19          The conditions and length of parole will be

20  determined by the Board of Prison Terms, but your parole

21  may not exceed a period of three years.

22          If you violate any conditions of your

23  parole you may be returned to custody for up to 12

24  months upon each parole revocation.

25          In the event your parole is revoked time

26  spent in custody due to revocation of parole will not be

27  credited toward the three-year limit on parole, however

28  the total of the parole period and the time spent in

1   custody due to revocation of parole may not exceed a

2   period of four years.

3                   It is also my duty to inform you that you

4   have the right to appeal to the appellate courts of this

5   state from this judgment imposing sentence.

6                   If you wish to file an appeal you must act

7   by filing a written notice of appeal, which must be

8   filed in this court and not in the court of appeals.

9                   Your notice of appeal must be signed by you

10  or your attorney, and it must clearly specify that you

11  are appealing, and just what it is that you're appealing

12  from.

13                  Your notice of appeal must be filed within

14  60 days from today's date.

15                  If you appeal you have the right to a

16  transcript and record of the trial court proceedings at

17  no cost to you.

18                  If you appeal and do not have the money to

19  hire an attorney to represent you on your appeal the

20  appellate court will appoint an attorney for you.

21                  It is your obligation to keep the appellate

22  court informed of your mailing address; they will then

23  be in touch with you to determine if you have the right

24  to a free lawyer, once you have filed your notice of

25  appeal.

26                  Do you understand your appellate rights as

27  I've outlined them for you?

28                  THE DEFENDANT:  Yes, sir, I do.

13

1          THE COURT:  And you understand unless Mr.

2    Carter has agreed to do so it is your obligation to file

3    your own notice of appeal, and it must be done within 60

4    days from today's date?

5          THE DEFENDANT:  I understand.

6          THE COURT:  Are there any questions that

7    you wish to ask me about your appeal rights?

8          THE DEFENDANT:  Not at this time.

9          THE COURT:  The court will also make an

10   order under Penal Code section 1202.5 prohibiting any

11   contact with the victim.

12          The court reporter is ordered to prepare a

13   transcript of the sentencing hearing.

14          And the defendant is remanded to the

15   custody of the sheriff, to be by him delivered to the

16   Department of Corrections.

17          MR. RAPER:  Judge, before we leave this

18   case:

19          I was looking at my notes, and I was

20   wondering as to the applicability of 2933.1 on credits.

21          I didn't find this to be a violent felony

22   under 667.5 C, and I would think 20 percent, rather than

23   15 percent, is proper.

24          THE COURT:  I believe you're correct, Mr.

25   Raper, so that the credits are limited to 20 percent,

26   rather than 15 percent.

27          That gives the defendant 40 days behavioral

28   credits, for an aggregate total credit of 241 days.

14

1    And the defendant is remanded to the

2 custody of the sheriff, to be delivered to the

3 Department of Corrections.

4

5    ---oOo---

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

1   STATE OF CALIFORNIA        )

2                             )  ss

3   COUNTY OF LAKE             )

4

5

6            I, JAMES J. COLFORD, a Certified Shorthand

7   Reporter in and for the County of Lake, State of

8   California, do hereby certify that:

9            The transcript herein, consisting of pages 1

10  through 14, was by me taken down in shorthand form at

11  the time and date first mentioned; that it was

12  thereafter reduced to typewriting under my direction and

13  control; and that it is an accurate, true, and correct

14  transcription of the proceedings had.

15            I further certify that I am not of counsel,

16  nor related to any of the parties involved herein, nor

17  am I interested in the outcome of the cause.

18

19

20  Dated:      August 5, 1998

21

22

23

24  _____

25                JAMES J. COLFORD, CSR

26                CALIFORNIA CSR NO. 1757

27

28

1  STEPHEN C. CARTER (S.B. #168276)
   ATTORNEY AT LAW
2  Post Office Box 1517
   Lower Lake, CA 95457
3  Telephone:   (707) 994-5933
   Facsimile:   (707) 994-6302
4
   Attorney for Defendant
5  John S. Morgan

6

7

8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF LAKE

10  THE PEOPLE OF THE STATE OF CALIFORNIA,    )    Case No.: CR-4609
                                              )
11              Plaintiff,                     )    **NOTICE OF APPEAL**
                                              )
12                                            )
                                              )
13                                            )
                                              )
14         vs.                                )
                                              )
15  JOHN S. MORGAN,                           )
                                              )
16              Defendant.                     )
                                              )
17  _____

18      TO: THE DISTRICT ATTORNEY OF LAKE COUNTY; AND TO THE CLERK OF
    THE SUPERIOR COURT, COUNTY OF LAKE, STATE OF CALIFORNIA
19
        PLEASE TAKE NOTICE that defendant in this action appeals to the Court of
20
    Appeal, First District, of the State of California from the final judgment of conviction and
21
    sentence.
22
    Dated: August 24, 1998
23

24

25                                    _____
                                      Stephen C. Carter
26                                    Attorney for Defendant
                                      John S. Morgan
27

28

**FILED**
COUNTY OF LAKE

AUG 2 4 1998

Adam Ayala, Court Clerk
By_____
   Deputy Clerk

## CLERK'S CERTIFICATE

       I, ADAM AYALA, Clerk of Superior Court of the County of Lake, State of California, do hereby certify that the instruments contained in the within and foregoing Clerk's Transcript on Appeal, are full, true, and correct and complete copies of original instruments in said foregoing entitled action, as the same appear and of record in my office at Lakeport, California.

       In witness whereof, I have hereunto set my hand and seal on   September 11, 1998  .



ADAM AYALA
Clerk of the Court

By _____
Deputy Clerk