**EXHIBIT  2**

# IN THE COURT OF APPEAL FOR THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT, DIVISION ONE

PEOPLE OF THE STATE OF CALIFORNIA, )
)
              Plaintiff and Respondent, )   No. A084106
)
                          v.  )   Lake County
)   No. CR-4609
JOHN S. MORGAN, )
)
            Defendant and Appellant. )
_____)

DOCKET
ADM-SF _____
CIV-SF
CR-SF 9980 1353
Entered by
Date 3-2-99
10-16-98

## APPELLANT'S OPENING BRIEF

Appeal from the Judgment of
the Superior Court of the State of California
County of Lake

### HONORABLE ARTHUR H. MANN, JUDGE

Judy Behrendt
Attorney at Law
State Bar Number 121763
845 Jefferson Street
Napa, California 94559
Telephone: (707) 252-2001

Counsel for Appellant
by Appointment of the
Court of Appeal under the
First District Appellate Project
Assisted Case System

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................….  ii

STATEMENT OF APPEALABILITY................................................……  1

STATEMENT OF THE CASE .................................................……  1

STATEMENT OF FACTS ..............................................................…….  3

ARGUMENT ........................................................................…….  6

    I.   ADMISSION AT TRIAL OF EVIDENCE OF
       APPELLANT'S CHARACTER WAS ERRONEOUS
       ND PREJUDICIAL ...........................................……………  6

       A.  Appellant's statement that he was a "male pedophile"
          constituted inadmissible character evidence ...............  6

       B.  Statements by Detective Grossi implying that appellant
          had been involved in previous inappropriate incidents
          with minors constituted inadmissible character evidence...  8

       C.  There is a reasonable probability that the outcome
          of appellant's trial was adversely affected by the
          introduction of inadmissible character evidence ............  11

    II.  DUAL USE OF APPELLANT'S PRIOR CONVICTION
       TO ELEVATE HIS OFFENSE TO A FELONY AND TO
       DOUBLE HIS SENTENCE UNDER THE THREE
       STRIKES LAW CONSTITUTED CRUEL AND
       UNUSUAL PUNISHMENT.............................….............  15

       A. The punishment is disproportionate as applied to this
          offense and this offender…………………………………  17

       B. The punishment is disproportionate when compared with
          punishments prescribed in California for other, more serious
          offenses ………………………………………………………  20

C. The punishment is disproportionate when compared to
recidivist punishments in other jurisdictions................ 21

D. Summary............................................................... 24

III.    APPELLANT IS ENTITLED TO PRESENTENCE
TIME CREDITS UNDER PENAL CODE SECTIONS
4019 AND 2900.5.............................................................. 26


CONCLUSION ..................................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Cacoperdo* v. *Demosthenes* (9th Cir. 1994) 37 F.3d 504 ......................................16

*Coker* v. *Georgia* (1977) 433 U.S. 584.................................................................16

*Gregg* v. *Georgia* (1976) 428 U.S. 153 ................................................................16

*In re DeBeque* (1989) 212 Cal.App.3d 241............................................................16

*In re Jones* (1996) 13 Cal.4th 552..................................................................10, 11

*In re Julius B.* (1977) 68 Cal.App.3d 395...........................................................10

*In re Lynch* (1972) 8 Cal.3d 410 ...............................................................passim

*In re Wells* (1975) 46 Cal.App.3d 592 ...............................................................18

*McGruder* v. *Puckett* (5th Cir. 1992) 954 F.2d 313...........................................16

*Oyler* v. *Bowles* (1962) 368 U.S. 448................................................................23

*People* v. *Allen* (1976) 65 Cal.App.3d 426 ....................................................6, 14

*People* v. *Anderson* (1972) 6 Cal.3d 628...........................................................16

*People* v. *Coronado* (1995) 12 Cal.4th 145 .......................................................25

*People* v. *Dillon* (1983) 34 Cal.3d 441.................................................15, 16, 17, 20

*People* v. *Guerrero* (1976) 16 Cal.3d 719......................................................6, 14

*People* v. *Hill* (1995) 37 Cal.App.4th 220 .........................................................26

*People* v. *Humphrey* (1996) 13 Cal.4th 1073 ......................................................11

*People* v. *Ledesma* (1987) 43 Cal.3d 171 ...........................................................11

*People* v. *Lewis* (1990) 50 Cal.3d 262 ................................................................... 11

*People* v. *Ruiz* (1975) 49 Cal.App.3d 739 ............................................................ 18

*People* v. *White Eagle* (1996) 48 Cal.App.4th 1511 ................................................25

*Riggs* v. *California* 99 C.D.O.S. 500 ....................................................................25

*Solem* v. *Helm* (1983) 463 U.S. 277 .............................................................16, 18

*State* v. *Brandt* (App. 1986) 110 Idaho 341 .......................................................23

*State* v. *Gauna* (App. 1989) 117 Idaho 83 .........................................................22

*State* v. *Harrison* (App. 1985) 108 Idaho 324 [699 P.2d 30, 31 ...............................23

*State* v. *Holton* (App. 1991) 120 Idaho 112 .......................................................23

*State* v. *McPhie* (1983) 104 Idaho 652 ..............................................................22

*State* v. *Pettitt* (1980) 93 Wash.2d 288 ..............................................................24

*State* v. *Ross* (1981) 30 Wash.App. 324 .............................................................24

*State* v. *Rowe* (1980) 93 Wash.2d 277 ...............................................................24

*United States* v. *Angulo-Lopez* ..........................................................................16

*United States* v. *Fisher* (5th Cir. 1994) 22 F.3d 574 .............................................16

*United States* v. *Frieberger* (8th Cir. 1994) 28 F.3d 916 ......................................16

*United States* v. *Lanier* (6th Cir. 1994) 33 F.3d 639 ............................................16

*United States* v. *Munoz* (1st Cir. 1994) 36 F.3d 1229 ..........................................16

*United States* v. *Sarbello* (3d Cir. 1993) 985 F.2d 716 .........................................16

## Statutes

Evidence Code section 1101 ................................................................6

Evidence Code section 1102 ................................................................6

Penal Code section 272 ..................................................................1, 2

Penal Code section 288 ...............................................................1, 2, 12

Penal Code §647.6 ....................................................................passim

Penal Code section 667, subdivision (a) ................................................21

Penal Code section 667, subdivisions (b) to (i) ......................................passim

Penal Code section 667, subdivision (e)(1) ...........................................2, 15

Penal Code section 667.5, subdivision (c) ................................................26

Penal Code section 1170.12, subdivisions. (a) to (d) .....................................1

Penal Code section 1237 ...................................................................1

Penal Code section 1237.1 ................................................................26

Penal Code section 2900.5 ................................................................26

Penal Code section 2933.1 ................................................................26

Penal Code section 4019 ..................................................................26

Rules of Court, Rule 10(d) ................................................................8

## Other Authorities

CALJIC 16.440 ...........................................................................13

Constitutional Provisions

California Constitution, article I, section 17..........................................................15

United States Constitution, Eighth Amendment .............................................15, 16

## STATEMENT OF APPEALABILITY

This appeal is from a final judgment following a jury trial and is authorized by Penal Code section 1237.[1]

## STATEMENT OF THE CASE

By information filed May 18, 1998, appellant was charged with one count of annoying or molesting a child under eighteen years with a prior conviction of section 288 (§647.6, subdivision (a)) (count one), and two counts of contributing to the delinquency of a minor (§272) (counts two and three). Additionally, it was alleged that appellant had previously been convicted of a serious or violent felony (a "strike" pursuant to §1170.12, subds. (a) to (d) and §667, subds. (b) to (i)). (Clerk's Transcript [CT] 54-56)

On June 29, 1998, a trial readiness conference was held at which time all allegations relating to prior convictions were bifurcated. (CT 61)

Jury trial commenced on July 7, 1998. (CT 99) Appellant's motion was granted requesting that the jury not be read the section 288 prior allegation contained in the information with regard to the section 647.6 count. (CT 99)

Appellant's motion to dismiss the jury panel because of an incorrect reading of the information was denied. (CT 99-100)

The trial court ruled in limine that specified portions of a taped telephone conversation with appellant were admissible. (CT 100) The court also ruled in

---

[1]    All statutory references are to the Penal Code unless otherwise indicated.

1

limine that statements made by appellant during a probation search were admissible. (CT 100)

The case was submitted to the jury on July 8, 1998. (CT 101) The jury returned verdicts of guilty on all charges. (CT 101-104)  Following the reading of the verdict, appellant admitted that he had suffered a prior conviction of section 288, subdivision (a). (CT 101)

On July 31, 1998, probation was denied and appellant was sentenced to twelve years in state prison. (CT 167) This sentence consisted of an upper term of six years doubled to twelve years pursuant to section 667, subdivision (e)(1), for violation of section 647.6, subdivision (a), and two concurrent terms of six months for the two convictions of section 272. (CT 122-124) The court ordered appellant to pay a restitution fine of $2400.00 and stayed an additional $2400.00 restitution fine pending successful completion of parole. (CT 123-124)

The court found that appellant was entitled to 201 days of actual custody credit and 40 days of conduct credit for a total of 241 days credit. (CT 123-124)

A Notice of Appeal was timely filed by appellant on August 24, 1998. (CT 141)

## STATEMENT OF FACTS

Keith Waller, age fifteen at the time of trial, knew appellant through a friend of Keith's who had previously been appellant's roommate. (Reporter's Transcript [RT] 52) Keith and appellant were friends. (RT 44) In February or March, 1997, Keith, who was then fourteen, and two other friends, spent the night at appellant's house and drank alcohol provided by appellant. (RT 44-45) Charles Pierson, who was fifteen years old at the time, was one of the friends who was provided alcohol during this incident. (RT 84-85)

In June, 1997, appellant picked Keith up at his house and let Keith drive his truck. (RT 46) Keith had driven appellant's truck numerous times before. (RT 58) They stopped at appellant's brother's house where Keith smoked a hit of marijuana. (RT 46, 54) Appellant also smoked some marijuana. (RT 62) Keith felt the effects of the marijuana. (RT 54-55) They drove to a location where there were some mobile homes that no one was living in. (RT 47) Appellant and Keith got out of the truck and Keith sat in the back of the truck. (RT 48) Appellant mumbled to himself that he wanted to do something and he was sure it wasn't right. (RT 49) Appellant then told Keith that he "wanted to go down on" him. (RT 48)

Keith was very upset and got out of the back of the truck and headed toward the driver's seat with the intent of leaving. (RT 50) Appellant told Keith to get in the passenger seat and Keith complied. (RT 50) They left and Keith

3

asked appellant to take him to a friend's house. (RT 50) Appellant told Keith he

was taking him home. (RT 50) On the way, appellant asked Keith, "How do you

feel now that you've been come onto by a man?" (RT 50) Appellant took Keith

home. (RT 50-51)

Keith had never had any problems with appellant prior to this incident. (RT

57) On the same day, following the incident, Keith told his friends, Julius Chioni

and Charles Pierson, that appellant tried to suck his penis. (RT 76-77, 85-86)

Keith told his mother what happened the next day but did not report the incident to

the police. (RT 51, 70)

In November, 1997, appellant had a conversation with a police officer in

which he admitted that he was a male pedophile and had urges that he did not act

upon. (RT 112-113)

In December, 1997, Keith's friends slashed appellant's brother's tires after

Keith told them that appellant was a "faggot." (RT 66-67) When police were

investigating the tire-slashing, Keith's friends told them about the earlier incident.

(RT 71-72) Appellant told his brother that he thought his tires had been slashed

because he had asked one of the boys for sex. (RT 90-91)

In a recorded telephone conversation with a police officer in December,

1997, appellant stated that during the incident, he had told Keith that he was sick

and wanted to do something that he knew was wrong, that he wanted to give him a

"blow job." (RT 121) Appellant had told Keith that he didn't want to do it but

4

that he felt like he wanted to do it.  (RT 122)  Appellant told Keith that he wasn't

going to do it because he knew it was wrong.  (RT 122)  Appellant told the officer

that he never intended to act on any urge with regard to Keith.  (RT 127)

Appellant told the officer that Keith was fifteen.  (RT 121)

## ARGUMENT

### I.   ADMISSION AT TRIAL OF EVIDENCE OF APPELLANT'S CHARACTER WAS ERRONEOUS AND PREJUDICIAL.

**A. Appellant's statement that he was a "male pedophile" constituted inadmissible character evidence.**

Approximately five months after the incident in question, during a probation search unrelated to the incident, appellant made a statement to police officers that he was a "male pedophile" and had urges that he didn't act upon. (RT 104-105) At a hearing outside the presence of the jury, trial counsel made a timely objection to the statement as inadmissible character evidence. The court ruled that the statement was admissible and allowed its introduction before the jury. (RT 109-111) This evidence constituted inadmissible character evidence and should have been excluded pursuant to Evidence Code sections 1101 and 1102.

Evidence Code sections 1101 and 1102 preclude the admission of evidence of a trait of defendant's character to prove conduct in conformity with that trait on a specified occasion.  "[C]haracter-trait or propensity-trait evidence offered by the prosecution to establish that defendant committed the crime for which he is on trial is inadmissible under Evidence Code section 1101 because of its highly prejudicial nature." (***People v. Allen*** (1976) 65 Cal.App.3d 426, 435, citing ***People v. Guerrero*** (1976) 16 Cal.3d 719)

A defendant's statements can constitute inadmissible character evidence. Thus, in ***People v. Allen***, *supra*, the court held it an abuse of discretion to admit

6

statements made by the defendant which improperly reflected on his character. In *Allen*, the defendant was charged with stealing jewelry from a woman's house where he had been an overnight guest. Evidence was admitted that the defendant told the police he had some "good connections" and had ways of finding out where the jewelry was if anyone tried to sell it. Evidence was also introduced that the defendant called someone on the phone and told them about the theft and that he wanted to be advised if the jewelry was sold. Noting that the evidence primarily showed that the defendant associated with thieves, the court held that even if the statements could be viewed as admissions, they constituted inadmissible character evidence because "[t]he danger of the use of this evidence by the jury as character-trait evidence was so highly prejudicial. . ." (*Id.*, pp. 434-435)

Appellant's statement identifying himself as a male pedophile was made in a context completely unrelated to the incident in question. Given the nature of the allegations against appellant, the danger was overwhelming that such evidence would be used by the jury as character evidence to substantiate that appellant acted in conformity with this character trait on the date in question. It was error to admit this statement.

### B. Statements by Detective Grossi implying that appellant had been involved in previous inappropriate incidents with minors constituted inadmissible character evidence.

Detective Grossi telephoned appellant in December, 1997, after the allegations at issue were disclosed during a vandalism investigation involving damage done to appellant's brother's car. (RT 115) In response to a question by the prosecutor, Detective Grossi testified that he previously had appellant's number. (RT 115) During his conversation with appellant, Detective Grossi made statements implying that appellant had previously been involved in incidents involving minors. An excised recording of this phone conversation was marked as "exhibit 3" and played for the jury.[2]

During part of the conversation played for the jury, Detective Grossi explained to appellant why he was calling: "[t]rying to find out why you're telling these guys *again* that you want to do this to them?" (RT 120) Later in the conversation, immediately following a discussion of what appellant said to the

---

[2]     The reporter's transcript of the tape recording contains several significant variations from the transcript of the recording marked as "exhibit 2" which was verified as accurate by Detective Grossi. Appellant intends to file notice with the clerk of the superior court to transmit the tape recording to the Court pursuant to California Rules of Court Rule 10(d). The following are two important examples of variations:

1) Exhibit 2: "I told him I was sick, and I wanted to do something that I knew was wrong, *and I wasn't going to do it.*"
   Reporter's transcript: "I told him I was sick, and I wanted to do something that I knew was wrong. *And I wanted to go down.*" (RT 121)

2) Regarding how appellant knew the minor:
   Exhibit 2: "Then I got to known [sic] *his dad*. We became drinking buddies."
   Reporter's transcript: "Then I got to know *him*. We became drinking buddies." (RT 125)

minor during the incident, the detective engaged appellant in a conversation about

why he was walking past a school a few days earlier:

> Grossi:      Is that why you were going down by Burns Valley the other day?
>
> Appellant:   I went to the post office to pick up my key and mail and get a haircut.
>
> Grossi:      Okay.  Because, you know, Dewey saw you walking past the Burns Valley School?
>
> Appellant:   Burns Valley School?
>
> Grossi:      Yeah.
>
> Appellant:   Oh, okay.  There's a bus stop right there now, around 5:00?[3]
>
> Grossi:      Uh-huh.
>
> Appellant:   Right there at the -- the -- well, there's a big fence around it.
>
> Grossi:      Yeah.
>
> Appellant:   Yeah, ain't nothing to that.
>
> Grossi:      I'm just making sure.  I've got to check up and make sure you're on the up and up, you know.

(RT 123)

The effect of this evidence - that the detective knew appellant's phone

number, that appellant was "again" saying things to minors, and that it was of

concern to the police that he was seen near a school - was to overtly convey to the

jury that appellant had a known history of inappropriate conduct with minors.

---

[3]      Exhibit 2 transcribes "now, around 5:00" as "that new Route 5."

9

Why else would the officer know appellant's number? Why else would he care if appellant was near a school? The very questions raised by this evidence were also answered by it: appellant was a pedophile who had offended "again." In effect, this evidence informed the jury of the very information that counsel sought to exclude by bifurcating trial on appellant's prior convictions and not calling him to testify. The jury could not help but draw the conclusion, based on this testimony, that appellant was a known pedophile.

These statements constituted inadmissible character evidence of the most inflammatory variety in that they implied that appellant had a history of inappropriate conduct with minors and was being watched by the police. The evidence should have been excluded.

Although trial counsel objected generally to the admissibility of appellant's conversation with the detective based on the sufficiency of the voice identification, he failed to set forth specific objections to the statements discussed above. "An important part of defense counsel's job is to seek exclusion of evidence that is critical to the prosecution's case or that is highly prejudicial." (*In re Jones* (1996) 13 Cal.4th 552, 582.) "[W]hen counsel fails to object to the admission of legally inadmissible and harmful evidence, constitutionally inadequate representation may result." (*In re Julius B.* (1977) 68 Cal.App.3d 395, 402) In order to establish

10

ineffective assistance of counsel, appellant must prove by a preponderance of

evidence that:

> . . . (1) counsel's representation was deficient in falling below an
> objective standard of reasonableness under prevailing professional
> norms, and (2) counsel's deficient representation subjected the
> petitioner to prejudice, i.e., there is a reasonable probability that, but
> for counsel's failings, the result would have been more favorable to
> the petitioner.

(*In re Jones*, *supra*, 13 Cal.4th at p.561; *People* v. *Ledesma* (1987) 43 Cal.3d

171, 216, 217, 218; *People* v. *Lewis* (1990) 50 Cal.3d 262, 288)

There is no apparent reason why appellant's trial counsel failed to seek

exclusion of these damaging statements.  No strategic purpose could conceivably

have been served by failing to object to this evidence.  Trial counsel's

representation was deficient.[4]

**C.  There is a reasonable probability that the outcome of appellant's trial was adversely affected by the introduction of inadmissible character evidence.**

The standard for review when evidence is erroneously admitted is to grant

reversal when there is a reasonable probability that the outcome was adversely

affected.  (*People* v. *Humphrey* (1996) 13 Cal.4th 1073, 1089)  Reviewing the

evidence under this standard, it is reasonably probable that the admission of highly

prejudicial character evidence suggesting that appellant was a repeat child molester

---

[4]    Appellant will set out in a habeas petition attempts made to no avail to ascertain
information from trial counsel concerning his handling of this case.

affected the outcome of appellant's trial. The cumulative effect of the erroneously admitted evidence was to inform the jury that appellant was a pedophile, that he had offended before, and that the police were already watching him. Putting this type of extremely prejudicial information before the jury placed an irreversible taint on all other evidence heard by the jury.

As discussed above, the importance to the defense of keeping this type of evidence away from the jury can not be overstated. Trial counsel sought to withhold this type of evidence from the jury by bifurcating trial on the prior convictions so that the jury would not learn of the priors until trial was concluded on the underlying offenses. Trial counsel sought to preclude the prosecution from impeaching appellant with his prior conviction for section 288 (child molest). (RT 7-12) In fact, trial counsel did not call the appellant to testify after receiving the ruling of the court that the prior could be used to impeach him. Trial counsel also sought exclusion of references to appellant's status as a sex registrant. (RT 27-28) Trial counsel's efforts to keep this type of evidence from the jury were rendered futile by the erroneous admission of character evidence.

At trial, the evidence constituting the offense was subject to ambiguities which could have been resolved in appellant's favor had this type of character evidence not been before the jury. The evidence established that appellant had known the minor for several years. They had spent considerable time together, yet appellant had never acted sexually inappropriately with the minor or made any

12

inappropriate suggestions. On the date of the incident, appellant was mumbling when he made the statements at issue. (RT 49) If the jury had not received evidence that appellant was a known pedophile, it is reasonably probable they would have found insufficient evidence that appellant was directing his statements at the minor, which is an element of section 647.6. (CALJIC 16.440) Appellant never suggested that the minor allow him to do anything; he only mentioned the feelings he had, that he knew they were wrong, and that he wasn't going to do anything. (RT 121 [see footnote 2, *supra*]) Appellant never attempted to touch the minor. Without highly prejudicial character evidence before it, it is reasonably probable that the jury would have found insufficient proof that appellant's conduct "would unhesitatingly have disturbed or irritated a normal person if directed at that person," as required for a conviction under the statute. (CALJIC 16.440) The minor admitted that he smoked marijuana and was impaired at the time of the incident. The minor reported to his friends that appellant tried to suck his penis, an apparent exaggeration of the actual events. Without the taint of the character evidence regarding appellant, issues regarding the minor's credibility could have created a reasonable doubt in the minds of the jury.

The relatively weak evidence in this case was critically bolstered by the highly inflammatory evidence that appellant was a male pedophile and repeat offender. It is hard to conceive of a word in our society that carries more negative weight than the term "pedophile." It is the type of label that evokes strong

13

emotional reactions. Given the fervent societal abhorrence for pedophiles, it is reasonably probable that this evidence impacted the jury significantly in reaching its verdict.

Appellant "'deserves a new trial on *relevant, nonprejudicial* evidence.'" (*People* v. *Allen*, *supra*, at p. 437, citing *People* v. *Guerrero*, *supra*, at p. 730) The error merits reversal.

## II.    DUAL USE OF APPELLANT'S PRIOR CONVICTION TO ELEVATE HIS OFFENSE TO A FELONY AND TO DOUBLE HIS SENTENCE UNDER THE THREE STRIKES LAW CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT.

Appellant was charged with violation of section 647.6, subdivision (a), which is ordinarily a misdemeanor punishable by a maximum of one year in county jail. Based on appellant's 1984 violation of section 288, subdivision (a), the offense was elevated to a felony punishable by up to six years in state prison. (§647.6, subd. (c)(2)). Based on the same prior conviction, appellant's sentence was doubled pursuant to the Three Strikes Law. (§667, subd. (e)(1)) Thus, what would have been an offense carrying one year of county jail resulted in a twelve year prison sentence. This dual use of appellant's prior conviction to both elevate his offense to a felony and double his term resulting in an unconscionable sentence.

"'The State, even as it punishes, must treat its members with respect for their intrinsic worth as human beings.' [Citation.] Punishment which is so excessive as to transgress those limits and deny that worth cannot be tolerated." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) A sentence that is "grossly disproportionate" to the offense for which it is imposed, violates both the California and United States constitutional prohibitions against cruel and/or unusual punishment.[5] (*People* v. *Dillon* (1983) 34 Cal.3d 441, 478; *Gregg* v.

---

[5]    While the Eighth Amendment to the United States Constitution proscribes "cruel *and* unusual" punishment, article I, section 17 of the California Constitution is broader,

*Georgia* (1976) 428 U.S. 153, 173; *Coker* v. *Georgia* (1977) 433 U.S. 584, 592; U.S.

Const., 8th Amend.; Cal. Const, art. I, § 17.)[6]

In *Lynch*, the California Supreme Court identified certain "techniques" for

evaluating a punishment to determine whether it is disproportionate. *Lynch* suggested

that courts (1) examine the nature of the offense and/or the offender, (2) compare the

challenged penalty with punishment prescribed in California for other, more-serious

offenses, and (3) compare the challenged penalty with punishments prescribed for the

same offense in other jurisdictions. (*In re Lynch, supra,* 8 Cal.3d at pp. 425-427; see

also *Solem* v. *Helm* (1983) 463 U.S. 277, 290-300.)

For a holding of disproportionality, the court need not find the punishment

disproportionate in all three respects. Rather, a finding of disproportionality based on

<u>any</u> of the *Lynch* criteria will suffice. (*People* v. *Dillon, supra,* 34 Cal.3d at p. 487, fn.

38; *In re DeBeque* (1989) 212 Cal.App.3d 241, 249 ["The importance of each prong

---

proscribing "cruel *or* unusual" punishment. It has been held that the framers of the
California Constitution purposefully used the disjunctive form when adopting the "cruel or
unusual" language "in order to establish their intent that both cruel punishments and
unusual punishments be outlawed in this state." (*People* v. *Anderson* (1972) 6 Cal.3d
628, 636-637.)


[6] The federal circuit courts continue to apply a gross disproportionality test in
determining Eighth Amendment challenges to punishments imposed for non-capital
offenses. (See, e.g., *Cacoperdo* v. *Demosthenes* (9th Cir. 1994) 37 F.3d 504, 507-508;
*United States* v. *Munoz* (1st Cir. 1994) 36 F.3d 1229, 1239; *United States* v. *Lanier* (6th
Cir. 1994) 33 F.3d 639, 665; *United States* v. *Frieberger* (8th Cir. 1994) 28 F.3d 916,
920; *United States* v. *Fisher* (5th Cir. 1994) 22 F.3d 574, 579-580; *United States* v.
*Angulo-Lopez* (10th Cir. 1993) 7 F.3d 1506, 1510; *United States* v. *Sarbello* (3d Cir.
1993) 985 F.2d 716, 724; *McGruder* v. *Puckett* (5th Cir. 1992) 954 F.2d 313, 316-317.)

depends on the specific facts of each case and application of the first prong alone may suffice in determining whether a punishment is cruel and unusual."].)

Application of this framework to the present case reveals that appellant's sentence is grossly out of proportion to the severity of his crime, in violation of both the California and United States Constitutions.

### A. The punishment is disproportionate as applied to this offense and this offender.

In determining whether a particular punishment is disproportionate to the offense, courts look first to "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*In re Lynch, supra,* 8 Cal.3d at p. 425.)

In evaluating the "nature of the offense," courts consider "not only the offense in the abstract," but also "the facts of the crime in question." (*People* v. *Dillon, supra,* 34 Cal.3d at p. 479.) In particular, courts must examine "the totality of the circumstances surrounding the commission of the offense in the case at bar, including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his act." (*Ibid.*) As to the "nature of the offender," courts focus on the "particular person before the court," and inquire "whether the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*Ibid.*)

17

In the present case, appellant was found guilty of annoying a minor. The appellant's conduct consisted of an arguably offensive statement made in the presence of a fifteen year old. Appellant's conduct did not involve any physical touching or any threat of physical touching. His conduct did not involve violence or any threat to others. The relative severity of appellant's current conduct is low. (*Solem* v. *Helm*, *supra*, 463 U.S. at p. 293 ["The absolute magnitude of the crime may be relevant."].)

Of course, appellant is not simply being punished for his current offense, but also for his status as a repeat offender. Reference to this fact alone, however, cannot bring the results of this case within the limits of the constitution. Appellant's prior conviction occurred fourteen years earlier. The separation in time between the "strike" prior and the current offense argues heavily against upholding so severe and disproportionate a sentence as 12 years in prison for what would otherwise have been a misdemeanor.

Finally, the fact that section 667 punishes repeat offenders does not insulate this case from proportionality review. (See, e.g., *Solem* v. *Helm*, *supra*, 463 U.S. at p. 296; *In re Lynch*, *supra*, 8 Cal.3d at pp. 425-429; *People* v. *Ruiz* (1975) 49 Cal.App.3d 739, 748; *In re Wells* (1975) 46 Cal.App.3d 592 -- striking down recidivist sentences as cruel and unusual punishment.) In *Lynch*, *supra*, the California Supreme Court, while recognizing that longer sentences are appropriate for repeat offenders, reaffirmed the constitutional requirement that the enhanced sentence still be proportional to the crime. The *Lynch* court held that an indeterminate sentence of

one-year to life for a second offense of indecent exposure was cruel and unusual

punishment, and therefore unconstitutional. (*Id.* at p. 439.) The Court noted that

while a defendant's past offenses are a relevant consideration, they do not "result in a

*pro tanto* repeal of the cruel and unusual clause." (*Id.* at p. 433.) It found that, in the

particular context of indecent exposure, the phenomenon of recidivism failed to

constitutionally justify the greatly enhanced punishment, "'even though exhibitionists

are more likely to repeat their offense than other kinds of sex offenders.' [Citation.]"

(*Ibid.*) The court cited the recommendations of the American Bar Association

Advisory Committee on Sentencing and Review, which it found to be particularly

persuasive:

> . . . in structuring habitual offender legislation '[a]ny increased
> term which can be imposed because of prior criminality should be
> related in severity to the sentence otherwise provided for the new
> offense.' [Citation] . . . [Regarding] a minor offense (intentionally
> damaging property in an amount exceeding $250) which if repeated,
> could be punished under New York law by a life term[,] [t]he
> committee explained [citation] that '[a] sentence of this magnitude no
> longer bears any reasonable relationship to the event that triggered its
> possibility. The major thrust of the proceeding has shifted from the
> offense to the status of the offender.'

(*Id.* at p. 435 [emphasis added].)

Thus, even a sentence increased by prior convictions must still be proportional to

current criminal activity.

Treatment of this case as a second "strike" results in a sentence which bears no

reasonable relationship to the triggering offense. Section 667 improperly fixes the

focus of sentencing on the status of the defendant, rather than on the criminal activity which brings him before the court.  The use of the same prior to elevate a misdemeanor to a felony and then to double the sentence for that felony produces an unfair sentence which is grossly disproportionate to the crime.

**B. The punishment is disproportionate when compared with punishments prescribed in California for other, more serious offenses.**

A "comparison of the challenged penalty with those prescribed in the same jurisdiction for more serious crimes . . . is particularly striking when a more serious crime is punished *less* severely than the offense in question . . . ." (*People* v. *Dillon*, *supra*, 34 Cal.3d at p. 487, fn. 38 [original emphasis].)  This statement aptly describes the situation in the present case.

Under the Three Strikes law, appellant will not be eligible for parole until he serves over nine and one-half years, 80% of his 12-year sentence.  (§ 667, subd. (c)(5).)  Even accounting for his recidivism, it is clear that the Three Strikes law as applied here is greatly disproportionate to punishment prescribed by the Legislature for far more serious offenses than that committed by appellant.

Under the Three Strikes law, all offenders are initially treated equally because the strikes must be serious or violent felonies, as defined in the statute.  (§ 667, subd. (d)(1).)  The current offense, however, may be any felony.  (§ 667, subd. (e)(2)(A).)  This is where proportionality breaks down because two defendants with identical priors receive the same sentence even if one defendant's current felony is

rape or arson and the other defendant's current felony is making an inappropriate comment to a teenager.

Furthermore, no other California statute punishing repeat offenders is as severe as the Three Strikes law because other statutes require the current offense to be of equal severity to the qualifying prior. For example, section 667, subdivision (a), imposes a five year enhancement on defendants previously convicted of violent offenses but only if the current offense is also a violent offense. No such proportionality exists under the Three Strikes law.

Accordingly, appellant's punishment should be considered disproportionate when compared with punishment prescribed in California for other, more serious offenses.

**C. The punishment is disproportionate when compared to recidivist punishments in other jurisdictions.**

The third *Lynch* technique further strengthens the conclusion that appellant's 12 year sentence is unusually severe.

A number of states have laws that provide for enhanced punishment of recidivist offenders. None of those laws, however, match California's Three Strikes law in severity or in reach.

In most states, the recidivist statutory provisions require that the present felony be of an aggravated type. (See Ala. Code, §§ 13-A-5-6, 13A-5-9; Del. Code Ann., tit. 11, § 4214; Ill. Ann. Stat., ch. 720, § 33B-1, ch. 730, § 5-8-1; Ind. Code, § 35-50-2-

8.5; Miss. Code Ann., § 99-19-83; S.C. Code Ann., §§ 17-25-45, 16-1-60; Wyo. Stat.,
§ 6-10-201.) By contrast, California's Three Strikes provision applies to the
commission of *any* type of felony, including nonserious and nonviolent felonies.

In most other states that permit enhancement based on the commission of a
current felony of any type, there are limitations placed on the statute's reach that are
noticeably absent in California. In Nebraska and Rhode Island, for example, the first
two convictions must have included a prison commitment (Neb. Rev. Stat., § 29-2221;
R.I. Gen. Laws, § 12-19-21), and in Vermont, the statute applies only after conviction
of four felonies (Vt. Stat. Ann., tit. 13, § 11).

Moreover, other states' recidivist statutes, which appear on their face to be as
draconian as California's are, in actual practice, not as rigidly enforced. Idaho's
recidivist statute mandates a prison term of not less than five years, and up to life in
prison for the commission of a third felony of any type. (Idaho Code, § 19-2514.)
The Idaho statute, however, differs substantially from California's in that the Idaho
courts possess wide discretion in deciding the exact length of punishment within the
five year to life sentencing range. (*State* v. *McPhie* (1983) 104 Idaho 652 [662 P.2d
233, 237]; *State* v. *Gauna* (App. 1989) 117 Idaho 83 [785 P.2d 647, 652-653].)
California courts, by comparison, are denied such discretion under the Three Strikes
Law, and are instead relegated to the mundane task of simply applying a mathematical
formula to compute a defendant's sentence.

22

More importantly, application of Idaho's recidivist statute is not mandatory; the court can sentence the defendant for the last-committed crime only, notwithstanding the prior record. (*State* v. *Holton* (App. 1991) 120 Idaho 112 [813 P.2d 923, 924].) Furthermore, unlike the California statute, under which consecutive sentences are mandatory if certain conditions are met (§ 667, subd. (c)(6)-(8)), the Idaho courts retain discretion to sentence either consecutively or concurrently. (*State* v. *Brandt* (App. 1986) 110 Idaho 341 [715 P.2d 1011, 1016].) Finally, whereas 80 percent of the California sentence must be served, an Idaho defendant may be considered for parole after service of one third of the sentence. (*State* v. *Harrison* (App. 1985) 108 Idaho 324 [699 P.2d 30, 31].)

In West Virginia, the statute provides a life sentence for a current felony conviction with two felony priors. (W.Va. Code, § 61-11-18.) However, the prosecutor has the power to be selective in enforcing the law, so long as the choice is not based on an unjustifiable standard such as race or religion. (*Oyler* v. *Bowles* (1962) 368 U.S. 448, 453 [7 L.Ed.2d 446, 82 S.Ct. 501].)

In Washington, the statute provides a minimum ten year sentence for a defendant with a current felony conviction and a prior felony conviction or two prior misdemeanor convictions; and a life sentence where a felony defendant has two prior felonies or four prior misdemeanors. (Rev. Code of Wash. Ann., § 9.92.090.) However, unlike California, prosecutors in Washington have discretionary charging power and may consider a wide range of factors in determining whether to file

habitual criminal charges against a qualifying recidivist, as long as the exercise of the power is not arbitrary or capricious or based on invidious standards. (*State* v. *Ross* (1981) 30 Wash.App. 324 [634 P.2d 887, 890].) Indeed, if the statute mandated the filing of habitual criminal allegations, it would violate due process. (*State* v. *Rowe* (1980) 93 Wash.2d 277 [609 P.2d 1348, 1351]; see also *State* v. *Pettitt* (1980) 93 Wash.2d 288 [609 P.2d 1364] [mandatory policy of prosecuting attorney of filing habitual criminal complaints against all defendants with three or more prior felonies constituted an abuse of prosecutorial discretion].)

Other than California, there appears to be no state with a recidivist statute that requires such mandatory application and lengthy imprisonment regardless of circumstances in mitigation, such as those present in this case. Even if other states had statutes as draconian as California's Three Strikes law, that fact would not save the California statute. As stated in *Lynch*, "if the challenged penalty is found to exceed the punishments decreed for the offense <u>in a significant number</u> of those jurisdictions, the disparity is a <u>further</u> measure of its excessiveness." (*In re Lynch*, *supra*, 8 Cal.3d at p. 427 [emphasis added].)

### D.    Summary

The court "double counted" appellant's prior conviction for section 288 by using it both to elevate his offense to a felony and to double his term. This sentence offends basic notions of fairness. The United States Supreme Court has expressed

24

concern regarding this type of dual use of a prior conviction to turn a petty offense into a felony and then to impose a lengthy prison sentence under the Three Strikes sentencing scheme. (See *Riggs* v. *California* 99 C.D.O.S. 500 ) While numerous California cases have rejected "dual use" arguments in the Three Strikes context (see, e.g., *People* v. *Coronado* (1995) 12 Cal.4th 145; *People* v. *White Eagle* (1996) 48 Cal.App.4th 1511), it is urged that these cases be rejected as fundamentally unfair when applied to petty offense.

Under the particular facts of this case, the 12 year term imposed in accordance with the Three Strikes law is "grossly disproportionate" to appellant's culpability. Accordingly, this case must be remanded for resentencing and appellant's sentence modified, if the judgment is otherwise affirmed.

25

**III.  APPELLANT IS ENTITLED TO PRESENTENCE TIME CREDITS UNDER PENAL CODE SECTIONS 4019 AND 2900.5.**

In *People* v. *Hill* (1995) 37 Cal.App.4th 220, the court held that because the Three Strikes law only addresses conduct credits once a defendant is placed in prison, sections 4019 and 2900.5 remain the governing provisions regarding presentence conduct credit.

Appellant was sentenced on July 31, 1998. The representative of the People accurately pointed out during the sentencing hearing that appellant's offense did not fall within section 2933.1, which limits worktime credit to no more than fifteen percent for persons convicted of felony offenses listed in section 667.5, subdivision (c). (CT 138) Appellant's conduct credits were nonetheless limited to 20 percent. (CT 138.) Appellant was awarded 201 actual days of custody credits and 40 days of conduct credits for a total of 240 days. Therefore, appellant is entitled to an additional 60 days of conduct credits.[7]

---

[7]    In accord with Penal Code section 1237.1, the trial court has been advised of this discrepancy regarding time credits and has been requested to correct it. A supplemental probation report has been prepared for the trial court's review of this issue recommending the suggested adjustment of time credits but no adjustment has as yet occurred.

26

## CONCLUSION

For the foregoing reasons, appellant submits that the introduction of

inadmissible evidence at his trial was reversible error.  In addition, appellant

should be resentenced because his sentence constitutes cruel and unusual

punishment.  Finally, appellant submits he is entitled to 60 additional days of time

credits.


Respectfully submitted,


Judy Behrendt
Counsel for appellant


27

## CERTIFICATE OF SERVICE BY MAIL

Re: <u>People v. Morgan</u>                                              A084106


     I, Judy Behrendt, declare that I am over eighteen years of age, and not a party to the within cause; my employment address is 845 Jefferson Street, Napa, California 94559. I served a true copy of the attached:

     APPELLANT'S OPENING BRIEF

on each of the following, by placing same in an envelope (or envelopes) addressed (respectively) as follows:

| | |
|---|---|
| Office of the Attorney General<br>455 Golden Gate Ave., #6200<br>San Francisco, California 94102 | First District Appellate Project<br>730 Harrison St. Ste. 201<br>San Francisco, California 94107<br>Attn: Kathleen Kahn |
| Mr. John S. Morgan #P05991<br>San Quentin State Prison 2C-34<br>San Quentin, CA 94974 | Office of the County Clerk<br>County of Lake - Courthouse<br>Lakeport, CA 95453<br>Attn: Honorable Arthur H. Mann |
| Stephen C. Carter<br>P.O. Box 1517<br>Lower Lake, CA 95457 | Office of the District Attorney<br>255 North Forbes Street<br>Lakeport, CA 95453 |


     Each envelope was then, on February 6, 1999, sealed and deposited in the United States Postal Service at Napa, California, in the county in which I am employed, with the first class postage thereon fully prepaid.

     I declare under penalty of perjury that the foregoing is true and correct. Executed at Napa, California, this 6th day of February, 1999.


                                                    _____
                                               Judy Behrendt