**EXHIBIT 3**

ATTORNEY GENERAL–OFFICE COPY

-IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION ONE

**THE PEOPLE OF THE STATE OF CALIFORNIA,**

Plaintiff and Respondent,

A084106

v.

**JOHN S. MORGAN,**

Defendant and Appellant.

Lake County Superior Court No. CR-4609
The Honorable Arthur H. Mann, Judge

**RESPONDENT'S BRIEF**

FILED
Court of Appeal - First App. Dist.

APR 26 1999

RON D. BARROW, CLERK
By _____
                                    DEPTY

BILL LOCKYER
Attorney General

DAVID P. DRULINER
Chief Assistant Attorney General

RONALD A. BASS
Senior Assistant Attorney General

DAVID H. ROSE
Deputy Attorney General

RONALD E. NIVER
Deputy Attorney General
State Bar No. 51251

50 Fremont St., Room 300
San Francisco, CA 94105
Telephone: (415) 356-6240
Fax: (415) 356-6190

Attorneys for Respondent

# Table of Contents

|  | Page |
|---|---|
| STATEMENT OF THE CASE | 1 |
| STATEMENT OF FACTS | 2 |
| APPELLANT'S CONTENTIONS | 4 |
| RESPONDENT'S ARGUMENT | 4 |
| ARGUMENT | 5 |
| I.  THE TRIAL COURT'S EVIDENTIARY RULINGS WERE CORRECT | 5 |
| A.  Appellant's Statement | 5 |
| 1.  Mental State | 6 |
| 2.  Appellant's Statement | 7 |
| 3.  Relevance | 7 |
| B.  Telephone Conversation | 9 |
| C.  No Prejudice | 11 |
| II.  APPELLANT'S PUNISHMENT WAS NOT UNCONSTITUTIONALLY EXCESSIVE | 12 |
| A.  State Constitution | 12 |
| 1.  Offense and Offender | 14 |
| 2.  Comparison With Other Sentences in California | 16 |
| 3.  Comparison With Other Jurisdictions | 18 |
| B.  Federal Constitution | 19 |
| III.  APPELLANT IS ENTITLED TO ADDITIONAL CONDUCT CREDIT | 22 |
| CONCLUSION | 23 |

i

**Table of Contents, cont'd**

## Table of Authorities

**Page**

**Cases**

*Harmelin* v. *Michigan*
(1991) 501 U.S. 957 — 19, 20

*Hutto* v. *Davis*
(1982) 454 U.S. 370 — 19, 20

*In re Foss*
(1974) 10 Cal.3d 910 — 13

*In re Gladys R.*
(1920) 1 Cal.3d 855 — 6

*In re Grant*
(1976) 18 Cal.3d 1 — 13

*In re Lynch*
(1972) 8 Cal.3d 410 — 13

*In re Rodriguez*
(1975) 14 Cal.3d 639 — 13

*In re Rosencrantz*
(1928) 205 Cal. 534 — 12

*Kimmelman* v. *Morrison*
(1986) 477 U.S. 365 — 9

*Michelson* v. *United States*
(1948) 335 U.S. 469 — 6

*People* v. *Allen*
(1976) 65 Cal.App.3d 426 — 7

*People* v. *Ayon*
(1996) 46 Cal.App.4th 385 — 12, 18

*People* v. *Barrera*
(1993) 14 Cal.App.4th 1555 — 20

*People* v. *Carceres*
(1997) 52 Cal.App.4th 106 — 22

## Table of Authorities, cont'd

*People* v. *Carrasco*
(1988) 202 Cal.App.3d 1078                          12

*People* v. *Cartwright*
(1995) 39 Cal.App.4th 1123                          13

*People* v. *Clair*
(1992) 2 Cal.4th 629                                10

*People* v. *Cooper*
(1996) 43 Cal.App.4th 815                       12, 18

*People* v. *Daniels*
(1991) 52 Cal.3d 815                                6

*People* v. *Diaz*
(1996) 41 Cal.App.4th 1424                   12, 13, 15

*People* v. *Dillon*
(1983) 34 Cal.3d 441                               13

*People* v. *Ewoldt*
(1994) 7 Cal.4th 380                                6

*People* v. *Giminez*
(1975) 14 Cal.3d 68                                 8

*People* v. *Hamilton*
(1985) 41 Cal.3d 408                                8

*People* v. *Hill*
(1992) 3 Cal.App.4th 16                             7

*People* v. *Hill*
(1995) 37 Cal.App.4th 220                          22

*People* v. *Hurtado*
(1996) 47 Cal.App.4th 805                          15

*People* v. *Ingram*
(1995) 40 Cal.App.4th 1397                         13

*People* v. *Jameson*
(1986) 177 Cal.App.3d 658                          12

*People* v. *Johnson*
(1974) 39 Cal.App.3d 749                            8

## Table of Authorities, cont'd

*People* v. *Jones*
(1954) 42 Cal.2d 219                                          6

*People* v. *Kelly*
(1992) 1 Cal.4th 495                                         8

*People* v. *Kinsey*
(1995) 40 Cal.App.4th 1621                                  12

*People* v. *Lopez*
(1983) 147 Cal.App.3d 162                                   12

*People* v. *Martinez*
(1980) 106 Cal.App.3d 521                                    8

*People* v. *Maurer*
(1995) 32 Cal.App.4th 1121                                   6

*People* v. *McAlpin*
(1991) 53 Cal.3d 1289                                        6

*People* v. *Rivademeira*
(1991) 232 Cal.App.3d 1416                                  12

*People* v. *Ruiz*
(1996) 44 Cal.App.4th 1653                                  12

*People* v. *Singh*
(1926) 78 Cal.App.3d 476                                     8

*People* v. *Smith*
(1984) 151 Cal.App.3d 89                                     8

*People* v. *Superior Court (Romero)*
(1996) 13 Cal.4th 497                                       19

*People* v. *Thompson*
(1994) 24 Cal.App.4th 299                                   13

*People* v. *Valencia*
(1989) 207 Cal.App.3d 1042                                  12

*People* v. *Villasenor*
(1984) 152 Cal.App.3d 30                                 12, 13

*People* v. *Watson*
(1956) 46 Cal.2d 818                                        11

<h2 style="text-align:center"><u>Table of Authorities, cont'd</u></h2>

*People* v. *Weaver*
(1984) 161 Cal.App.3d 119 .......................... 12

*People* v. *Weddle*
(1991) 1 Cal.App.4th 1190 .......................... 14

*People* v. *White Eagle*
(1996) 48 Cal.App.4th 1511 .......................... 15

*People* v. *Wingo*
(1975) 14 Cal.3d 169 .......................... 13

*People* v. *Young*
(1992) 11 Cal.App.4th 1299 .......................... 14

*Rummel* v. *Estelle*
(1980) 445 U.S. 263 .......................... 13, 19, 20

*Solem* v. *Helm*
(1983) 463 U.S. 279 .......................... 20

*Strickland* v. *Washington*
(1984) 466 U.S. 668 .......................... 9

### <u>Constitutional Provisions</u>

United States Constitution
   Amend. VIII .......................... 12

California Constitution
   art. I, § 17 .......................... 12

## Table of Authorities, cont'd

### Statutes

Evidence Code
    § 210 — 7
    § 353(a) — 9
    § 1102 — 5
    § 1220 — 7

Penal Code
    § 272 — 1

Penal Code
    § 28(a) — 8
    § 264(a) — 17
    § 288(a) — 1
    § 451(b) — 17
    § 647.6 — 6, 14, 15
    § 647.6(a) — 1, 15
    § 647.6(c)(1) — 1
    § 647.6(c)(2) — 17
    § 667(a) — 17
    § 1170.12(a)-(e) — 12
    § 1170.12(a)(5) — 22
    § 1170.12(c)(1) — 2, 16
    § 1170.12(c)(2)(A) — 16

### Other Authorities

California Jury Instructions, Criminal
    No. 16.440 — 6

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION ONE

---

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | |
| Plaintiff and Respondent, | A084106 |
| v. | |
| JOHN S. MORGAN, | |
| Defendant and Appellant. | |

---

## STATEMENT OF THE CASE

By an information filed on May 16, 1998, in Lake County Superior Court, appellant John Steven Morgan was charged with: (1) annoying or molesting a child under the age of 18 years, in violation of Penal Code section 647.6(a); (2) contributing to the delinquency of a minor, in violation of section 272; and (3) contributing to the delinquency of a minor. A prior conviction of lewd and lascivious acts with a child under 14 years, in violation of section 288(a), was also alleged in connection with count 1. (*See* § 647.6(c)(1).) (CT 54-56.) Arraigned on May 18, appellant pleaded not guilty and denied the prior. (CT 58.)

On June 29, 1998, the court granted appellant's motion to bifurcate the trial on the prior. (CT 61.)

Jury trial began on July 7, 1998. (CT 99.) On July 8, the jury found appellant guilty as charged. (CT 102-104.) Appellant then admitted the prior. (CT 101.)

1

On July 31, 1998, the court sentenced appellant on count 1 to the upper term of six years, the term doubled to 12 years pursuant to Penal Code section 1170.12(c)(1). The court also sentenced appellant to concurrent terms of six months on counts 2 and 3. (CT 122-124.)

On August 24, 1998, appellant filed a timely notice of appeal. (CT 141.)

## STATEMENT OF FACTS

In the spring of 1997, Keith W., age 14 at the time, and appellant John Morgan were friends. (RT 43-45.) They had met through a mutual friend who had been appellant's roommate in Hidden Valley. (RT 47, 52.) On one occasion, in February or March of 1997, Keith and his friends Julius Chioni and Charles ("Sonny") Pierson spent the night at appellant's home in Clearlake, where he provided them with alcohol. (RT 45, 84-85.)

After the drinking party Keith "hung out" occasionally with appellant. (RT 45.) On the last occasion, probably in June, 1997, appellant drove to Keith's house in his truck and allowed the youth to drive the vehicle to the home of appellant's brother on Ninth Street or Avenue in Clearlake. (RT 46-47.) Appellant had permitted Keith to drive his truck on prior occasions despite Keith's lack of a driver's license or permit. (RT 46, 55.) At the home of appellant's brother, Keith "hit his bong," *i.e.*, smoked marijuana with the two men. (RT 54.) As a result, he felt "dreary," "drowsy," and "dragged down" within one half hour. (RT 12-54, 55.)

Keith and appellant left the brother's home and drove to an area of abandoned mobile homes, where appellant told the youth to stop the truck. (RT 47, 56.) Keith got out of the truck and sat in the

2

bed above the wheel well; appellant sat directly across from him. (RT 48, 57.) Appellant began to "mumble," "saying I want to do something, and I'm sure it's not right . . . ." (RT 48.) Finally, appellant told Keith "[t]hat he wanted to go down on me." (RT 49.) Keith immediately left the truck bed because "I felt danger for my life." (RT 50.)

Keith was about to climb into the driver's seat when appellant told him to get into the passenger's side of the cab. (RT 50.) Keith asked appellant to take him to his friend's house, but appellant told him that he would drive him home. (RT 50.) During the ride appellant asked, "How do you feel now that you've been come onto by a man?" (RT 50.)

Later that day Keith told Julius and Sonny about the incident. (RT 51, 77-78, 86-87.) The following day, when appellant came to Keith's house, the youth told his mother about appellant's behavior. (RT 51.)

In November of 1997, during a conversation in his home, appellant told Clearlake Police Officers Rodney Dewey that he was a male pedophile and had urges, but did not act on them. (RT 112-113.)

In December, friends of Keith slashed the tires of Robert Morgan, appellant's brother, after Keith told them that appellant was a "faggot." (RT 67.) Appellant explained to his brother that Sonny had vandalized his tires because appellant "had asked one of the two boys for sex." (RT 91.) The two boys were Sonny and Keith. (RT 92.)

Robert advised Clearlake police of appellant's admissions. (RT 115.) When Officer Donald Grossi telephoned appellant to discuss the allegations, appellant admitted he told Keith that "I was sick, and I wanted to do something I knew was wrong. And I wanted to go down, and he said, 'What?' I said, 'I want to give you a blow job.'" (RT 121.)

3

## APPELLANT'S CONTENTIONS

1. "Admission at trial of evidence of appellant's character was erroneous and prejudicial." (AOB 6.)

2. "Dual use of appellant's prior conviction to elevate his offense to a felony and to double his sentence under the Three Strikes law constituted cruel and unusual punishment." (AOB 15.)

3. "Appellant is entitled to presentence time credits under Penal Code sections 4019 and 2900.5." (AOB 26.)

## RESPONDENT'S ARGUMENT

1. The trial court's evidentiary rulings were correct.

    A. Appellant's statement.

    B. Telephone conversation.

    C. No prejudice.

2. Appellant's punishment was not unconstitutionally excessive.

    A. State constitution.

    B. Federal constitution.

3. Appellant is entitled to additional conduct credit.

4

## ARGUMENT

### I.

## THE TRIAL COURT'S EVIDENTIARY RULINGS WERE CORRECT

Appellant first contends that the trial court erroneously permitted the prosecution to introduce inadmissible character evidence against him. This contention lacks merit.

### A. Appellant's Statement

Appellant objected at trial (RT 109-110), and renews his objection on appeal, to the introduction of Officer Dewey's testimony that appellant told him that he was a male pedophile. (RT 113.) He asserts that this testimony was inadmissible under Evidence Code section 1102[1] because it was character evidence which the prosecution may not adduce unless to rebut a defendant's character evidence. Because appellant presented no such evidence, the prosecution should have been precluded from doing so. Appellant's submission is based upon a mischaracterization of the evidence.

Character evidence is essentially evidence of the accused's propensity. As the United States Supreme Court noted, a defendant

---

1. Evidence Code section 1102 provides:

"In a criminal action, evidence of the defendant's character or a trait of his character in the form of an opinion or evidence of this reputation is not made inadmissible by Section 1101 if such evidence is:

"(a) Offered by the defendant to prove his conduct in conformity with such character or trait of character.

"(b) Offered by the prosecution to rebut evidence adduced by the defendant under subdivision (a)."

"may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged." (*Michelson* v. *United States* (1948) 335 U.S. 469, 476.) Similarly, the California Supreme Court remarked that "'[t]he purpose of the evidence as to the character of the accused is to show his disposition, and to base thereon a probable presumption that he would not be likely to commit, and, therefore, did not commit, the crime with which he is charged.'" (*People* v. *Jones* (1954) 42 Cal.2d 219, 223-224; *see also People* v. *McAlpin* (1991) 53 Cal.3d 1289, 1313-1315 (conc. and dis. opn.)

By contrast, the challenged evidence in this case was a statement made by appellant which was relevant to the issue of his mental state at the time of the offense. The admissibility of the evidence is determined by resolution of three issues: (1) the nature of the mental state necessary to establish guilt; (2) the admissibility of a defendant's statement as an exception to the hearsay rule; and (3) the relevance of the evidence to the issue on which it was sought to be introduced.

### 1.  Mental State

A violation of Penal Code section 647.6 requires proof that the acts committed by the accused were motivated by an unnatural or abnormal sexual interest or intent. CALJIC No. 16.440; *In re Gladys R.* (1920) 1 Cal.3d 855, 867; *People* v. *Maurer* (1995) 32 Cal.App.4th 1121, 1127.) Appellant's plea of not guilty constituted a denial that he had such a mental state. (*People* v. *Daniels* (1991) 52 Cal.3d 815, 857-858; *accord, People* v. *Ewoldt* (1994) 7 Cal.4th 380, 400.) Consequently, it was permissible for the prosecution to present all relevant evidence

6

which tended to prove the nature of appellant's interest in Keith at the time of the incident.

### 2.    Appellant's Statement

Evidence Code section 1220 authorizes the admission of a statement made by a party to the action for the truth of the matter stated.    Appellant's statement to the officer qualifies as a party admission and, hence, admissible as an exception to the hearsay rule.

### 3.    Relevance

A statement is not admissible simply because it was made by a party; it must also be relevant to some issue in dispute.  (*People* v. *Allen* (1976) 65 Cal.App.3d 426, 433.)  "[T]he statement must assert facts which would have a tendency in reason either (1) to prove some portion of the proponent's cause of action, or (2) to rebut some portion of the party declarant's defense."  (*Ibid.*)

Evidence Code section 210 provides that evidence is relevant where it has a "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  Under section 210, relevant evidence has "two distinct dimensions."  (*People* v. *Hill* (1992) 3 Cal.App.4th 16, 29.)  First, it must have probative value, *i.e.*, a "tendency in reason to prove or disprove" the proposition for which it is offered.  Second, it must prove or disprove a "disputed fact that is of consequence to the determination of the action."  Evidence which proves a fact not in dispute is immaterial and thus inadmissible under section 210.  (*People* v. *Hill, supra*, at p. 29.)

7

The trial court enjoys wide discretion in determining the relevancy of evidence. (*People* v. *Kelly* (1992) 1 Cal.4th 495, 523.) On appeal, the trial court's exercise of discretion will not be disturbed absent a clear showing of abuse. (*People* v. *Johnson* (1974) 39 Cal.App.3d 749, 762.) There is abuse of discretion only when the trial court acts arbitrarily, capriciously, or whimsically, exceeding "the bounds of reasons, all of the circumstances being considered." (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72.)

The statements of an accused may be admitted to prove his mental state at the time of the offense. (Cf. *People* v. *Smith* (1984) 151 Cal.App.3d 89, 96; *People* v. *Singh* (1926) 78 Cal.App.3d 476, 486.) Appellant's statement reflected his continuing mental status in terms of his pedophilia, not his "character." The contents of his statement were more probative than, and as admissible as, the testimony of a psychiatrist who described the accused's state of mind at the time of the offense. (*See* Pen. Code, § 28(a).) Appellant's characterization of his sexual response to young males was directly relevant to his motivation when he told Keith that he waited to "go down" on him. The court therefore did not abuse its discretion by admitting the evidence.

*People* v. *Allen, supra,* upon which appellant greatly relies, is distinguishable. As our supreme court explained, "the statement [in *Allen*] required too many levels of speculation to be construed as an admission of guilt." (*People* v. *Hamilton* (1985) 41 Cal.3d 408, 428 & fn. 12; *see also People* v. *Martinez* (1980) 106 Cal.App.3d 521, 533, fn. 2.) By contrast, appellant's statement was directly relevant to his continuing mental state.

8

**B.   Telephone Conversation**

Appellant next contends that comments made by Detective Grossi during his telephone conversation with appellant conveyed the impression that appellant had engaged in previous inappropriate conduct with minors. This suggestion of impropriety, appellant insists, constituted inadmissible character evidence. This contention lacks merit.

Appellant identifies three instances when evidence was introduced which combined to create the inference of character evidence: (1) the officer testified that he previously had appellant's telephone number (RT 115); (2) the officer wanted to learn why appellant "was telling these guys again that you want to do this to them" (RT 120); and (3) the officer asked appellant about his recent proximity to a school. (RT 122-123.) Appellant summarizes his position: "The effect of this evidence -- that the detective knew appellant's phone number, that appellant was 'again' saying things to minors, and that it was of concern to police that he was seen near a school -- was to overtly convey to the jury that appellant had a known history of inappropriate conduct with minors." (AOB 9.)

As appellant acknowledges, he did not object to the admission of the evidence on this ground, a failure which additionally precludes appellate review of this claim. (Evid. Code, § 353(a).) However, he predictably raises the issue in the context of ineffective assistance of counsel. Therefore, it will be necessary to address whether counsel was incompetent for failing to object to the evidence; and if so, whether it is reasonably likely that a timely objection would have produced a result more favorable to appellant. (*See Kimmelman* v. *Morrison* (1986) 477 U.S. 365, 381; *Strickland* v. *Washington* (1984) 466 U.S. 668.)

9

First, failure to object to Grossi's testimony about possessing appellant's telephone number was not ineffective assistance. Possession of the number had no particular significance. For all the jury knew, Grossi may have learned appellant's number during an investigation in which appellant was not the suspect. In any event, it is not reasonably likely an impermissible inference of pedophilia could be drawn from the mere possession by the officer of appellant's telephone number. (Cf. *People* v. *Clair* (1992) 2 Cal.4th 629, 663 [reasonable likelihood test applied in context of prosecutorial misconduct].)

Appellant next challenges the admission of Grossi's statement that he was "[t]rying to find out why you're telling those guys again that you want to do this to them." (RT 120.) That statement must be viewed in context. Appellant shortly thereafter admitted that he told Keith, "I want to give you a blow job." (RT 121.) Even assuming it is reasonably likely that a prior instance of misconduct with young males could be inferred from Grossi's statement, it would have been futile to object to it in light of the damning admission made by appellant a few lines later. It is not ineffective assistance to make a meaningless objection.

Finally, appellant's objection to the conversation about his proximity to the school is not well taken. That conversation occurred after his critical admission. Consequently, any objection would have been pointless.

Not only was trial counsel not ineffective for failing to object to these inconsequential passages in the transcript of the conversation, appellant was not prejudiced. The issue of prejudice will be addressed in the next section.

10

## C.  No Prejudice

Even if all of the evidence to which appellant objects in parts A and B were inadmissible and should have been excluded, it is not reasonably likely that the outcome of the trial would have been different. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836.) The victim identified appellant and recited the offending words. His testimony was corroborated by evidence of his "fresh complaint" made to his friends. Appellant acknowledged his guilt to his brother and a police officer. In light of this reliable, positive and uncontradicted evidence, any error in the admission of his statements was harmless.

## II.

## APPELLANT'S PUNISHMENT WAS NOT UNCONSTITUTIONALLY EXCESSIVE

Appellant contends that the imposed sentence of 12 years constituted cruel and/or unusual punishment under the state and federal constitutions. (Cal. Const., art. I, § 17; U.S. Const., Amend. VIII.) He submits that the "dual use of appellant's prior conviction to both elevate his offense to a felony and double his term result[ed] in an unconscionable sentence." (AOB 15.) This submission is unfounded.

### A.  State Constitution

Appellant's challenge to his sentence on state constitutional grounds is necessarily based upon a claim that Penal Code section 1170.12(a)-(e) (the "three strikes law") authorizes an excessive period of incarceration. Courts have rejected constitutional challenges to recidivist statutes such as that under which appellant was sentenced. (*In re Rosencrantz* (1928) 205 Cal. 534; *accord People* v. *Rivademeira* (1991) 232 Cal.App.3d 1416, 1420; *People* v. *Valencia* (1989) 207 Cal.App.3d 1042, 1048; *People* v. *Carrasco* (1988) 202 Cal.App.3d 1078, 1082; *People* v. *Jameson* (1986) 177 Cal.App.3d 658; *People* v. *Weaver* (1984) 161 Cal.App.3d 119, 125-128; *People* v. *Villasenor* (1984) 152 Cal.App.3d 30, 34; *People* v. *Lopez* (1983) 147 Cal.App.3d 162, 164.) Similarly, sentences under the "three strikes law" have survived challenges to their lengths. (*People* v. *Ayon* (1996) 46 Cal.App.4th 385, 400; *People* v. *Ruiz* (1996) 44 Cal.App.4th 1653, 1661-1665; *People* v. *Cooper* (1996) 43 Cal.App.4th 815, 820-828; *People* v. *Diaz* (1996) 41 Cal.App.4th 1424, 1431; *People* v. *Kinsey* (1995) 40 Cal.App.4th 1621;

12

*People* v. *Ingram* (1995) 40 Cal.App.4th 1397, 1412-1417; *People* v. *Cartwright* (1995) 39 Cal.App.4th 1123, 1134-1137.)

The purpose of recidivist statutes, of course, is to "discourag[e] persons who commit serious felonies from doing it again." (*People* v. *Villasenor, supra*, 152 Cal.App.3d at p. 33.) The primary goals of such a law "are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense, but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." (*Rummel* v. *Estelle* (1980) 445 U.S. 263, 284.) Consistent with these principles, appellant's sentence based upon his recidivism did not offend constitutional principles. (*See People* v. *Diaz, supra*, 41 Cal.App.4th at p. 1431.

This conclusion is buttressed by an analysis employing the tripartite test formulated by our supreme court in *In re Lynch* (1972) 8 Cal.3d 410: (1) the nature of the offense and the offender, with particular regard to the degree of danger which both present to society; (2) a comparison of the challenged penalty with the punishment prescribed in the same jurisdiction for other more serious offenses; (3) a comparison of the challenged penalty with punishment prescribed for the same offense in other jurisdictions. (8 Cal.3d at pp. 425-427; *accord People* v. *Dillon* (1983) 34 Cal.3d 441, 479-480; *In re Grant* (1976) 18 Cal.3d 1, 8-9; *In re Rodriguez* (1975) 14 Cal.3d 639, 647; *People* v. *Wingo* (1975) 14 Cal.3d 169, 175; *In re Foss* (1974) 10 Cal.3d 910, 919-920; *People* v. *Thompson* (1994) 24 Cal.App.4th 299, 304.)

13

*Dillon* refined the first prong of *Lynch*, explaining that a court should consider "not only the offense in the abstract" but "'the facts of the crime in question,'" including motive, the manner in which the crime was committed, the extent of the defendant's involvement, and the consequence of the crime. (34 Cal.3d at p. 479.) As to the offender, a court should consider whether the penalty is "grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*Ibid.*)

"The main technique of analysis under *Dillon* is to examine the nature of the offense and the nature of the offender." (*People* v. *Young* (1992) 11 Cal.App.4th 1299, 1308.) Indeed, while comparative review of other sentencing statutes may be permissible, it is not required. (*People* v. *Weddle* (1991) 1 Cal.App.4th 1190, 1194-1195; and fn. 2; 1198, fn. 8.) Whether a punishment is cruel or unusual may be based on the first *Lynch* prong alone. (See, e.g., *People* v. *Dillon, supra*; *People* v. *Thompson, supra*.)

### 1. Offense and Offender

Judged by these standards, the sentence was not excessive. Appellant attempts to minimize the gravity of his conduct which served as the basis for his present conviction, arguing that "it did not involve any physical touching or any threat to others. His conduct did not involve violence or any threat of physical touching. The relative severity of appellant's current conduct is low." (AOB 18.) This argument fails to confront the true basis for the sentence: recidivism. Appellant was sentenced not only for his current violation of section 647.6, but also for his previous conviction for the commission of lewd

14

and lascivious acts with children under the age of 14 years. (*People* v. *Diaz*, *supra*, 41 Cal.App.4th at p. 1431.)

Appellant acknowledges the basis for the sentence, but asserts that "even a sentence increased by prior convictions must still be proportionate to *current* criminal activity." (AOB 19.) He focuses upon the fact that section 647.6 classifies his offense as a misdemeanor, which is both elevated to a felony and punished with a doubled sentence by reason of the existence of the prior.

Appellant acknowledges that a prior conviction may be used to elevate a misdemeanor to a felony and to serve as a strike. (*See People* v. *White Eagle* (1996) 48 Cal.App.4th 1511, 1517-1518; *People* v. *Hurtado* (1996) 47 Cal.App.4th 805, 816.)   Rather, he argues that it is unconstitutional to do so in this case. Appellant's argument minimizes the nature of his current offense. It is true that he injured no one, but it may well be that only his victim's instant and emphatic reaction to his statement precluded the consummation of the suggested conduct. More fundamentally, appellant's conduct as reflected by his prior and current convictions reveals him to be a menace to male youths and, consequently, an appropriate candidate for extended incarceration. Appellant again minimizes his behavior, relying upon the 14-year passage of time between the two offenses. That argument is more appropriately addressed by considering the nature of the offender.

The probation report on appellant reflects that, aside from the charged prior, appellant had suffered convictions for resisting arrest and reckless driving in 1983, and felony cruelty to an elderly adult in 1993. (CT 107-108.) In addition, he would have been charged with two counts under section 647.6(a) in 1995 if the two victims had not left the area. (CT 108.) In 1997, he pleaded guilty to one count of petty theft.

15

(CT 109.)  The probation officer concluded that appellant's prior convictions were "significant" and continued in their seriousness.  (CT 116.)  Having been previously convicted of two felonies and three misdemeanors, appellant's complaint that the 12-year sentence was disproportionate is facetious at best.

For these reasons, appellant's submission fails under the first *Lynch* test.

### 2.  Comparison With Other Sentences in California

Appellant next argues that his sentence was constitutionally disproportionate because it is identical to that imposed upon those defendants convicted of more serious offenses.  Appellant argues that, because the strikes must be serious or violent felonies but the offense may be *any* felony, "[t]his is where proportionality breaks down because two defendants with identical priors receive the same sentence even if one defendant's current felony is rape or arson and the other defendant's current felony is making an appropriate comment to a teenager."  (AOB 20-21.)  Appellant is incorrect.

Appellant's assertion regarding the potential sentence under the three strikes law does not apply in this, a "two strikes" case.  In a three strikes case, as appellant suggests, a defendant with two qualifying priors will receive a sentence of 25 years to life upon conviction of any felony.  (Pen. Code, § 1170.12(c)(2)(A).)  However, a defendant with only one qualifying prior receives "twice the term otherwise provided as punishment for the currently felony conviction."  (Pen. Code, § 1170.12(c)(1).)  Consequently, the potential sentences on the current offense are relevant to the penalty ultimately imposed.  Thus, a defendant convicted of rape with a serious prior could be sentenced to

16

six, 12, or 16 years. (Pen. Code, § 264(a).) A defendant convicted of arson of an inhabited structure with a qualifying prior may be sentenced to six, 10, or 16 years. (Pen. Code, § 451(b).) By contrast, appellant could have received a sentence of as little as four years, a term only one-fourth as long as that from a rapist or arsonist. (Pen. Code, § 647.6(c)(2).) The length of appellant's sentence, therefore, is primarily attributable to the decision by the court to sentence him to the upper term.

Even if appellant were a three strikes defendant, his argument would fail. He mistakenly assumes that a violent recidivist poses a greater danger, and is deserving of harsher punishment, than a recidivist whose charged offense and two prior serious felonies did not result in injury to anyone. In fact, both have posed a danger to society in the past by the commission of their offenses, and both pose a danger in the present by reason of their chronic disregard of the law. Imposition of the same punishment upon both defendants does not result in disproportionality of constitutional dimension.

Appellant also argues that "no other California statute punishing repeat offenders is as severe as the Three Strikes Law because other statutes require the current offense to be of equal severity to the qualifying prior," citing section 667(a) as an example. The short answer is that the enactment of the three strikes law reflects a dissatisfaction with the efficacy of such statutes as section 667(a), which is inapplicable to repeat offenders unless they have committed a triggering offense. By contrast, the three strikes law applies to all defendants charged with a felony with two or more prior serious felony convictions. It thus permits enhanced punishment of a considerable number of recidivists who would escape the reach of section 667(a).

17

Viewed from this perspective, the three strikes law is remedial, not Draconian.

For these reasons, appellant cannot satisfy the second prong of the *Lynch* test.

### 3.  Comparison With Other Jurisdictions

After surveying the recidivist statutes of other states (AOB 21-24), appellant concludes that, "other than California, there appears to be no state with a recidivist statute that requires such mandatory and lengthy imprisonment regardless of any circumstances in mitigation, such as those present in this case." Appellant submits that, because the three strikes law provides for the harshest punishment, it must be unconstitutional. For the following reasons, this submission must be rejected.

First, it is no more than a truism that one state will impose the most severe penalty, but it is not unconstitutional by the mere fact of its severity. Appellant's position would result in the invalidation of *every* statute which provided for the harshest penalty. When that statute was voided, the statute providing for the second most severe penalty would take its place -- and, for that reason, would be declared unconstitutional. No statute would survive scrutiny unless it prescribed the identical penalty as its foreign counterparts. Such a notion violates the most basic concept of federalism and would handicap states in their efforts to provide penalties appropriate to their individual needs and circumstances. (See *People* v. *Cooper, supra,* 43 Cal.App.4th at p. 827.)

Second, appellant's position has been rejected by decisional law. (*People* v. *Ayon, supra,* 46 Cal.App.4th at pp. 399-401; *People* v. *Cooper, supra,* at pp. 826-828.) Those decisions are not contrary to,

18

indeed are consistent with, *In re Lynch, supra. Lynch* held that the severity of a penalty in comparison with the prescribed punishments of other states is an indicium of its excessiveness, but did not accord that factor determinative status. If that circumstance were dispositive, a statute requiring a 10-year sentence would be invalid if all other states authorized imprisonment for nine years. Rather, the most severe penalty must also be *grossly* disparate in relation to comparable punishments of other states. Based on his own evidence, appellant cannot show such disparity.

Finally, appellant mischaracterizes the three strikes law as "requir[ing] such *mandatory* application and lengthy imprisonment *regardless* of any circumstance in *mitigation* . . . ." (AOB 24; emphasis added.) In fact, the three strikes law *authorizes* the penalty imposed in this case, but does not *require* it. The trial court was vested with the discretion to strike priors in order to mitigate any harshness that the prescribed sentence may have inflicted. (*People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497.) The existence of the power of the trial court to tailor a sentence to the individual circumstances of the defendant ensures that the penalty imposed would be proportionate. Appellant's challenge to the statute, and his sentence, must fail.

## B.    Federal Constitution

The United States Supreme Court has upheld a life sentence imposed upon a defendant convicted of three thefts (*Rummel* v. *Estelle, supra*, 445 U.S. at p. 263; a mandatory life sentence for possession of 672 grams of cocaine (*Harmelin* v. *Michigan* (1991) 501 U.S. 957); and 40 years for possession and distribution of nine ounces of marijuana. (*Hutto* v. *Davis* (1982) 454 U.S. 370.) Appellant's criminal behavior

19

posed a far greater danger to society than the offenses committed in *Rummel* or *Hutto*.

The proportionality analysis of *Solem* v. *Helm* (1983) 463 U.S. 279, which tracks the approach of *In re Lynch, supra*, has been rejected by two members of the present court (*Harmelin* v. *Michigan, supra*, 501 U.S. at pp. 966-975) and severely limited by three others (*id.* at pp. 997-1009). As Justice Kennedy sees the matter, "[a] better reading of our cases leads to the conclusion that intra- and inter-jurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." (*Id.* at p. 1005.)

Comparative analysis was abandoned because it was inexact in practice due to discretionary administrative determination of credits and parole eligibility (see *People* v. *Barrera* (1993) 14 Cal.App.4th 1555, 1570), and indefensible in concept. Intrajurisdictional comparison fails because "[o]ther crimes, of course, implicate other societal interests, making any such comparison inherently speculative." (*Hutto* v. *Davis, supra*, 454 U.S. at p. 373, fn. 2; *Rummel* v. *Estelle, supra*, 445 U.S. at p. 282, fn. 27.)   Interjurisdictional comparison fails because "[s]tate sentencing schemes may embody different penological assumptions, making interstate comparison of sentences a difficult and imperfect enterprise . . . . And even assuming identical philosophies, differing attitudes and perceptions of local conditions may yield different, yet rational, conclusions regarding the appropriate length of prison terms for particular crimes. Thus, the circumstance that a State has the most severe punishment for a particular crime does not by itself render the punishment grossly disproportionate." (*Harmelin* v. *Michigan, supra*, 501 U.S. at pp. 999-1000 [Kennedy, J., conc.].)

20

For these reasons, appellant's Eighth Amendment claim must be rejected.

## III.

## APPELLANT IS ENTITLED TO ADDITIONAL CONDUCT CREDIT

Appellant contends that he is entitled to additional conduct credits for his precommitment incarceration. Appellant appears to be correct.

"Generally speaking, the award of precommitment conduct credits to a defendant sentenced under the Three Strikes law or initiative is calculated by reference to [Penal Code] section 4019. [Citation.]   Under section 4019, a defendant is entitled to accrue conduct credits based on a formula which divides the days of actual custody credit, including the date of sentencing, by four and then multiples the result, including the remainder, by two." (*People* v. *Carceres* (1997) 52 Cal.App.4th 106, 110.)   Although a three strikes defendant may not be awarded more than 20 percent custody credit for postcommitment incarceration (Pen. Code, § 1170.12(a)(5)), that provision is inapplicable to presentence conduct credit. (*People* v. *Hill* (1995) 37 Cal.App.4th 220, 223-227.)   Enactment of the three strikes law did not alter the formula set forth in section 4019 or render it inapplicable to three strikes defendants. (*Ibid.*)

Appellant was awarded 201 actual days of custody credit. (CT 124.)   Under the formula prescribed by section 4019, he should have received 100 additional days of credit.   He received only 40 days of such credit. (CT 124, 138.)   Accordingly, he is entitled to an additional 60 days of conduct credit.

22

## CONCLUSION

For the foregoing reasons, the judgment should be modified to award appellant 60 days of presentence conduct credit; as modified, the judgment should be affirmed.

Dated:  April 23, 1999

Respectfully submitted,

BILL LOCKYER
Attorney General

DAVID P. DRULINER
Chief Assistant Attorney General

RONALD A. BASS
Senior Assistant Attorney General

DAVID H. ROSE
Deputy Attorney General

RONALD E. NIVER
Deputy Attorney General

Attorneys for Respondent

REN/lls
SF1998DA1353

23

## DECLARATION OF SERVICE BY MAIL

Case Name: **People v. John S. Morgan**
     No.: **A084106**

I am employed in the Office of the Attorney General, which is the office of a member of the Bar of this Court at which member's direction this service is made. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>April 23, 1999,</u> I served the attached

**RESPONDENT'S BRIEF**

in the internal mail collection system at the Office of the Attorney General, 50 Fremont Street, Suite 300, San Francisco, California 94105-2239, for deposit in the United States Postal Service that same day in the ordinary course of business in a sealed envelope, postage fully prepaid, addressed as follows:

Judy Behrendt  (2 copies)
Attorney at Law
845 Jefferson Street
Napa, CA  94559

Clerk of the Court
Lake County Superior Court
255 North Forbes Street
Lakeport, CA  95453

Honorable Gary Luck
Lake County District Attorney
255 North Forbes Street
Lakeport, CA  95453-2790

First District Appellate Project
730 Harrison Street, Suite 201
San Francisco, CA  94107

I declare under penalty of perjury the foregoing is true and correct and that this declaration was executed on April 23, 1999, at San Francisco, California.


<u>  L. SORENSEN  </u>                                
                                            Signature