Case 3:07-cv-06477-CRB   Document 13-10   Filed 08/15/2008   Page 1 of 8

# EXHIBIT 9



# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

FILED
Court of Appeal - First App. Dist.

AUG 04 1999

RON D. BARROW, CLERK

| THE PEOPLE, | |
|---|---|
| Plaintiff and Respondent, | A084106 |
| v. | |
| JOHN S. MORGAN, | (Lake County Super. Ct. No. CR-4609) |
| Defendant and Appellant. | |

DOCKET
ADM-SF
CIV-SF
CR-SF / 99601 / 353
Entered by JE
Date 8/9/99

Appellant John S. Morgan was charged with annoying or molesting a child under the age of 18, with a prior felony conviction of lewd conduct with a child. (Pen. Code, §§ 647.6, subds. (a), (c); 288, subd. (a).)[1] He was also charged with two counts of contributing to the delinquency of a minor (§ 272) and with a prior serious felony conviction under the "Three Strikes" law.

Trial on the prior was bifurcated. A jury convicted appellant of the charged crimes; thereafter, he admitted the prior. The court sentenced him to the upper term of six years on the first count, doubled to 12 years under the Three Strikes law (§ 1170.12, subd. (c)(1)), and to concurrent terms on the other two counts. Appellant contends the court erred in admitting certain evidence and that his sentence constitutes cruel and unusual punishment.[2] We affirm the judgment.

---

[1]   Subsequent statutory references are to the Penal Code.

[2]   In his opening brief, appellant also raised an issue related to conduct credits, but he indicates in his reply brief that the trial court has resolved that issue in his favor.

# FACTS

Young teen-ager Keith W. became acquainted with appellant through a mutual friend who had been appellant's roommate. Sometime in February or March 1997, when Keith was 14 years old, he and two friends, Julius C. and Sonny P., spent the night at appellant's house and drank alcohol provided by appellant.

Keith remained friends with appellant after that night and occasionally "hung out" with him. Appellant often let Keith drive his truck, even though Keith didn't have a driver's license. Sometime in June 1997, appellant let Keith drive the truck to appellant's brother's house. Keith smoked marijuana with the two men, which made him feel "slouched" and "dreary" and "dragged down."

Keith and appellant left and drove to an area of abandoned mobile homes, where they stopped. Asked why he stopped there, Keith said he assumed that appellant told him to, although he couldn't remember what appellant said. Keith got out of the truck and sat on the wheel well in the back; appellant stood leaning against the other side of the truck.

Appellant mumbled something like "I want to do something, and I'm sure it's not right." Then appellant told Keith that he wanted to "go down" on him. Feeling very upset, Keith climbed out of the back of the truck; he didn't want to be near appellant. As Keith started for the driver's seat, appellant told him to sit in the passenger's seat. Keith asked appellant to take him to a friend's house, but appellant said he would take Keith home. As they drove, appellant asked, "How do you feel now that you've been come onto by a man?"

Sometime later that day, Keith told Julius and Sonny about the incident. The following day, he told his mother, but they did not report the incident to the police at that time.

Several months later, in November 1997, appellant had a conversation at his home with Clearlake Police Officer Rodney Dewey. Appellant told the officer that he was a male pedophile and that he "has urges" and does not act on them. Sometime in December

1997, after Keith told some friends that appellant was a "faggot" and that Robert Morgan was appellant's brother, the friends slashed the tires of Robert's car. Appellant told his brother that the tires had been slashed because appellant had asked either Sonny or Keith for sex. When Robert Morgan reported the vandalism to the police, he told them about appellant's admission. Clearlake Police Officer Donald Grossi telephoned appellant at his home. During their conversation, appellant admitted he told Keith that he wanted to give him a "blow job."

## DISCUSSION

### A. Admissibility of Evidence

At a hearing outside the presence of the jury on the admissibility of appellant's statement that he was a male pedophile, appellant argued for its exclusion on several grounds, including that the statement was inadmissible character evidence. The court disagreed and admitted the statement. Appellant reiterates that argument, urging that the evidence should have been excluded under Evidence Code section 1101.

Under Evidence Code section 1220, a defendant's admission against interest is admissible to prove the truth of the matter stated, provided the admission is relevant to an issue in dispute. (*People* v. *Allen* (1976) 65 Cal.App.3d 426, 433; *People* v. *Smith* (1984) 151 Cal.App.3d 89, 96.) To establish a violation of section 647.6, subdivision (a), the prosecution is required to prove both that the defendant engaged in conduct toward a person under 18 that would unhesitatingly irritate a normal person and that the conduct was motivated by an unnatural or abnormal sexual interest in the child victim. (*People* v. *Lopez* (1998) 19 Cal.4th 282, 289.) A defendant's own admissions may be relevant to prove the required mental state. (See, e.g., *People* v. *Thompson* (1988) 206 Cal.App.3d 459, 466, fn. 3 [defendant's admission that he was admiring the victim's legs made his sexual interest clear].) Exercising its broad discretion in determining the relevance of evidence, the trial court in this case could reasonably have concluded that appellant's

description of himself as a male pedophile had some tendency in reason to prove the requisite sexual motivation for his conduct.

Appellant's reliance on *People v. Allen, supra,* 65 Cal.App.3d 433, is misplaced. The defendant's statement in *Allen* required too many levels of speculation to be construed as an admission of guilt. Unlike that statement, appellant's admission in this case was directly relevant to the issue of his mental state.

Appellant's next contention relates to the evidence of his phone conversation with Detective Grossi. At an in limine hearing, the trial court overruled appellant's general objection to admission of the entire conversation, but sustained several specific objections to parts of it. An edited tape of the conversation was prepared and played for the jury during the trial.[3]

Appellant now complains that certain unexcised statements made by Detective Grossi should not have been admitted. He points to the detective's statements that he was "[t]rying to find out why you're telling these guys again that you want to do this to them" and that someone had seen appellant walking past a school. Appellant reasons that those statements, coupled with the fact that the detective knew his phone number, conveyed to the jury that appellant had a known history of inappropriate conduct with minors. Appellant contends that his trial counsel was incompetent because he failed to object specifically to those statements. However, a defendant claiming ineffective assistance of counsel must demonstrate both that counsel failed to perform with reasonable competence and that he was prejudiced by counsel's failings. (*People v. Fosselman* (1983) 33 Cal.3d

---

[3] Before trial, the People had a transcript prepared of the taped conversation, which was used at the in limine hearing to discuss appellant's objections line by line. At that hearing, appellant's counsel agreed that the transcript was accurate, except for a few words which were then changed. When the tape was played for the jury, it was also transcribed by the court reporter. Appellant's counsel points out a few discrepancies between the two transcripts. However, those discrepancies are insignificant, because the

4

572, 584.) Appellant has not made that showing. Given the strength of the evidence, it is not reasonably probable that a determination more favorable to appellant would have resulted absent these alleged omissions by trial counsel.

B. The Punishment

A conviction of violating section 647.6, subdivision (a) is ordinarily a misdemeanor, but with a qualifying prior conviction, it is a felony punishable by imprisonment for two, four, or six years. (§ 647.6, subd. (c)(2).) After appellant admitted a 1984 lewd conduct conviction (§ 288, subd. (a)), the court sentenced him to the upper term and also doubled that term based on the Three Strikes law. Appellant complains that the court should not have used his prior both to make the current offense a felony and to double his sentence, and that the resulting 12-year sentence constitutes cruel and unusual punishment.

The Legislature has broad discretion in specifying punishments for crimes. A court will invalidate a sentence as violative of the constitutional prohibition against cruel and unusual punishment only if it is so disproportionate to the offense for which it is imposed that it " 'shocks the conscience and offends fundamental notions of human dignity.' " (*People* v. *Dillon* (1983) 34 Cal.3d 441, 478.) To assess that proportionality, a court may (1) consider the nature of the offense and the offender, with particular regard to the degree of danger both present to society; (2) compare the challenged penalty with the punishment in the same jurisdiction for other more serious offenses; or (3) compare the challenged penalty with the punishment for the same offense in other jurisdictions. (*In re Lynch* (1972) 8 Cal.3d 410, 425-427.) A court must consider the nature of the offense not only in the abstract but also in light of the totality of the circumstances surrounding its commission; it must also consider the defendant's individual culpability

---

evidence presented to the jury was the taped conversation itself. The tape is part of the appellate record and the recorded conversation is clear and easily understood.

as shown by factors such as his age, prior criminality, personal characteristics, and state of mind. (*Dillon, supra,* at p. 479.)

Despite appellant's complaints about double-counting, there is no prohibition on using the same prior conviction both to elevate the current offense to a felony and to invoke the sentencing provisions of the Three Strikes law. (See, e.g., *People* v. *White Eagle* (1996) 48 Cal.App.4th 1511, 1517-1518 [petty theft with a prior]; *People* v. *Hurtado* (1996) 47 Cal.App.4th 805, 816 [carrying a concealed weapon by a felon].) Furthermore, the unambiguous legislative purpose of that law was to provide greater punishment for recidivists. (*People* v. *Dotson* (1997) 16 Cal.4th 547, 552.) Here, appellant is subject to a 12-year term not simply because of his current offense, but also on the basis of his recidivist behavior. " '[T]he point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.' [Citation.]" (*People* v. *Kinsey* (1995) 40 Cal.App.4th 1621, 1631.) Even though appellant's prior lewd conduct conviction was not recent, when the nature of that offense is considered together with the circumstances of his current offense, the unavoidable conclusion is that he has been and continues to be a threat to young males. Furthermore, he has not led a blameless life since the lewd conduct conviction. The probation report indicates that in addition to that conviction, appellant was convicted in 1993 of felony cruelty to an elderly adult and was on probation for that offense at the time of the current offense. The probation report also describes uncharged sexual conduct with two young boys in 1995, which was not prosecuted because the victims moved from the area. Under all the circumstances here, appellant's punishment, although severe, does not shock the conscience.

Appellant then argues that his punishment is disproportionate when compared with the punishment in this state for other more serious offenses, but he has made no such showing. He argues that because the Three Strikes law applies regardless of whether the

current offense is a serious or violent felony, two defendants, each with a qualifying prior, will receive the same sentence even if the current conviction of one is a serious or violent felony and the current conviction of the other is not. The argument is simply incorrect in a case such as appellant's, a "two strikes" case. When a defendant has one qualifying prior, the sentence imposed is twice that otherwise provided for the current conviction. (§§ 667, subd. (e)(1); 1170.12, subd. (c)(1).) For such defendants, the total sentence will vary depending on the statutory penalty range for the current offense and on the trial court's sentencing choice of the lower, middle, or upper terms.

Finally, appellant contends his punishment is disproportionate when compared to recidivist punishments in other jurisdictions, but the argument fails. Although he presents a general overview of recidivist statutes in other states, he has not provided any comparison of the challenged penalty prescribed for the *same* offense in other jurisdictions. (*In re Lynch, supra*, 8 Cal.3d at p. 427.)

The judgment is affirmed.

_____
Strankman, P.J.

We concur:

_____
Stein, J.

_____
Swager, J.