**EXHIBIT  10**

*Ncuen*

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA, )
                                        )     Court of Appeal
             Plaintiff and Respondent, )     No. A084106
                                        )
                             v. )     Lake County Superior Court
                                        )     No. CR-4609
JOHN S. MORGAN,                    )
                                        )
             Defendant and Appellant. )

DOCKET
ADM-SF _____
CIV-SF _____
CR-SF A98DA1353
Entered by DN
Date 9-15-99

Appeal from the Judgment of
the Superior Court of the County of Lake

HONORABLE ARTHUR H. MANN, JUDGE

PETITION OF APPELLANT FOR REVIEW AFTER THE
UNPUBLISHED DECISION OF THE COURT OF APPEAL,
FIRST APPELLATE DISTRICT, DIVISION ONE, AFFIRMING
THE JUDGMENT.

Judy Behrendt
Attorney at Law
State Bar Number 121763
845 Jefferson Street
Napa, California 94559
Telephone: (707) 252-2001

Counsel for Appellant
by Appointment of the
Court of Appeal under the
First District Appellate Project
Assisted Case System

## TOPICAL INDEX

TABLE OF AUTHORITIES ................................................................ ii

ISSUES PRESENTED ............................................................. 2

NECESSITY FOR REVIEW.................................................... 3

STATEMENT OF THE CASE ............................................... 4

STATEMENT OF FACTS .................................................... 6

ARGUMENT ....................................................................... 9

    I.     EVIDENCE OF A DEFENDANT'S STATEMENT
           CONCERNING A CHARACTER TRAIT IS
           INADMISSIBLE WHEN ATTENUATED IN TIME
           AND CIRCUMSTANCES FROM THE EVENTS
           AT ISSUE.......................................................... 9

    II.    USING APPELLANT'S PRIOR CONVICTION TO
           ELEVATE HIS OFFENSE TO A FELONY AND TO
           DOUBLE HIS SENTENCE UNDER THE THREE
           STRIKES LAW WAS A VIOLATION OF THE
           PROSCRIPTION AGAINST DUAL USE AND
           VIOLATES THE CALIFORNIA AND UNITED STATES
           CONSTITUTIONAL PROSCRIPTION AGAINST
           CRUEL AND UNUSUAL PUNISHMENT....................... 13

CONCLUSION ....................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*People* v. *Allen* (1976) 65 Cal.App.3d 426 ............................................................. 9

*People* v. *Guerrero* (1976) 16 Cal.3d 719................................................................. 9

*People* v. *Hurtado* (1996) 47 Cal.App.4th 805 ...................................................... 13

*People* v. *White Eagle* (1996) 48 Cal.App.4th 1511 .............................................. 13

*Riggs* v. *California* 99 C.D.O.S. 500 .......................................................... 3, 13, 14

## STATUTES

Evidence Code section 1101.................................................................................3, 9

Evidence Code section 1102.................................................................................... 9

Evidence Code section 1220.................................................................................. 10

Penal Code section 272...................................................................................... 4, 5

Penal Code section 288, subdivision (a).................................................................. 4

Penal Code section 647.6, subdivision (a)............................................................... 4

Penal Code section 667, subdivision (e)(1) ............................................................. 5

Penal Code section 667, subdivisions (b) to (i) .................................................... 3, 4

Penal Code section 1170.12, subdivisions (a) to (d) ............................................... 4

## CONSTITUTIONAL PROVISIONS

United States Constitution, Eighth Amendment..............................................13, 14

## OTHER AUTHORITIES

CALJIC 16.440......................................................................................................... 11

ii

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA, )
                                   )       Court of Appeal
            Plaintiff and Respondent, )       No. A084106
                                     )
                              v. )       Lake County Superior Court
                                     )       No. CR-4609
JOHN S. MORGAN, )
                                     )
              Defendant and Appellant. )
_____ )

Appeal from the Judgment of
the Superior Court of the County of Lake

HONORABLE ARTHUR H. MANN, JUDGE

_____

PETITION OF APPELLANT FOR REVIEW AFTER THE
UNPUBLISHED DECISION OF THE COURT OF APPEAL,
FIRST APPELLATE DISTRICT, DIVISION ONE, AFFIRMING
THE JUDGMENT.

_____

    TO THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND
TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT
OF THE STATE OF CALIFORNIA:

    Defendant and Appellant John S. Morgan petitions for review following the

unpublished decision of the Court of Appeal, First Appellate District, Division

One (per Strankman, P.J.), filed on August 4, 1999.  A copy of the opinion is

attached to this petition as Appendix "A."

## ISSUES PRESENTED

1.     Is a defendant's statement concerning a general character trait admissible to show intent, regardless of attenuation in time and circumstances from the time of the offense?

2.     Does use of the same prior conviction to both elevate a petty offense to a felony and double the sentence under the Three Strikes Law constitute an impermissible dual use of the prior conviction?

## NECESSITY FOR REVIEW

Review is necessary in this case to address important questions of law.

No published case addresses the issue of whether general statements by a defendant concerning character can be introduced against him and whether the attenuation of such statements from the time and circumstances of the offense affect admissibility. Although Evidence Code section 1101 permits proof of other acts if relevant to prove a fact other than disposition to commit the offense, statements are not expressly covered by the statute. Therefore, the admissibility of statements of character by a defendant raises the unresolved issue of whether such statements should be excluded as inadmissible character evidence or admitted as statements by a defendant. This court should grant review to resolve this issue.

Review should also be granted to address whether a prior conviction can be used to both elevate a petty offense to a felony and to increase the sentence under the Three Strikes Law (Pen. Code §§ 667 (b) to (i)). The United States Supreme Court has expressed concern regarding this type of dual use in the context of petty offenses. (See *Riggs* v. *California* 99 C.D.O.S. 500 ) Although California appellate courts have ruled that there is no dual use violation in using a prior conviction both to elevate a misdemeanor to a felony and as a strike to increase the felony sentence, these decisions should be reviewed by this court in light of the United States Supreme Court's comments.

3

## STATEMENT OF THE CASE

By information filed May 18, 1998, appellant was charged with one count of annoying or molesting a child under eighteen years with a prior conviction of section 288 (§647.6, subdivision (a)) (count one), and two counts of contributing to the delinquency of a minor (§272) (counts two and three). Additionally, it was alleged that appellant had previously been convicted of a serious or violent felony (a "strike" pursuant to §1170.12, subds. (a) to (d) and §667, subds. (b) to (i)). (Clerk's Transcript [CT] 54-56)

On June 29, 1998, a trial readiness conference was held at which time all allegations relating to prior convictions were bifurcated. (CT 61)

Jury trial commenced on July 7, 1998. (CT 99) Appellant's motion was granted requesting that the jury not be read the section 288 prior allegation contained in the information with regard to the section 647.6 count. (CT 99)

The court ruled in limine that statements made by appellant during a probation search were admissible. (CT 100)

On July 8, 1998, the case was submitted to the jury. (CT 101) The jury returned verdicts of guilty on all charges. (CT 101-104) Following the reading of the verdict, appellant admitted that he had suffered a prior conviction of section 288, subdivision (a). (CT 101)

4

On July 31, 1998, probation was denied and appellant was sentenced to twelve years in state prison. (CT 167) This sentence consisted of an upper term of six years doubled to twelve years pursuant to section 667, subdivision (e)(1) for violation of section 647.6, subdivision (a), and two concurrent terms of six months for the two convictions of section 272. (CT 122-124) The court ordered appellant to pay a restitution fine of $2400.00 and stayed an additional $2400.00 restitution fine pending successful completion of parole. (CT 123-124)

The court found that appellant was entitled to 201 days of actual custody credit and 40 days of conduct credit for a total of 241 days credit. (CT 123-124)

Appellant filed a timely notice of appeal on August 24, 1998. (CT 141) On August 4, 1999, the First District Court of Appeal, Division One, filed its unpublished decision affirming the judgment. (App. "A" [Strankman, P.J.])

## STATEMENT OF FACTS

Keith Waller, age fifteen at the time of trial, knew appellant through a friend of Keith's who had previously been appellant's roommate. (Reporter's Transcript [RT] 52) Keith and appellant were friends. (RT 44) In February or March, 1997, Keith, who was then fourteen, and two other friends, spent the night at appellant's house and drank alcohol provided by appellant. (RT 44-45)

In June, 1997, appellant picked Keith up at his house and let Keith drive his truck. (RT 46) Keith had driven appellant's truck numerous times before. (RT 58) They stopped at appellant's brother's house where Keith smoked a hit of marijuana. (RT 46, 54) Appellant also smoked some marijuana. (RT 62) Keith felt the effects of the marijuana. (RT 54-55) They drove to a location where there were some mobile homes that no one was living in. (RT 47) Appellant and Keith got out of the truck and Keith sat in the back of the truck. (RT 48) Appellant mumbled to himself that he wanted to do something and he was sure it wasn't right. (RT 49) Appellant then told Keith that he "wanted to go down on" him. (RT 48)

Keith was very upset and got out of the back of the truck and headed toward the driver's seat with the intent of leaving. (RT 50) Appellant told Keith to get in the passenger seat and Keith complied. (RT 50) They left and Keith asked appellant to take him to a friend's house. (RT 50) Appellant told Keith he was

6

taking him home. (RT 50) On the way, appellant asked Keith, "How do you feel

now that you've been come onto by a man?" (RT 50) Appellant took Keith home.

(RT 50-51)

On the same day as the incident, Keith told three of his friends that

appellant tried to suck his penis. (RT 76-77, 85-86) Keith told his mother what

happened the next day but did not report the incident to the police. (RT 51, 70)

Keith had never had any problems with appellant prior to this incident. (RT 57)

In November, 1997, a probation search of appellant's house was conducted

which was unrelated to the offense at issue and prior to it being reported to

authorities. (RT 104-105; 107-108) While officers were inside searching the

house, appellant waited outside with other officers. (RT 105) During appellant's

conversation with the officer, appellant stated that he was a male pedophile and

had urges that he did not act upon. (RT 105; 112-113)

In December, 1997, Keith's friends slashed appellant's brother's tires after

Keith told them that appellant was a "faggot." (RT 66-67) When police were

investigating the tire-slashing, Keith's friends told them about the earlier incident.

(RT 71-72) Appellant told his brother that he thought his tires had been slashed

because he had asked one of the boys for sex. (RT 90-91)

In a recorded telephone conversation with a police officer in December,

1997, appellant stated that during the incident, he had told Keith that he was sick

and wanted to do something that he knew was wrong, that he wanted to give him a

"blow job." (RT 121)  Appellant had told Keith that he didn't want to do it but

that he felt like he wanted to do it. (RT 122)  Appellant told Keith that he wasn't

going to do it because he knew it was wrong. (RT 122)  Appellant told the officer

that he never intended to act on any urge with regard to Keith. (RT 127)

## ARGUMENT

I.    EVIDENCE OF A DEFENDANT'S STATEMENT CONCERNING A
      CHARACTER TRAIT IS INADMISSIBLE WHEN ATTENUATED
      IN TIME AND CIRCUMSTANCES FROM THE EVENTS AT ISSUE.

Evidence Code sections 1101 and 1102 preclude the admission of evidence

of a trait of defendant's character to prove conduct in conformity with that trait on

a specified occasion.  "[C]haracter-trait or propensity-trait evidence offered by the

prosecution to establish that defendant committed the crime for which he is on trial

is inadmissible under Evidence Code section 1101 because of its highly prejudicial

nature." (*People* v. *Allen* (1976) 65 Cal.App.3d 426, 435, citing *People* v.

*Guerrero* (1976) 16 Cal.3d 719)

A defendant's statements can constitute inadmissible character evidence.

Thus, in *People* v. *Allen*, *supra*, the court held it an abuse of discretion to admit

statements made by the defendant which improperly reflected on his character.

The court held that even if a defendant's statements are admissions, they can

constitute inadmissible character evidence where "[t]he danger of the use of this

evidence by the jury as character-trait evidence was [] highly prejudicial. . ." (*Id.*,

pp. 434-435)

In the present case, appellant made a statement to police officers that he was

a "male pedophile" and had urges that he didn't act upon. (RT 104-105) This

statement was made approximately five months after the incident in question,

during a probation search unrelated to the incident, and prior to any report being made to authorities concerning the incident. Appellant's statement identifying himself as a male pedophile was made in a context completely unrelated to the incident in question.

The Court of Appeal viewed appellant's statement simply as an admission under Evidence Code section 1220; yet, given the nature of the allegation against appellant, the danger was overwhelming that his statement would be used by the jury to substantiate that appellant acted in conformity with this character trait on the date in question. It is hard to conceive of a word in our society that carries a more negative impact than the term "pedophile." The relatively weak evidence in this case was critically bolstered by the highly inflammatory evidence that appellant was a male pedophile. Given the fervent societal abhorrence for pedophiles, it is reasonably probable that this type of evidence would significantly impact a jury in reaching its verdicts.

At trial, the evidence constituting the offense was not particularly egregious and could have been viewed by the jury as equivocal had this type of character evidence not been before them. The evidence established that appellant had known the minor for several years. They had spent considerable time together, yet appellant had never acted sexually inappropriately with the minor or made any inappropriate suggestions. On the date of the incident, appellant was mumbling to

10

himself. (RT 49) **Had** the jury not received evidence that appellant was a known pedophile, it is reasonably probable that they would have found insufficient evidence that appellant was directing his comments at the minor. (CALJIC. 16.440) Appellant never suggested that the minor allow him to do anything; he only mentioned the feelings he had, that he knew they were wrong, and that he wasn't going to do anything. (RT 121) Appellant never attempted to touch the minor. Without highly prejudicial character evidence before it, it is reasonably probable that the jury would have found insufficient proof that appellant's conduct "would unhesitatingly have disturbed or irritated a normal person if directed at that person." (CALJIC 16.440) The minor admitted that he smoked marijuana and was impaired at the time of the incident. The minor reported to his friends that appellant tried to suck his penis, an apparent exageration of the actual events. Without the taint of this character evidence, issues regarding the minor's credibility could have created a reasonable doubt in the minds of the jury.

No case has directly addressed the admissibility of a defendant's statements where such statements go to a general character trait rather than an admission concerning specific events. The facts of appellant's case raise the issue of whether general statements made by a defendant at a time and under circumstances unrelated to particular allegations can be used to show intent or motive on that occasion, and whether such statements are admissions at all.

For this reason, review should be granted to settle this important question of law, and provide guidance to reviewing courts as to what constitutes a relevant admission by a defendant as opposed to inadmissible character evidence.

II.    USING APPELLANT'S PRIOR CONVICTION TO ELEVATE HIS
OFFENSE TO A FELONY AND TO DOUBLE HIS SENTENCE
UNDER THE THREE STRIKES LAW WAS A VIOLATION OF THE
PROSCRIPTION AGAINST DUAL USE AND VIOLATES THE
CALIFORNIA AND UNITED STATES CONSTITUTIONAL
PROSCRIPTION AGAINST CRUEL AND UNUSUAL PUNISHMENT.

Under current appellate decisions, a misdemeanor offense can be elevated to

a felony and the sentence thereon increased significantly based on the same prior

conviction, IF such prior constitutes a "strike" under the Three Strikes Law. (See

*People* v. *White Eagle* (1996) 48 Cal.App.4th 1511; *People* v. *Hurtado* (1996) 47

Cal.App.4th 805)  Since these decisions, the United States Supreme Court has

expressed concern regarding the Three Strikes Law in relationship to petty

offenses. (*Riggs* v. *California* 99 C.D.O.S. 500)  In *Riggs*, the pro se petitioner

had been sentenced to an indeterminate term of 25 years to life under California's

Three Strikes Law for stealing a bottle of vitamins.  Petitioner claimED that his

sentence violated the Eighth Amendment of the United States Constitution because

of its gross disproportionality.  The Court stated that "[t]his question is obviously

substantial, particularly since California appears to be the only State in which a

misdemeanor could receive such a severe sentence."  The court declined to grant

certiorari because neither the California Supreme Court nor any lower federal

courts had addressed the issue.

13

Appellant's case raises the same issues that troubled the United States Supreme Court in *Riggs*. His conduct would have constituted a misdemeanor but for a 1984 prior conviction which also constituted a strike. Both legally and factually, the conduct alleged to have been engaged in by appellant was minimally criminal - he made a statement to a fifteen-year-old minor he had known for several years regarding sexual feelings he had, with no attempt or apparent intent to act upon these feelings. Because of his prior conviction, this conduct was elevated to a felony offense. Based on this same prior conviction, appellant's sentence was doubled under the Three Strikes Law. Appellant was ultimately sentenced to twelve years in prison for an offense that would have been a misdemeanor if not for his fourteen-year-old prior conviction.

Although the Court of Appeal ruled in this case that there is no prohibition against using the same prior conviction both to elevate an offense to a felony and to increase the sentence under the Three Strikes Law, review should be granted in this case to address the Eighth Amendment concerns raised by the United States Supreme Court as well as concerns that the California Constitution is violated by such a sentencing outcome.

14

## CONCLUSION

For the foregoing reasons, review should be granted to settle these important legal questions.

Respectfully submitted,

Judy Behrendt
Counsel for appellant

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

FILED

Court of Appeal - First Appellate Dist

AUG 04 1999

RON D. BARROW, CLERK

BY_____
DEP'TY

THE PEOPLE,

    Plaintiff and Respondent,

v.

JOHN S. MORGAN,

    Defendant and Appellant.

A084106

(Lake County
Super. Ct. No. CR-4609)

---

Appellant John S. Morgan was charged with annoying or molesting a child under the age of 18, with a prior felony conviction of lewd conduct with a child. (Pen. Code, §§ 647.6, subds. (a), (c); 288, subd. (a).)[1] He was also charged with two counts of contributing to the delinquency of a minor (§ 272) and with a prior serious felony conviction under the "Three Strikes" law.

Trial on the prior was bifurcated. A jury convicted appellant of the charged crimes; thereafter, he admitted the prior. The court sentenced him to the upper term of six years on the first count, doubled to 12 years under the Three Strikes law (§ 1170.12, subd. (c)(1)), and to concurrent terms on the other two counts. Appellant contends the court erred in admitting certain evidence and that his sentence constitutes cruel and unusual punishment.[2] We affirm the judgment.

---

[1]     Subsequent statutory references are to the Penal Code.

[2]     In his opening brief, appellant also raised an issue related to conduct credits, but he indicates in his reply brief that the trial court has resolved that issue in his favor.

APPENDIX A

## FACTS

Young teen-ager Keith W. became acquainted with appellant through a mutual friend who had been appellant's roommate. Sometime in February or March 1997, when Keith was 14 years old, he and two friends, Julius C. and Sonny P., spent the night at appellant's house and drank alcohol provided by appellant.

Keith remained friends with appellant after that night and occasionally "hung out" with him. Appellant often let Keith drive his truck, even though Keith didn't have a driver's license. Sometime in June 1997, appellant let Keith drive the truck to appellant's brother's house. Keith smoked marijuana with the two men, which made him feel "slouched" and "dreary" and "dragged down."

Keith and appellant left and drove to an area of abandoned mobile homes, where they stopped. Asked why he stopped there, Keith said he assumed that appellant told him to, although he couldn't remember what appellant said. Keith got out of the truck and sat on the wheel well in the back; appellant stood leaning against the other side of the truck.

Appellant mumbled something like "I want to do something, and I'm sure it's not right." Then appellant told Keith that he wanted to "go down" on him. Feeling very upset, Keith climbed out of the back of the truck; he didn't want to be near appellant. As Keith started for the driver's seat, appellant told him to sit in the passenger's seat. Keith asked appellant to take him to a friend's house, but appellant said he would take Keith home. As they drove, appellant asked, "How do you feel now that you've been come onto by a man?"

Sometime later that day, Keith told Julius and Sonny about the incident. The following day, he told his mother, but they did not report the incident to the police at that time.

Several months later, in November 1997, appellant had a conversation at his home with Clearlake Police Officer Rodney Dewey. Appellant told the officer that he was a male pedophile and that he "has urges" and does not act on them. Sometime in December

2

1997, after Keith told some friends that appellant was a "faggot" and that Robert Morgan was appellant's brother, the friends slashed the tires of Robert's car. Appellant told his brother that the tires had been slashed because appellant had asked either Sonny or Keith for sex. When Robert Morgan reported the vandalism to the police, he told them about appellant's admission. Clearlake Police Officer Donald Grossi telephoned appellant at his home. During their conversation, appellant admitted he told Keith that he wanted to give him a "blow job."

## DISCUSSION

A. <u>Admissibility of Evidence</u>

At a hearing outside the presence of the jury on the admissibility of appellant's statement that he was a male pedophile, appellant argued for its exclusion on several grounds, including that the statement was inadmissible character evidence. The court disagreed and admitted the statement. Appellant reiterates that argument, urging that the evidence should have been excluded under Evidence Code section 1101.

Under Evidence Code section 1220, a defendant's admission against interest is admissible to prove the truth of the matter stated, provided the admission is relevant to an issue in dispute. (*People* v. *Allen* (1976) 65 Cal.App.3d 426, 433; *People* v. *Smith* (1984) 151 Cal.App.3d 89, 96.) To establish a violation of section 647.6, subdivision (a), the prosecution is required to prove both that the defendant engaged in conduct toward a person under 18 that would unhesitatingly irritate a normal person and that the conduct was motivated by an unnatural or abnormal sexual interest in the child victim. (*People* v. *Lopez* (1998) 19 Cal.4th 282, 289.) A defendant's own admissions may be relevant to prove the required mental state. (See, e.g., *People* v. *Thompson* (1988) 206 Cal.App.3d 459, 466, fn. 3 [defendant's admission that he was admiring the victim's legs made his sexual interest clear].) Exercising its broad discretion in determining the relevance of evidence, the trial court in this case could reasonably have concluded that appellant's

3

description of himself as a male pedophile had some tendency in reason to prove the requisite sexual motivation for his conduct.

Appellant's reliance on *People* v. *Allen, supra*, 65 Cal.App.3d 433, is misplaced. The defendant's statement in *Allen* required too many levels of speculation to be construed as an admission of guilt. Unlike that statement, appellant's admission in this case was directly relevant to the issue of his mental state.

Appellant's next contention relates to the evidence of his phone conversation with Detective Grossi. At an in limine hearing, the trial court overruled appellant's general objection to admission of the entire conversation, but sustained several specific objections to parts of it. An edited tape of the conversation was prepared and played for the jury during the trial.[3]

Appellant now complains that certain unexcised statements made by Detective Grossi should not have been admitted. He points to the detective's statements that he was "[t]rying to find out why you're telling these guys again that you want to do this to them" and that someone had seen appellant walking past a school. Appellant reasons that those statements, coupled with the fact that the detective knew his phone number, conveyed to the jury that appellant had a known history of inappropriate conduct with minors. Appellant contends that his trial counsel was incompetent because he failed to object specifically to those statements. However, a defendant claiming ineffective assistance of counsel must demonstrate both that counsel failed to perform with reasonable competence and that he was prejudiced by counsel's failings. (*People* v. *Fosselman* (1983) 33 Cal.3d

---

[3]     Before trial, the People had a transcript prepared of the taped conversation, which was used at the in limine hearing to discuss appellant's objections line by line. At that hearing, appellant's counsel agreed that the transcript was accurate, except for a few words which were then changed. When the tape was played for the jury, it was also transcribed by the court reporter. Appellant's counsel points out a few discrepancies between the two transcripts. However, those discrepancies are insignificant because the

4

572, 584.) Appellant has not made that showing. Given the strength of the evidence, it is not reasonably probable that a determination more favorable to appellant would have resulted absent these alleged omissions by trial counsel.

B. The Punishment

A conviction of violating section 647.6, subdivision (a) is ordinarily a misdemeanor, but with a qualifying prior conviction, it is a felony punishable by imprisonment for two, four, or six years. (§ 647.6, subd. (c)(2).) After appellant admitted a 1984 lewd conduct conviction (§ 288, subd. (a)), the court sentenced him to the upper term and also doubled that term based on the Three Strikes law. Appellant complains that the court should not have used his prior both to make the current offense a felony and to double his sentence, and that the resulting 12-year sentence constitutes cruel and unusual punishment.

The Legislature has broad discretion in specifying punishments for crimes. A court will invalidate a sentence as violative of the constitutional prohibition against cruel and unusual punishment only if it is so disproportionate to the offense for which it is imposed that it " 'shocks the conscience and offends fundamental notions of human dignity.' " (*People* v. *Dillon* (1983) 34 Cal.3d 441, 478.) To assess that proportionality, a court may (1) consider the nature of the offense and the offender, with particular regard to the degree of danger both present to society; (2) compare the challenged penalty with the punishment in the same jurisdiction for other more serious offenses; or (3) compare the challenged penalty with the punishment for the same offense in other jurisdictions. (*In re Lynch* (1972) 8 Cal.3d 410, 425-427.) A court must consider the nature of the offense not only in the abstract but also in light of the totality of the circumstances surrounding its commission; it must also consider the defendant's individual culpability

evidence presented to the jury was the taped conversation itself. The tape is part of the appellate record and the recorded conversation is clear and easily understood.

current offense is a serious or violent felony, two defendants, each with a qualifying prior, will receive the same sentence even if the current conviction of one is a serious or violent felony and the current conviction of the other is not. The argument is simply incorrect in a case such as appellant's, a "two strikes" case. When a defendant has one qualifying prior, the sentence imposed is twice that otherwise provided for the current conviction. (§§ 667, subd. (e)(1); 1170.12, subd. (c)(1).) For such defendants, the total sentence will vary depending on the statutory penalty range for the current offense and on the trial court's sentencing choice of the lower, middle, or upper terms.

Finally, appellant contends his punishment is disproportionate when compared to recidivist punishments in other jurisdictions, but the argument fails. Although he presents a general overview of recidivist statutes in other states, he has not provided any comparison of the challenged penalty prescribed for the *same* offense in other jurisdictions. (*In re Lynch, supra*, 8 Cal.3d at p. 427.)

The judgment is affirmed.

_____

Strankman, P.J.

We concur:

_____

Stein, J.

_____

Swager, J.

7

## CERTIFICATE OF SERVICE BY MAIL

Re:  People v. Morgan                                                     A084106

    I, Judy Behrendt, declare that I am over eighteen years of age, and not a party to the within cause; my employment address is 845 Jefferson Street, Napa, California 94559.  I served a true copy of the attached:

PETITION OF APPELLANT FOR REVIEW AFTER THE UNPUBLISHED DECISION OF THE COURT OF APPEAL, FIRST APPELLATE DISTRICT, DIVISION ONE, AFFIRMING THE JUDGMENT.

on each of the following, by placing same in an envelope (or envelopes) addressed (respectively) as follows:

Office of the Attorney General
455 Golden Gate Ave., #6200
San Francisco, California 94102

Mr. John S. Morgan #P05991
Mule Creek State Prison C-15-234-U
P.O. Box 409000
Ione, CA  95640

First District Court of Appeal, Div. One
350 McAllister Street
San Francisco, CA  94102

First District Appellate Project
730 Harrison St.  Ste. 201
San Francisco, California 94107
Attn: Jonathan Soglin

Office of the County Clerk
County of Lake - Courthouse
Lakeport, CA  95453
Attn: Honorable Arthur H. Mann

Office of the District Attorney
255 North Forbes Street
Lakeport, CA  95453

    Each envelope was then, on September 13, 1999, sealed and deposited in the United States Postal Service at Napa, California, in the county in which I am employed, with the first class postage thereon fully prepaid.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed at Napa, California, this 13th day of September, 1999.

_Judy Behrendt_
Judy Behrendt

16