**EXHIBIT 12**

**FILED**
SUPERIOR COURT
COUNTY OF LAKE

SEP 0 6 2002

HORNUNG, CLERK

By_____
Deputy Clerk

# MOTION FOR A NEW TRIAL

| | |
|---|---|
| John S. Morgan,<br>　　Petitioner, | No. _____ |
| vs. | Motion for a New Trial |
| The People of the State of California,<br>　　Respondent | Related to Case #CR-4609 |

**Before the Hon. Arthur H. Mann**
**California Superior Court**
**County of Lake**

**John S. Morgan  P-05991**
**Folsom State Prison  1-B2-26**
**Post Office Box 715071**
**Represa, California 95671-5071**

## Table of Contents

|  | |
|---|---|
|  | **Cover Page – Motion for a New Trial** |
| i | **Table of Contents** |
| ii | **References** |
| iii | **Some Jury Instructions** |
| iv | **Statement of the Case** |
| ix | **Statement of the Facts** |
| 2 | **Statement of Appealability** |
| 3 | **Petitioner's Claim** |
| 5 | **Factors in Petitioner's Claim** |
| 6 | **Elements of Argument Supporting Petitioner's Claim** |
| 15 | **Summary** |
|  | **Notice of Verification** |

i

## References

**People vs. Davis (1973)** 31 Ca3D 106, 110; 106 CR 897, 899

**People vs. Smith (1993)** 6 C4th 684; 25 CR2d 122 IAC.

**People vs. Mayorga (1985)** 171 A3d 929, 940; 218 CR 830, 836.

**People vs. Tokich (1954)** 128 CA2d 515, 517; 275 P2d 816, 817

## Some Jury Instructions

**CalJIC 2.72** states that no person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any admission made by him outside of "this" trial.

**CalJIC 16.440** states that in order to prove this crime, each of the following elements be proved:  1)  The defendant engaged in acts or conduct directed at a minor...; and 2)  the acts or conduct were motivated by ... sexual interest in the minor.

**CalJIC 3.31.5** states that there must exist a union or joint operation of act or conduct and a certain mental state in the mind of the perpetrator, else this crime is not committed.

**CalJIC 2.02** states that the defendant may not be found guilty unless the proved circumstances are not only consistent with the theory that the defendant had the required mental state; but also that those circumstances can not be reconciled with any other rational conclusion.

Also, if evidence as to mental state permits two reasonable interpretations, one of which points to the existence of said required mental state and the other to its absence, the jury must adopt the interpretation which points to its absence.

## STATEMENT OF THE CASE

By information filed on May 18, 1998, appellant was charged with one count of annoying a minor (section 647.6) (count one) with a prior conviction of section 288(a), and two counts of contributing to the delinquency of a minor (section 272) (counts two and three). Additionally, the alleged prior conviction was a "strike" pursuant to sections 1170.2 (a) to (d) and section 7778 (b) to (i) (Clerks Transcripts [CT] 54-56).

On June 29, 1998, a trial readiness conference was held at which time all allegations relating to prior convictions were bifurcated. (CT 61).

Jury trial commenced on July 7, 1998 (CT99). Appellant's motion was granted requesting that the jury not be read the section 288 (a) prior allegation contained in the information with regard to the section 647.6 (count one) (CT 99).

The court ruled in limeline that statements made by appellant during a probation search were admissible (CT 100).

On July 8, 1998, the case was submitted to the jury (CT 101). The jury returned verdicts of guilty on all charges (CT 101-104). Following the reading of the verdict, appellant admitted that he had suffered a prior conviction of section 288 (a) (CT 101).

On July 31, 1998, probation was denied and appellant was sentenced to twelve years consisting of an upper term of sex years doubled to twelve years pursuant to section 667 (e) (1), for violation of section 647.6 (count 1), and two concurrent terms of six months for conviction of section 272 (count two and count three (CT 122-124). The court ordered the defendant pay a restitution fine of $2400.00 and stayed an additional $2400.00 restitution fine pending successful completion of parole (CT 123-124).

iv

The court found that appellant was entitled to 201 days of actual custody credit and 40 days of conduct credit for a total of 241 days credit (CT 123-124).

Appellant filed a timely notice of appeal on August 24, 1998 (CT 141). (A084601).

On February 6, 1999, petitioner's appeal attorney, Judy E. Behrendt of Napa County, filed appellant's opening brief. The arguments were as follows: 1) Admission at trial of evidence of appellant's character was erroneous and prejudicial; 2) Dual use of appellant's prior conviction to elevate his offense to a felony and to double his sentence under the three strikes law constituted cruel and unusual punishment; and 3) Appellant is entitled to time credits under penal code sections 4019 and 2900.5.

On April 23, 1999, Attorneys for the respondent, including signer Ronald E. Niver, Deputy Attorney General, submitted respondent's brief in which arguments were as follows: 1) The trial court's evidentiary rulings were correct; 2) Appellant's punishment was not unconstitutionally excessive; and 3) Appellant IS entitled to additional conduct credit.

Under the formula prescribed by section 4019, appellant should have received 100 additional days of credit whereas appellant received only 40 days of such credit.

On May 17, 1999, petitioner's appeal attorney filed appellant's reply brief in which arguments were as follows: 1) Evidence of appellant's character should have been excluded at trial; 2) The same prior conviction cannot be used both as a "strike" and as the basis for elevating a misdemeanor violation of section 647.6 to a felony; and 3) Acknowledgment of the time credit adjustment by the trial court.

v

On May 17, 1999, petitioner's appeal attorney filed Petition for Habeas Corpus in which argument was that petitioner was denied right to the effective assistance of counsel in that his court-appointed attorney failed to object to the introduction of inadmissible and prejudicial evidence.

On June 22, 1999, petitioner's appeal attorney filed a second Petition for Habeas Corpus in which arguments were as follows:  1) Petitioner was denied effective assistance of counsel in that his court-appointed counsel failed to object to the introduction of inadmissible and prejudicial evidence; and 2) A denial of a Writ of Habeas Corpus based on "in re Swain" (1949) CA 2d 300, is not a ruling on the merits and is without prejudice.

On August 4, 1999, the first district court of appeal, Division one, filed its unpublished decision affirming the judgment (app "A" [Strankman, P.J.]) in which was discussed the following:  1) Admissibility of evidence; and 2) the punishment.

On September 13, 1999, petitioner's appeal attorney filed (upon the Honorable Arthur H. Mann, Judge of Lake County) "Petition of Appellant for Review after the Unpublished Decision of the Court of Appeal, First Appellant District, Division One, in which arguments were as follows: 1) Evidence of a defendant's statement concerning a character trait is inadmissible when attenuated in time and circumstances from the events at issue; and 2) Using appellant's prior conviction to elevate his offense to a felony and to double his sentence under the three strikes law was not a violation of the postscription against dual use and violates the California and United States Constitutional proscription against cruel and unusual punishment.

1999

On September 13, petitioner's appeal attorney also filed "Petition for Review after

^ 4

the Unpublished Decision of the court of Appeal, First Appellate District, Division one,

affirming the Judgment (with the Honorable Ronald M. George, Chief Justice and the

Honorable Associate Justices of the Supreme Court of the State of California) in which

issues presented were : 1) Is a defendant's statement concerning a general character trait

admissible to show intent, regardless of attenuation in time and circumstances from the

time of the offense?; and 2) Does the use of the same prior conviction to both elevate a

petty offense to a felony and double the sentence under the three strikes law constitute an

impermissible dual use of the prior conviction?

On October 10, 2000, Petitioner submitted Petition for Writ of Habeas Corpus

(CR 4842 ZZ) in which petitioner cited ineffective assistance of counsel as grounds for

relief based on the arguments as follows:  1) Public defender did not interview me to learn

my story, nor did he take a full and complete statement; 2) counsel did not inform me

what were the requirements for a finding of guilt in this matter (of violation of P. C.

647.6); 3) Public defender declined my admonition to put me on the stand to testify on my

own behalf even though I was facing the maximum allowable sentence by law, and 4)

court appointed counsel used the "alleged victim's" story as a basis for his closing

argument in attempt to make petitioner and defendant look "not so bad of a guy", looking

for a lighter sentence instead of trying to prove my innocence in the matter.

On November 3, 2000, the Superior Court of the Country of Lake of the State of

California filed Order  Denying Petition for Writ of Habeas corpus (CR 4842 NN) signed

by the Honorable Arthur H. Mann, filed by Eva Keiser, Deputy Clerk under Adam Ayala,

Court Clerk, in which was cited that petition failed to show that appeal was inadequate.

On December 4, 2000, the Court of Appeal answered a letter (~~enclosed~~) from the appellant, requesting Motion for Appointment of Counsel on Appeal, in which they advised that denial of Petition for Writ of Habeas Corpus by the Superior Court is not appealable. This submitted by Walter G. Harper, Deputy Clerk.

On October 20, 1999, the Supreme Court filed a Denial of Appellant's Petition for Review (S82280) by Chief Justice George, filed by Robert Wandruff, Deputy Clerk.

Petitioner now submits Motion for New Trial.

## STATEMENT OF THE FACTS

These according to Appellant's Opening Brief filed by Petitioner's Appeal Attorney, Judy E. Behrendt of Napa, California on February 6, 1999.

Keith Waller, age fifteen at the time of the trial, knew the appellant through a friend of his who had previously been appellant's roommate. (Report's Transcripts [RT] 52). Keith and appellant were friends (RT 44). In February or March, 1997, Keith, who was then fourteen, and two other friends, spent the night at appellant's house and drank alcohol, provided by the appellant. (RT 44-45). Charles Pierson (who testified at the trial), was fifteen years old at the time, was one of the friends who was provided alcohol during this incident (RT 84-85).

In June, 1997, appellant picked Keith up at his house and let Keith drive his truck (RT 46). Keith had driven appellant's truck numerous times before (RT 56). They stopped at appellant's brother's house where Keith smoked a hit of marijuana (RT 54-55). They drove to a location where there were some mobile homes that no one was living in (RT 47). Appellant and Keith got out of the truck and Keith sat in the back of the truck (RT 48) Appellant mumbled to himself that he wanted to do something and he was sure that it wasn't right (RT 49). Appellant then told Keith that he "wanted to go down" on him. (RT 48).

Keith was very upset and got out of the back of the truck and headed toward the driver's seat with the intent of leaving (RT 50). Appellant then told Keith to get in the passenger seat and Keith complied (RT 50). They left and Keith asked appellant to drive him to a friends home. (RT 50) Appellant took Keith home (RT 50-51).

ix

Keith had never had any problems with appellant prior to this incident (RT 57). On the same day, following the incident, Keith told his friends, Julius Chioni (who testified at the trial) and Charles Pierson, that appellant tried to suck his penis (RT 76-77, 85-86). Keith told his mother what happened the next day but did not neither she nor he reported the incident to the police (RT 51, 70).

In November, 1997, appellant had a conversation with a police officer in which he admitted that he "was" a male pedophile and had urges that he did not act upon. (RT 112-113).

In December, 1997, Keith's friends slashed appellant's brother's tires after Keith told them that appellant was a "faggot." (RT 66-67). When police were investigating the tire-slashing, Keith's friends told them about the earlier incident (RT 71-72). Appellant told his brother that he thought his tires had been slashed because he asked one of the boys for sex. (RT 90-91)

In a recorded telephone conversation with a police officer in December, 1997, appellant stated that during the incident, he had told Keith that he was sick and wanted to do something that he knew was wrong, that he wanted to give him a 'blow job." (RT 121) Appellant had told Keith that he didn't want to do it, but that he felt like he wanted to do it (RT 122). Appellant told Keith that he wasn't going to do it because he knew it was wrong (RT 122). Appellant told the officer that he never intended to act on any urge with regard to Keith (RT 127). Appellant told the officer that Keith was 15 (RT 121).

Statement of the facts according to Respondent's Brief are similar to the preceding with some variations. Statement of the facts according to the petitioner, defendant, and appellant are similar, with some variations.

x

## STATEMENT OF APPEALIBILITY

Authorization for Motion for New Trial is cited in "Criminal Law:  Practice and Procedure" fifth edition; section 34.11:  Grounds for a New Trial.

Fosselman cited with approval **People Vs Davis (1973),** which held that the trial court had broad discretion to grant a new trial whenever an accused is denied a fair and impartial trial **(People Vs Smith (1993)**.

There are two requirements for raising non statutory grounds to support a motion for a new trial **(People Vs Mayorga (1985)**.

1    An error denied the defendant the right to a fair trial; and

2    The defendant had no earlier opportunity to raise the issue.


Criminal Law:  Practice and Proceedure; section 34.14 states the following:  The Judge who presided at the trial should hear and determine the motion for new trial. **(People vs. Tokich (1954).**


If the law allows the court discretion to grant a new trial whenever an accused is denied a fair trial based on the preceding requirements, then the court must allow an offering of argument by the petitioner in support of petitioner's claim.

2

## PETITIONER'S CLAIM

**First Factor**    An error denied petitioner the right to a fair trial; and

**Second Factor**   The petitioner had no earlier opportunity to raise the issue.

### Second Factor of Petitioner's Claim

Petitioner had no earlier opportunity to raise the issue

Petitioner submits that petitioner did have opportunity to raise the issue; however, petitioner asserts that said opportunity was neither ample nor adequate, given **petitioner's circumstances**, to sufficiently address the issue.

### Petitioner's Circumstances

Petitioner does not have resources to hire an attorney at the present time to adequately represent petitioner in this matter. Petitioner has approximately $9,000.00 in a savings account and $250.00 in a checking account. (Account #166-112953; Bank of the West; Olympic Drive; Clearlake, CA 95422) held in trust in a joint account with and by petitioner's father, Wilford D. Morgan, *earmarked for the primary purpose* of funding re-establishment upon release from prison — whether by parole or release upon acquittal at a new trial granted by this motion.

Petitioner is a layman at law. Although petitioner is educated, in that petitioner has graduated college with a two year Associate's Degree, petitioner has not had formal study in defense and preparation of writs pertaining to criminal matters. Petitioner does have access to limited resources, in that the institution in which petitioner is incarcerated grants access to a Law Library; yet, it would take years of instruction and dedicated study of resources above and beyond those offered here, and then more years of practice as co-

3

~~resources above and beyond those offered here, and then more years of practice as co~~ counsel in case after case, before petitioner could prepare a professional quality writ such as that which could be prepared and submitted by a Bar certified Attorney at Law.

Petitioner's access to a device with word processing functions is limited.

Petitioner is incarcerated in a California State Prison for a sex related offense. Petitioner has found that petitioner must exercise caution and discretion in the pursuit of ~~research for~~ legal remedy in this matter.

Petitioner has also found that time for research, development, preparation, and submission of legal matters is limited by time off from petitioner's vocational assignment, unscheduled closures of the law library and reliability of the library resources, further limited by occasional lock down of part of or the whole inmate population. Petitioner is also perscribed medication which is classified Heat Sensitive, which further restricts petitioner to his housing unit when the outside temperature reaches and/or surpasses 90°F.

Petitioner submits these reasons as justification for the time taken to submit this matter.

4

## First Factor in Petitioner's Claim

An error denied the defendant the right to a fair trial.

Petitioner asserts that petitioner is not guilty of violation of PC 647.6, as charged in Count I. If petitioner is not guilty of Count I as charged, then either assistance by defense counsel was ineffective; else there were other circumstances involved in the finding of guilt of petitioner in this matter.

If there were other circumstances involved in the finding of guilt of the petitioner in this matter, then petitioner requests the court investigate and resolve such circumstances and grant petitioner's Motion for New Trial; else, if assistance by defense counsel was ineffective, then petitioner was denied right to counsel; and, if petitioner was denied right to counsel, then an **error occurred** that denied petitioner a fair trial; and, if petitioner was denied a fair trial, then petitioner's Motion for a New Trial should be granted.

Petitioner submits elements of argument in support of first factor of Petitioner's Claim relating to jury instructions.

5

**Elements of Argument Supporting First Factor of Petitioner's Claim**

**1**    That petitioner's motive for having conversation with alleged victim in which offensive statement, "I want to go down on you," was made was to make alleged victim aware of the potential for inappropriate conduct in effort to minimize that potential, and not for the purpose of pursuit of sexual desire;

**2**    That a jury could rationally conclude that petitioner's stated motive is representative of a reasonable interpretation of the circumstances;

**3**    That the defense counsel **did err** by not representing petitioner in defense of this as petitioner's motive; and

**4**    That effective representation of this as petitioner's motive could have resulted in a decision favorable to petitioner.

6

**Addressing the First Element in the First Factor of Petitioner's Claim:** That petitioner's motive was not the pursuit of sexual desire.

Petitioner supports this argument by citing from hearings in petitioner's legal plight.

Reporter's Transcripts of Jury Trial, Tuesday, July 8, 1998; page 121, lines 1 through 6 (Redacted cassette tape of conversation between Detective Grossi and Petitioner): Mr. Morgan: "Well, I told him I was sick, and I wanted to do something that I knew was wrong...I said I wanted to give him a blow job." Page 122, lines 1 through 4, and lines 6 through 8: Mr. Morgan: "Well, I told him *I didn't want to do it.* I told him that's what *I felt like* I wanted to do...and I told him *I wasn't going to do that* because *I knew it was wrong.*

Reporter's Transcript of Jury Trial, Tuesday, July 7, 1998; page 48, lines 25 through 28: Alleged victim: "Yes. He made a statement that he wanted to go down on me." Prosecution: "Okay, before that, did he say anything?" Page 49, lines 6 through 8: Alleged victim: "Yeah...he was saying, 'I want to do something, and I'm sure it's not right,' and this and that." Page 51, lines 3 and 4: Prosecution: "So, after that, what did he do?" Alleged victim, "Nothing, he just took me home." Page 62, lines 1 through 5: Defense counsel, "Okay, now, he never tried to touch you, right?" Alleged victim: "No." Page 63, lines 19 through 28: Defense counsel, "So, he never moved into the truck, right?" Alleged victim, "No." Defense counsel: "---After he said this?" Alleged victim: "Not in the bed. No." Defense counsel: "And he didn't repeat what you thought was an offer..." Alleged victim: "He didn't say --- no."

7

Page 65, lines 5 through 7; (about the ride home) Defense Counsel: "And how far away was he sitting from you in the truck?" Alleged victim: "It's a --- two feet." Lines 18 through 20; Defense counsel: "And he didn't try to touch you or anything, did he?" Alleged victim: "Oh, no."

Reporter's Transcripts, Jury Trial, Wednesday, July 8, 1998; Officer Ronald Dewey testifies: page 105, lines 19 through 21: Defense counsel: "and what specifically did he say?" Dewey: "That he's a male pedophile. He has urges, and he usually does not act on them." Page 113, lines 7 through 9; Prosecution: "Did he say anything else?" Dewey: "He said he has urges, and he does not act on them."

Reporter's Transcripts of Jury Trial, Wednesday July 8, 1998, page 129, lines 6 through 9; prosecution cites, " 'I'm a male pedophile.' Those are the defendant's words. You heard Officer Dewey's testimony. That's what the defendant told him in November of last year. And that's how the defendant defined himself. Page 131, lines 5 and 6, "The defendant defined himself as a male pedophile." Lines 11 and 12, "The defendant defines himself as a male pedophile." Page 111, lines 1 and 2; prosecution cites, "This is a statement the defendant made spontaneously."

Petitioner was struggling with a conflict: A desire to keep a friend, urges that could lead to inappropriate conduct, and a realization that such conduct would lead to trouble. Petitioner's only intent was to discuss with alleged victim petitioner's problem.

8

Prosecution argued that petitioner admitted to being a male pedophile and defined himself as being a male pedophile.   Officer Dewey's testimony reflects the words that petitioner used, but not the inflections used by petitioner during that statement.

Petitioner's 'admission' of being a pedophile after the fact was not intended as a description of himself.  Petitioner made that statement while engaged in retrospect, not to Offecer Dewey, bit within earshot of Offecer Dewey.  (It should be noted that that same admission was made "outside of this trial.")

Prosecution then further misconstrued petitioner's statement.    Prosecution's comments were conjecture, therefore prosecution subjected the jury to conjecture.

9

**Addressing the Second Element of the First Factor of Petitioner's Claim:** that a jury could rationally conclude that petitioner's stated motive is representative of a reasonable interpretation of the circumstances.

Both the cassette tape recording of the conversation between Detective Grossi and Petitioner, and alleged victim's testimony before court trial support that a conversation occurred between Petitioner and alleged victim in which petitioner's desire to perform an act of oral sex on the alleged victim, *and petitioner's awareness* that this was an improper desire, was discussed.

Prosecution argues that a "touching" is not a required element of this crime, however, there was proof that no attempt to touch, attempt to seduce, attempt to coerce, ever occurred.

However, alleged victim's testimony supports the fact that Petitioner wasn't motivated to do this in that petitioner didn't try to physically near alleged victim before, during or after this discussion. Petitioner said what petitioner had to say about his problem in associating with alleged victim, and then drove alleged victim home.

Petitioner's account to Detective Grossi on the cassette tape refer to an offer of sex; however, this was an accounting six months after the fact. Alleged victim's account at trial does not indicate an offer, but a statement. Petitioner asserts that this was not an offer, but a statement.

10

There is no indication by the circumstances surrounding the conversation, that Petitioner was sexually motivated.  Petitioner's *inaction during conversation* with alleged victim and petitioner's *action of taking alleged victim home* after conversation is submitted as proof of no existence of joint operation of act and required mental state of motivation by sexual desire.

**11**

**Addressing the Third Element of the First Factor of Petitioner's Claim:** That defense counsel **did err** by not representing petitioner in defense of petitioner's motive.

Petitioner asserts that defense counsel proceeded in petitioner's defense under the presumption that petitioner's motive was pursuit of sexual desire. Petitioner cites excerpts from petitioner's court appearances in support of petitioner's claim.

Reporter's Transcript of Preliminary Hearing, Tuesday, May 11, 1998; Page 7, lines 10 through 13; defense counsel comments concerning the conversation between petitioner and alleged victim in which the offensive statement was made: "The evidence suggested at the preliminary shows that Mr. Morgan, 'after this didn't go well, so to speak,' then immediately took the alleged victim home."

Herein, defense counsel apparently infers that petitioner's goal was not achieved, or more specifically, that counsel was proceeding under the presumption that petitioner's goal was accomplishment of pursuit of stated sexual desire.

Reporter's Transcript of Jury Trial, Wednesday, July 8, 1998, page 141 lines 26 through 28; in closing argument, defense counsel discusses reasonable doubt: "Now, 'Directed at,' it is reasonable based on everything that you know from the evidence that Mr. Morgan did not direct this statement at (the alleged victim) Keith (Waller).

Counsel's statement in this matter was totally absurd. From all the evidence, that it was quite reasonable that petitioner had directed this statement at the alleged victim and only the alleged victim. What was not evident was petitioner's motive. But counsel continued his argument under the presumption that petitioner's motive was sexual.

12

Petitioner asserts that defense counsel did not know petitioner's motive for initiating conversation in which offensive statement was made. Defense counsel did not know petitioner's motive because petitioner did not volunteer to defense counsel petitioner's motive. Petitioner did not volunteer to defense counsel petitioner's motive because petitioner was not aware that required mental state or motive was a necessary element of the crime of which petitioner was accused. Petitioner was not aware of the elements necessary for a finding of guilt because defense counsel did not stipulate to petitioner the necessary elements for a finding of guilt in this matter.

Petitioner does not know why defense counsel did not review with petitioner the necessary elements required for this crime to have been committed. Petitioner first became aware of those required elements during the jury trial when prosecution read them to the jury panel from the poster board prosecution had prepared. This was much too late for petitioner to realize the implications of petitioner's motive, let alone to call it to the attention of defense counsel to reconsider defense strategy.

Defense Counsel therefore could not, without knowledge of petitioner's motive, pursue alternate mental state as petitioner's defense. Therefore, defense counsel did err in representation of petitioner's defense.

Petitioner has attempted recent communication with former defense counsel in attempt to request an accounting of defense counsel's time and effort exerted in the preparation of petitioner's defense. Petitioner has yet to receive a response.

**Addressing the Fourth Element of the First Factor of Petitioner's Claim:**
That effective representation of this as petitioner's motive could have resulted in a decision favorable to petitioner.

Defense counsel discussed reasonable doubt during his closing arguments. If reasonable doubt exists, then there is the great possibility that a finding of not guilty would have resulted. However, defense counsel's rendition of reasonable doubt was off base.

Certainly an effective representation of petitioner's stated motive with further questioning of the witnesses during trial, and recounting of circumstances in the light of petitioner's stated motive during closing arguments would have given the members of the jury another view of the circumstances such as to provide an alternate and reasonable interpretation of those circumstances indicative of no existence of joint operation of act and required mental state of motivation by sexual desire.

With the existence of this as an other reasonable interpretation, then reasonable doubt exists that prosecution's accounting or theory is the one and only possibility. If reasonable doubt is effectively introduced and supported, then the defendant can not be found guilty. Such a decision would have been favorable to the defendant.

14

## SUMMARY

This accounting supports petitioner's claim of the theory that petitioner *did not* possess the required element of mental state of motivation by sexual desire.

Petitioner asserts petitioner had realized that, over the course of associating with alleged victim, petitioner had become attracted to alleged victim. Petitioner asserts that, upon realization of the potential for improper interaction with alleged victim, and since petitioner was aware that this had been a problem in the past, petitioner made the choice to discuss the situation with alleged victim and break off the friendship. Alleged victim was shocked to hear this from his friend, and acted understandedly accordingly. When the authorities caught wind of this, it turned into a monstrous misunderstanding.

The decision presented by petitioner to the court is this: is it reasonable to conclude from the evidence presented that petitioner did indeed have no intention to pursue sexual desire with the alleged victim, therefore *did not* posess **the required mental state**; and, if so, did defense counsel **err** in representation of petitioner, an error that caused petitioner to suffer from ineffective assistance of counsel, thereby denying petitioner a fair trial, an error that, if corrected would have resulted in a decision by the jury favorable to the defendant (the petitioner).

If so, petitioner should be granted petitioner's Motion for New Trial.

15

## NOTICE OF VERIFICATION

**Motion for New Trial**
**re:  CR-4609**
**County of Lake**
**State of California**

I, John S. Morgan, declare under penalty of perjury the following:  that I am the Declarant and Petitioner in the above entitled action; that I have prepared the preceeding documents; that I know the contents thereof, and I swear them to be true and accurate to the best of my knowledge.

John S. Morgan, Petitioner and Declarant